CHRISTOPHER D. SULLIVAN (148083)
STACEY L. PRATT (124892)
ROXANNE BAHADURJI (290117)
**SULLIVAN BLACKBURN PRATT LLP**
456 Montgomery Street, Suite 900
San Francisco, CA 94104
Phone: (415) 691-4518
Email: csullivan@sullivanblackburn.com
        spratt@sullivanblackburn.com
        rbahadurji@sullivanblackburn.com

Special Litigation Counsel
for the Chapter 7 Trustee Janina M. Hoskins

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>GROWTH CAPITAL SERVICES, INC., a Delaware corporation,<br><br>     Debtors. | Bankruptcy. Case No. 22-30218-HLB<br><br>Adversary No.<br><br>Chapter 7 |
| JANINA M. HOSKINS, in her capacity as Chapter 7 Trustee of Growth Capital Services, Inc.,<br><br>     Plaintiff,<br><br>     v.<br><br>DAVID MICHEAL WHELCHEL, an individual, and FINALIS SECURITIES, LLC, a Delaware Limited Liability Company.<br><br>     Defendants. | COMPLAINT FOR AVOIDANCE AND RECOVERY OF ACTUAL AND CONSTRUCTIVE AVOIDABLE TRANSFERS<br><br>11 USC §§ 548, 550, and 551 |

COMPLAINT FOR AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS

Plaintiff Janina M. Hoskins as Chapter 7 Trustee of the estate of Growth Capital Services, Inc. ("Plaintiff" or "Trustee") hereby complains against David Michael Whelchel, an individual and Finalis Securities, LLC, a Delaware Limited Liability Company ("Defendants") as follows:

## INTRODUCTION

1.      Trustee brings this action against Defendants to avoid transfers under 11 U.S.C. § 548 and to recover the value of those transfers under 11 U.S.C. § 550 arising out of Growth Capital Services Inc. ("GCS" or "Debtor") assigning away valuable contracts and the rights to receive sizeable fees from those contracts to Defendants.

2.      The Debtor was a broker-dealer/investment advisor and a FINRA member. Per an audited financial statement dated November 24, 2021, the Debtor had cash and cash equivalents of $4,261,311 and commission receivables of $2,062,127. However, as of the petition date of May 3, 2022, the Debtor only had cash of $41,524.

3.      The Debtor had a consistent record of violating FINRA rules. In an arbitration proceeding initiated by claimant Intellivest Securities, Inc. against the Debtor, on January 7, 2022, a three-member FINRA panel rendered a decision against GCS and awarded $908,000 in favor of the claimant.

4.      Rather than addressing the potential ways that GCS could pay the arbitration award, the Debtor acted swiftly to terminate its operations and to transfer any potential revenue away from the Debtor. Within a week of the arbitration award, it terminated its employees and shut down its operations. Starting January 24, 2022 through March 2022, the Debtor transferred away any and all rights to be paid broker-dealer fees and tail fees from existing lucrative contracts effectively leaving the company penniless and hindering creditor efforts to recover.

## JURISDICTION AND VENUE

5.      This is an adversary proceeding brought under Bankruptcy Rule 7001 relating to the Chapter 7 case, *In re Growth Capital Services, Inc.*, Case No. 22-30218-HLB ("Bankruptcy Case").

6.　　This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1334(b) because this adversary proceeding arises in, arises under, or relates to the Bankruptcy Case.

7.　　The proceeding is a "core" proceeding under 28 U.S.C. § 157(b)(2). Specifically, the action includes claims avoiding and recovering transfers under 11 U.S.C. §§ 548 and 550.

8.　　This Court has personal jurisdiction over Defendants.

9.　　Under Federal Rule of Bankruptcy Procedure 7008, Plaintiff consents to entry of a final order or judgment by the Bankruptcy Court in this matter. This Court may enter final judgment or propose findings of fact and conclusions of law in this action. 28 U.S.C. § 157(b)(1); *Stern v. Marshall*, 131 S. Ct. 2594, 2620 (2011).

10.　　Venue is proper in the Northern District of California under 28 U.S.C. §1409(a) because the Debtor's chapter 7 case is pending in this district. On May 3, 2022, the Debtor commenced a chapter 7 case under the Bankruptcy Code. The Debtor is a corporation organized and existing under the laws of the State of Delaware since September 15, 2021, with its principal place of business in San Francisco, California.

11.　　Plaintiff is the duly appointed Chapter 7 Trustee. Plaintiff has standing to file and prosecute the claims of the Debtor asserted herein on behalf of the Debtor's bankruptcy estate.

12.　　Defendant David Michael Whelchel ("Whelchel") is a registered representative of Finalis Securities, LLC, a Delaware limited liability company, a broker-dealer registered with the SEC, and member of FINRA. Whelchel is an individual who is believed to be a resident of Asheville, North Carolina.

13.　　Finalis Securities, LLC ("Finalis") is a Delaware limited liability company and a broker dealer registered with the SEC, and member of FINRA.

14.　　Defendants Whelchel and Finalis are individuals and entities who may be served with process by any manner of service authorized by Rule 7004 of the Federal Rules of Bankruptcy Procedure.

///

///

COMPLAINT FOR AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS

## **GENERAL ALLEGATIONS**

**Debtor's Business Operations**

15.     The Trustee is informed and believes and thereon alleges that the Debtor incorporated in California on November 1, 2000 as Progressive Trade Securities, Inc. Five years later, it changed its name to Aquillian Investments, Inc., and in January 2007, the company again changed its name, this time to Growth Capital Services, Inc. Prior to September 15, 2021, the Debtor's state of incorporation was California, after which it changed its state of incorporation to Delaware.

16.     GCS was previously registered as a brokerage firm, also called a broker-dealer, in the business of buying and selling securities – stocks, bonds, mutual funds, and certain other investment products. The Debtor was also previously registered as an investment advisor firm. It provided mergers and acquisitions advisory services, including the introduction of sell-side client companies to prospective acquirers and the introduction of prospective targets to buy-side companies, and the facilitation of mergers and acquisitions, stock sales, asset sales, or other reorganization or combination transactions. GCS's primary business, however, was private placement offerings of securities.

17.     As of the date of the Debtor's bankruptcy, Brian Dunn was the Debtor's sole shareholder and the Debtor's CEO and Dennis Michael Azary was the Debtor's CCO.

18.     GCS had a history of FINRA regulatory actions stemming from violations of private placement offerings. For instance, in 2017, FINRA alleged that that during the period of 2008-2011, GCS failed to establish and implement an adequate supervisory system to fulfill its supervisory responsibilities with respect to private securities transactions (PSTS). Among other findings, GCS did not review investor transactions in funds formed through approved outside business activities of registered representatives, and it did not record the transactions in its books and records. GCS failed to investigate, review, approve, document, or supervise the PSTS. Additionally, the Debtor did not conduct annual office inspections and did not inspect non-branch locations even though the registered representatives had been associated with the firm for over three years. GCS also failed to

-4-

establish a policy or system to approve and supervise its representatives' business social media accounts, the content of which was oversimplified, incomplete, and lacked disclosures necessary to provide a sound basis for evaluating the facts communicated. The proceedings were resolved on or about September 29, 2017 by the Debtor submitting an acceptance, waiver, and consent. The firm was censured and fined $35,000.

19. In 2020, FINRA alleged that GCS violated FINRA rules by failing to timely file required documents related to private placements. Between June 2018 and June 2019, the required regulatory filings for eleven private placements were filed on average 143 days late. FINRA also alleged that between June 2018 and June 2020, the Debtor distributed sales materials on private placements to potential investors that did not meet FINRA's content standards for member communications. The proceedings were resolved by GCS submitting an acceptance, waiver, and consent on December 23, 2020. As in 2017, it was censured and fined $35,000.

20. On or about January 15, 2021, GCS consented to a number of FINRA findings that resulted in censuring the Debtor and fining it, again, $35,000. Among the FINRA findings was that the Debtor failed to timely file required documents related to private placements sold. GCS distributed and made available various presentations, websites, offering documents, and other materials related to private placements that did not meet FINRA's content standards. The communications contained misleading statements and did not include reasonable disclosures about the risks. For instance, one offering described itself as having enhanced liquidity when it was in fact an illiquid investment, one offering including a misleading description of the use of funds, five of the offerings contained statements projecting performance, and four of the offering documents contained statements projecting effective and annualized yields.

**FINRA Arbitration Award**

21. On January 7, 2022, an arbitration award was signed by three arbitrators from the FINRA Dispute Resolution Services in the amount of $908,000 against GCS arising out of a claim filed by Intellivest Securities, Inc. ("Intellivest") on or about December 14, 2020.

22. In the arbitration proceedings, Intellivest alleged that its business was destroyed by

the Debtor's actions. Intellivest asserted that GCS "raided" Intellivest resulting in the abrupt resignation of all four of its registered representatives: Jyoti Aggarwala, Shawn Lesser ("Lesser"), Nancy Rosenzweig, and Whelchel.

23.    Intellivest described itself as a boutique investment banking firm. Per Intellivest's Statement of Claim, during its existence from 2010 until March 27, 2018, Intellivest's business was devoted almost entirely to raising capital for issuers seeking to attract investors known as Impact Investors. Impact Investors are investors who are interested in investing to achieve positive social impact along with a competitive rate of return. Per Intellivest, from 2010 through 2017, Intellivest was always profitable.

24.    Intellivest alleged that on March 27, 2018, all its representatives resigned and started working at GCS. Per Intellivest, after March 27, 2018, with GCS's knowledge and direction, Whelchel and Lesser began contacting Intellivest's clients to get them to breach their investment banking agreements with Intellivest in favor of the Debtor. The attempts included diverting to GCS certain contingent and other fees owed to Intellivest and the solicitation of Intellivest clients.

25.    The claims brought by Intellivest were heavily contested by the Debtor, and the FINRA proceedings involved motions for discovery sanctions and oppositions, a notice of contempt for failure to obey the panel's orders, a motion for reconsideration, and an oral motion to dismiss at the arbitration hearing. The arbitration hearing took place over 18 hearing sessions from November 30, 2021 to December 10, 2021. At the hearing held on December 9, 2021, the panel signaled that it would issue an award for damages to Intellivest of $458,000 with the fees of the arbitration being split evenly. Intellivest and the Debtor both submitted post-hearing briefs.

26.    In the end, the arbitration panel awarded Intellivest: compensatory damages of $440,187.50; punitive damages of $150,000; costs of $21,742; attorney's fees of $295,000; filing fee of $2,000; and miscellaneous fees of $41,300, all totaling $908,000. GCS's officers claim to have been shocked by the January 2022 award and that they had no choice but to file for bankruptcy. However, GCS had to have known by at least December 9, 2021, that a considerable arbitration award was coming their way. Nevertheless, the Debtor paid Whelchel $1.7 million on

COMPLAINT FOR AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS

December 30, 2021 and he was further paid $225,000 between January 14, 2022 and February 7, 2022, despite the arbitration award.

**Transfers**

27.     Seven days after the arbitration panel awarded $908,000 in Intellivest's favor on January 7, 2022, GCS terminated all its employees. Significantly, starting on or about January 24, 2022 through May 6, 2022, GCS transferred valuable contracts and all of its rights to receive significant fees from those contracts to Whelchel in his capacity as a registered representative of Finalis and to Finalis.

28.     GCS was a party to three-party broker dealer services agreements for private placement offerings ("Engagement Letters"). This was a significant source of the Debtor's income.

29.     An example of an Engagement Letter is attached as Exhibit A to this Complaint. These Engagement Letters were between GCS as the "registered broker dealer", Big Path Capital, LLC ("Big Path") as the "Advisor," and a client. Per the Engagement Letters, Big Path would curate and hold events during which the client would present information on offerings to potential purchasers. These clients were either investment funds or companies attempting to raise money. These events took place nationally and internationally and were by invitation.

30.     Per Big Path's website, Whelchel is the Co-Founder and Managing Partner of Big Path Capital, "a lending boutique impact investment bank focused on providing Corporate Finance, M&A, and Placement Agent Services to impact companies and funds globally."

31.     Per Big Path's website, it assists "business owners and entrepreneurs in the whole or partial sale of a business[.]" Specifically, Big Path "assists business owners to: (i) sell a majority or minority stake of their business to mission-aligned investors; (ii) purchase another company or perform a merger or recapitalization; (iii) raise equity and debt for growth-stage to later-stage equity assisting in deal structuring, due diligence, negotiation and documentation preparation; and (iv) evaluate strategic financial options for their businesses."

32.     To the extent that the offering was subject to regulation by the SEC, FINRA, and or other regulatory agencies, and needed to be consummated by a licensed broker dealer, GCS would

serve that role. GCS was tasked with the supervisory, compliance, and investigative activities mandated by the SEC, FINRA, and applicable law in connection with the regulated offerings. Certain of the broker-dealer services could also be provided by Big Path, which was a registered representative of GCS.

33. Per the terms of these Engagement Letters, the Client would pay Big Path a modest non-refundable cash fee, which was referred to as the "Event Fee."

34. On the closing of the offering, the client was required to pay GCS a cash fee ("Broker Dealer Fee") equal to an amount calculated by multiplying 2.0% (varied among the Engagement Letters) times the amount of the investment made or committed to be made in the offering by the prospective investor.

35. The Engagement Letters also had valuable "Tail Fees" in the event of any termination of the agreement. If for instance, the client consummates an offering prior to the date that is 24 months (varied among the Engagement Letters) after the date of termination of the contract ("Tail Period") with any prospective investor, GCS is entitled to the applicable Broker Dealer Fee. If the client receives an indication of interest from a prospective investor within the Tail Period but the closing occurs after the Tail Period, the Tail Fee applies. These Engagement Letters required the clients to notify GCS within five business days of the date of first sale made by any investor solicited.

36. GCS assigned these Engagement Letters and GCS's valuable rights to the "Tail Fees" to Whelchel as a broker-dealer and to Finalis.

37. Amendments to Letter Agreements were executed by and among (i) GCS as the Broker-Dealer, (ii) the client ("Company"), (iii) Big Path with "Michael Whelchel, a registered representative of Finalis Securities, LLC, a Delaware limited liability company, a broker dealer registered with the SEC, and member of FINRA ("Finalis")" and (iv) Finalis (collectively "Parties").

///

///

Case: 23-03019   Doc# 1   Filed: 05/09/23   Entered: 05/09/23 09:53:57   Page 8 of 76
COMPLAINT FOR AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS

38.     Under these Amendments to Letter Agreements the Parties agreed that:

> All of the Broker Dealer's rights, title, obligations, duties, and interest in the Letter Agreement (the "Rights") shall be assigned by Broker Dealer to Finalis and Finalis assumes the Rights. All references in the Letter Agreement to (i) "Growth Capital Services, Inc" are hereby replaced with "Finalis". Notwithstanding anything to the contrary in the Letter Agreement or in the Independent Contractor Agreement (as defined in the Letter Agreement), as of the date hereof, Broker Dealer shall not be entitled to receive any fees, tail fee or compensation pursuant under the Letter Agreement as of the date hereof.

39.     A sampling of 14 Amendments to Letter Agreements executed by GCS transferring its rights to the Engagement Letters and the Broker Dealer Fees and Tail Fees therein is attached as Exhibit B to this Complaint. Attached as Exhibit C is a spreadsheet filed by the Debtor with its Statement of Financial Affairs showing the transfer of at least fifty Engagement Letters and the date of completion of those transfers ("Transfers").

40.     These Amendments to Letter Agreements were signed by either Brian Dunn or Dennis Azary on behalf of GCS, Brad Ziemba Finalis's Chief Compliance Officer and Chief Executive Officer on behalf of Finalis, and Whelchel as the Managing Director of Big Path and a Registered Representative of Finalis.

41.     Big Path's website states that Big Path is not a registered broker-dealer and securities are offered through Finalis. Whelchel's bio on Big Path's website still states that he is registered as a representative of GCS. FINRA's Broker Check lists Whelchel as registered with Finalis since January 18, 2022. This is six days prior to the date that the first Engagement Letter was transferred away on or about January 24, 2022.

42.     Finalis is listed as a broker-dealer and an investment adviser on Broker Check, with a main office location at 228 Park Avenue South, Suite 85550, New York. It was established in Delaware around September 10, 2019 and its holding company is Finalis, Inc.

43.     Per Finalis, Inc.'s website "it launched in early 2020" and it is a "remote-first company based in New York and San Francisco." "Finalis is comprised of product experts,

engineers, bankers, attorneys, and compliance officers based in the United States, Latin America, Europe, and Asia." "At Finalis, we're linking proprietary technology with regulatory solutions to create scalable compliance back office, a collaborative dealmaker platform, and a world-class market intelligence institution – so everyone can close deals easier, and faster." Finalis, Inc.'s website indicates that Finalis is an affiliate of Finalis, Inc.

44.     Rather than make an effort to pay the Intellivest award, GCS chose to close its shop, terminate its employees, and dissipate its assets such that it could file for bankruptcy. The harm from, and impact of, the decision to transfer the Debtor's source of income, was felt by the Debtor's creditors.

45.     The Debtor's summary of Assets and Liabilities of Non-Individuals indicates that the Debtor had no real property and its total personal property of $43,024.70 and liabilities of $2,472,881.12. Priority claims are listed in the amount of $24,517.70 and unsecured non-priority claims in the amount of $2,448,363.42.

46.     Defendants received transfers from the Debtor and the Defendants did not provide any value or reasonably equivalent value to the Debtor as consideration for those transfers.

### FIRST CLAIM FOR RELIEF
### AVOIDANCE OF FRAUDULENT TRANSFERS
### AGAINST ALL DEFENDANTS
### [11 U.S.C. § 548(a)(1)(A)]

47.     The Trustee repeats and realleges each of the prior allegations in the Complaint as set forth above.

48.     The Engagement Letters constitute interests of the Debtor in property. The Debtor was a party to the Engagement Letters and had the Engagement Letters not been transferred before the commencement of the bankruptcy, they would have been property of the estate.

49.     Each of the Transfers was made within two years preceding the petition date. The bankruptcy was filed on May 3, 2022, and each of the Transfers was made between January and May 2022.

COMPLAINT FOR AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS

50.     Each of the Transfers was made with the actual intent to hinder, delay, and defraud creditors.

51.     The Transfers were made by the Debtor with an actual intent to hinder Intellivest's efforts and ability to collect on the arbitration award. Litigation over Intellivest's claim had been proceeding since December 2020. By December 9, 2021, the Debtor knew that it would be found liable by the panel in the amount of at least $458,000. Nevertheless, Whelchel received at least $1.7 million from the Debtor on December 30, 2021. Once the panel issued its award on January 7, 2022, swiftly thereafter by January 14, 2022, the Debtor had terminated all its employees and started assigning away its interests in the Engagement Agreements and its right to receive the valuable Broker Dealer Fees and Tail Fees.

52.     The Debtor did not receive any consideration for the Transfers. The Debtor gave away assets for free and by the petition date, the Debtor had disposed of any valuable assets and hindered Intellivest's ability to collect its award. Per the Debtor's schedules, as of the petition date, the Debtor's only asset was cash of $41,524.70.

53.     The Transfers were made starting on or around January 24, 2022 to Finalis and Whelchel in his capacity as Big Path's managing partner and a registered representative of Finalis who prior to January 18, 2022 was a representative at GCS.

54.     By reason of the foregoing, the Transfers are avoidable pursuant to 11 U.S.C. § 548(a)(1)(A).

**SECOND CLAIM FOR RELIEF**
**AVOIDANCE OF FRAUDULENT TRANSFERS**
**AGAINST ALL DEFENDANTS**
**[11 U.S.C. § 548(a)(1)(B)]**

55.     The Trustee repeats and realleges each of the prior allegations in the Complaint as set forth above.

56.     The Engagement Letters constituted interests of the Debtor in property. The Debtor was a party to the Engagement Letters and had the Engagement Letters not been transferred before

Case: 23-03019   Doc# 1   Filed: 05/09/23   Entered: 05/09/23 09:53:57   Page 11 of 76

the commencement of the bankruptcy, they would have been property of the estate.

57.     Each of the Transfers was made within two years preceding the petition date. The bankruptcy was filed on May 3, 2022, and each of the Transfers was made between January and May 2022.

58.     Each of the Transfers to or for the benefit of the Defendants was made without the Debtor receiving reasonable equivalent value in exchange for such transfer. The Debtor received no consideration for the assignment of the Engagement Letters and the valuable rights to receive Broker Deal Fees and Tail Fees.

59.     The Transfers were and made (i) at a time when the Debtor was insolvent or as a result of which the Debtor became insolvent; or (ii) at a time that the Debtor was engaged in a business or transaction, or was about to engage in a business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; or (iii) at a time when the Debtor intended to incur, or believed or should reasonably have believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

60.     Within days after the arbitration award, the Debtor acted swiftly to transfer its assets and its source of income, namely any rights to receive fees from the Engagement Letters, rendering it insolvent.  Debtor terminated all its employees and therefore any chance of generating income to pay the arbitration award.

61.     By reason of the foregoing, the Transfers are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

**THIRD CLAIM FOR RELIEF**
**AVOIDANCE OF FRAUDULENT TRANSFERS**
**AGAINST WHELCHEL**
**[11 U.S.C. § 548(a)(1)(A)]**

62.     The Trustee repeats and realleges each of the prior allegations in the Complaint as set forth above.

///

-12-

COMPLAINT FOR AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS

63.     Each of the transfers to Whelchel totaling $1.9 million constitutes interests of the Debtor in property and were made within two years of the petition date. The transfers were made on or after December 30, 2021.

64.     Each of the transfers was made with the actual intent to hinder, delay, and defraud creditors. The transfers were made by the Debtor with the actual intent to hinder Intellivest's efforts and ability to collect on the arbitration award. By December 9, 2021, the Debtor knew that it would be found liable by the panel in the amount of at least $458,000. Nevertheless, Whelchel received at least $1.7 million from the Debtor on December 30, 2021, and received further payments thereafter.

65.     Rather than devising ways that it could pay the arbitration award, the Debtor acted rapidly to dissipate its assets, including by making the transfers to Whelchel, such that there would be no assets from which Intellivest could recover. Within approximately eighteen days of receiving the $1.7 million transfer, Whelchel was formally registered with Finalis.

66.     By reason of the foregoing, the transfers are avoidable pursuant to 11 U.S.C. § 548(a)(1)(A).

**FOURTH CLAIM FOR RELIEF**
**AVOIDANCE OF FRAUDULENT TRANSFERS**
**AGAINST WHELCHEL**
**[11 U.S.C. § 548(a)(1)(B)]**

67.     The Trustee repeats and realleges each of the prior allegations in the Complaint as set forth above.

68.     Each of the transfers to Whelchel totaling $1.9 million constituted interests of the Debtor in property and were made within two years of the petition date. The transfers were made on or after December 30, 2021.

69.     Each of the transfers to Whelchel was made without the Debtors receiving reasonable equivalent value in exchange for such transfers.

70.     The transfers were and made (i) at a time when the Debtor was insolvent or as a result of which the Debtor became insolvent; or (ii) at a time that the Debtor was engaged in a

business or transaction, or was about to engage in a business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; or (iii) at a time when the Debtor intended to incur, or believed or should reasonably have believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

71.     Within days after the arbitration award, the Debtor acted swiftly to transfer any and all assets rendering it insolvent and diminishing Intellivest's ability to recover the arbitration award. Debtor terminated all its employees and therefore any chance of generating income to pay the arbitration award.

72.     By reason of the foregoing, the transfers are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

## FIFTH CLAIM FOR RELIEF
### RECOVERY OF AVOIDED TRANSFERS AGAINST ALL DEFENDANTS AND PRESERVATION FOR BENEFIT OF ESTATE
### [11 U.S.C. §§550, 551]

73.     The Trustee repeats and realleges each of the prior allegations in the Complaint as set forth above.

74.     Trustee is entitled to recover for the benefit of the estate the Transfers from the Defendants and the transfers from Whelchel to preserve them for the benefit of the estate pursuant to 11 U.S.C. §§ 550, 551.

## PRAYER FOR RELIEF

WHEREFORE, the Trustee prays that this Court enter judgment against Defendants as follows:

1.  On the first and second claims for relief that the Transfers be avoided and preserved for the benefit of the estate;

2.  On the third and and fourth claims for relief that each of the transfers to Whelchel totaling $1.9 million be avoided and preserved for the benefit of the estate;

-14-
COMPLAINT FOR AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS

1    3.  On the fifth claim for relief, that the Trustee recover the value of the Transfers from the

2  Defendants and at least $1.9 million from Whelchel for the benefit of the estate, in such amount as

3  shall be shown by proof prior to judgment herein;

4    4.  On all claims for relief, that the Trustee be awarded costs incurred in connection with this

5  action; and

6    5.  Granting such other and further relief as the Court may deem proper and just.

7

8  Dated: May 8, 2023                    SULLIVAN BLACKBURN PRATT LLP

9

10                                        By: */s/ Christopher D. Sullivan*
11                                             Christopher D. Sullivan
                                              Special Litigation Counsel for the Trustee
12

Case: 23-03019   Doc# 1   Filed: 05/09/23   Entered: 05/09/23 09:53:57   Page 15 of 76
COMPLAINT FOR AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS

# EXHIBIT A



# BROKER DEALER SERVICES AGREEMENT ("ENGAGEMENT LETTER")

**Between**

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**Growth Capital Services, and
Big Path Capital**

Growth Capital Services
Member FINRA, SIPC

582 Market Street, Suite 300
San Francisco, CA 94104

Tel : 415-692-0050
www.growthcapitalservices.com

GCS CONFIDENTIAL 2535

████████████████ LP ("Client") hereby engages Big Path Capital, LLC ("Advisor") to provide certain Advisory Services, as defined below, and hereby engages Growth Capital Services, Inc. ("GCS"), an independent SEC-registered broker dealer and member of FINRA, to provide certain Broker Dealer Services, as defined below, in connection with the proposed private placement of Client's securities (the "Offering").

This agreement ("Agreement") sets forth the understanding and agreement among Client, Advisor and GCS with respect to the relationship among the parties and certain aspects of the Offering. Client, Advisor and GCS hereby agree to the following terms and conditions:

## 1. Relationship Among Parties.

1.1. **Relationship Between Client and Advisor.** Advisor's relationship with Client pursuant to this Agreement will be that of an independent contractor. Nothing contained herein shall be construed to create or establish an employment, agency or fiduciary relationship between Advisor and Client or Client's officers, directors, shareholders, employees, agents, investors, lenders or financiers (collectively, "Client Persons"), and Advisor shall have no duties to any Client Persons or any third party in connection with its engagement by Client other than those duties expressly set forth in this Agreement.

1.2. **Relationship Between Client and GCS**. GCS's relationship with Client pursuant to this Agreement will be that of an independent contractor. Nothing contained herein shall be construed to create or establish an employment, agency or fiduciary relationship between GCS and Client or Client Persons, and GCS shall have no duties to any Client Persons or any third party in connection with its engagement by Client other than those duties expressly set forth in this Agreement.

1.3. **Relationship Between Advisor and GCS.** Advisor is a registered representative of GCS pursuant to an independent contractor agreement (the "Independent Contractor Agreement") between Advisor and GCS. This Agreement shall not affect the Independent Contractor Agreement, and if there is a conflict between such Independent Contractor Agreement and this Agreement, then the Independent Contractor Agreement shall control, as between GCS and Advisor.

1.4. **No Third Party Reliance**. No person or entity other than Client is authorized to rely on the engagement of Advisor or GCS hereunder or on any statements, advice, opinions or conduct by Advisor or GCS.

1.5. **Conflicts.** Client acknowledges that Advisor, GCS and their affiliates have and will continue to have investment banking and other relationships with parties other than Client pursuant to which Advisor, GCS or their affiliates may acquire information of interest to Client. Advisor, GCS and their affiliates shall have no obligation to disclose such information to Client or



to use such information in connection with any contemplated transaction. Neither Advisor nor GCS shall have any duties or liability to the equity holders of Client or any third party in connection with this Agreement or the engagement contemplated hereby.

## 2. Services.

### 2.1. Advisory Services.

2.1.1. Advisor's services (the "Advisory Services") include, if appropriate or if reasonably requested by Client: (a) enabling Client to present information on the Offering at the Five Fund Forum the week of March 12, 2018 and the Impact Capitalism Summit ("Event") the week of April 16, 2018; (b) assisting in setting up meetings between the Client and attendees prior to and at the Event.

2.1.2. Advisor will use its best efforts, consistent with customary practice, to facilitate and effect the Offering as soon as practicable. The consummation of any Offering is subject, among other factors, to acceptable documentation, market conditions, and satisfaction of the conditions set forth in one or more agreements to be entered into among the counterparties to such Offering.

2.1.3. Unless otherwise agreed in writing by Advisor, this Agreement does not contemplate that Advisor will render any opinion as to whether the consideration to be paid in any Offering is fair, from a financial point of view, to Client or to any other party.

2.1.4. For the avoidance of doubt, Advisor shall have no responsibility for, and shall not assist Client in determining, any terms, conditions or transactional structure of any Offering, and Client shall be solely responsible for determining all terms, conditions and transactional structure of all Offerings.

### 2.2. Broker Dealer Services.

2.2.1. Certain Offerings are subject to regulation by the Securities and Exchange Commission ("SEC"), the Financial Industry Regulatory Authority ("FINRA") and/or other regulatory agencies. Such Offerings may only be marketed and consummated by an SEC-registered broker dealer. Accordingly, GCS shall provide certain supervisory, compliance and investigative activities mandated by the SEC, FINRA and applicable law in connection with such regulated Offerings, and shall also present the Offering to identified parties (the "Broker Dealer Services").

2.2.2. Certain of the Broker Dealer Services may be provided by Advisor, a registered representative of GCS.

2.2.3. GCS does not provide accounting, tax or legal advice, and Client is advised to seek appropriate advice from other professionals with regard to such matters.



Case: 23-03019   Doc# 1   Filed: 05/09/23   Entered: 05/09/23 09:53:57   Page 19 of 76

2.2.4. For the avoidance of doubt, GCS shall have no responsibility for, and shall not assist Client in determining, any terms, conditions or transactional structure of any Offering, and Client shall be solely responsible for determining all terms, conditions and transactional structure of all Offerings.

2.2.5. Unless otherwise agreed in writing by GCS, this Agreement does not contemplate that GCS will render any opinion as to whether the consideration to be paid in any Offering is fair, from a financial point of view, to Client or to any other party.

## 3. Fees and Expenses.

3.1. **Event Fee**. Client shall pay Advisor nonrefundable cash fee in the amount of $10,000.00 (the "Event Fee"), due at the signing of this Agreement. The Event Fee shall be paid directly to Advisor via wire transfer details set forth in Exhibit 2. For the avoidance of doubt, any Event Fees paid hereunder shall not be credited against any Broker Dealer Fees or other fees that may be payable hereunder.

3.2. **Broker Dealer Fee.** On the closing of the Offering, Client shall pay GCS a cash fee (the "Broker Dealer Fee") equal to an amount calculated by multiplying 2.0% times the amount of the investment made or committed to be made in the Offering by a Prospective Investor defined below as further set forth in **Appendix A**, which is incorporated by reference herein.

3.2.1. **Prospective Investors.** Prior to the Event, Advisor will send to Client a list of confirmed attendees. Client will designate confirmed attendees on the list who has a pre-existing relationship with (the "Requested Carve-Out List"), and return the Carve-Out List to Advisor prior to the Event. In providing names for the Carve-Out List, Client will describe the general nature of the pre-existing relationship. Client and the party must have a pre-existing relationship and, at minimum, must have held at least one in-person meeting within twelve (12) months prior to the signing of the Agreement. The parties meeting this requirement will be considered approved ("Approved Carve-Out List"). Confirmed attendees not on the Approved Carve-Out List will be considered Prospective Investors. If a Carve-Out List is not received by Client by the date of the Event, all Event attendees will be considered Prospective Investors. Prospective Investors is defined as the list of confirmed attendees less the Approved Carve-out List. If Advisor introduces other parties in addition to the confirmed attendees of the Event, Advisor will send the name to Client for approval. Once Client approves the party, the name will be considered a Prospective Investor.

3.2.2. **Tail Fee.** In the event of any termination of this Agreement (other than by Client for material breach by Advisor or GCS), GCS shall be entitled to the applicable Broker Dealer Fee (the "Tail Fee") if Client consummates an Offering prior to the date that is 24 months after the date of termination of this Agreement (the "Tail Period") with any Prospective Investor. An Offering shall be deemed to be consummated before such date if any agreement in principle which includes material terms of such Offering is reached prior to such date, even if the execution of definitive documentation or closing occurs later. In other words if Client receives



an indication of interest from a Prospective Investor within the Tail Period but the closing occurs after the Tail Period, the Tail Fee applies.

4. **Client's Representations, Warranties and Obligations.**

4.1. In order to enable Advisor and GCS to provide the Services to Client, Client will furnish Advisor and GCS with such information concerning the Offering and the business and financial condition of Client as Advisor or GCS may from time to time reasonably request, including but not limited to the following (collectively, the "Client Information"): (a) all offering materials concerning the Offering, including any confidential information memorandum, private placement memorandum, offering circular or similar document; (b) all prospective and definitive documents governing the Offering, including all subscription agreements, purchase agreements, financing agreements, merger agreements and other definitive transaction documents; and (c) copies of all financial reports relating to fees payable as soon as reasonably practicable.

4.2. Client represents and warrants to Advisor and GCS that it shall solely determine all terms, conditions, and the transactional structure of the Offering, including but not limited to the amount of money to be raised, whether an Offering shall be structured as an equity and/or debt offering, the price at which equity securities or debt instruments shall be sold, rates of interest, and all other relevant structuring elements of an Offering.

4.3. Client represents and warrants to Advisor and GCS that the Client Information will not contain any untrue statement of a material fact or omit to state any material fact necessary to make the statements contained therein, in light of the circumstances under which they were made, not misleading. Client shall provide Advisor and GCS with prompt notice of any material development affecting Client or the occurrence of any event known to Client that could cause any Client Information to contain an untrue statement of material fact or omit to state any material fact necessary to make the statements contained therein, in light of the circumstances under which they were made, not misleading. Client acknowledges that Advisor and GCS will use and rely on Client Information without independent verification and will not assume responsibility for the accuracy or completeness of any Client Information.

4.4. Client hereby authorizes Advisor to contact and send to prospective counterparties information memoranda and other pertinent information and legal agreements concerning the Offering.

4.5. Client agrees not to enter into any settlement that attributes any wrong-doing, negligence or improper activity of any kind to GCS without first obtaining the prior written consent of GCS.

4.6. Client agrees to notify GCS within 5 business days of the date of first sale made by any investor solicited or introduced by GCS's Advisor to Client.



Case: 23-03019   Doc# 1   Filed: 05/09/23   Entered: 05/09/23 09:53:57   Page 21 of 76

4.7.     Client agrees to keep confidential the names and contact information of any met at the Event.

4.8.     Client agrees to abide by the rules and regulations of the Event set by Advisor including Advisor's sole discretion of who can attend the event.

4.9.     Client agrees to notify Advisor no less frequent than every 6 months when Client has closings and who the investors were for each of the Closings.

4.10.    Client agrees to present at each of the Event's venues.

4.11.    Client agrees to retain during the term of this Agreement competent securities counsel. Currently, at the date of the execution of this Agreement, Client's securities counsel is:
_____.

## 5. Advisor's and GCS's Representations, Warranties and Obligations.

5.1.     **Confidentiality.** Advisor and GCS shall keep all Client Information in strict confidence and shall use Client Information solely for the purposes of performing its obligations related to this engagement, provided that nothing in this Agreement shall prevent Advisor or GCS from disclosing Client Information (a) in accordance with an order of any court or administrative agency or in any pending legal or administrative proceeding, or (b) to the extent that such information (i) was or becomes publicly available other than by reason of disclosure by Advisor or GCS in violation of this Agreement, or (ii) was or becomes available to Advisor or GCS or their affiliates from a source that is not known to be subject to a confidentiality obligation to Client. Advisor's and GCS's nondisclosure obligations as set forth in this Agreement shall automatically terminate 24 months after the last to occur of the completion of the Offering or the termination of this Agreement. At Client's request, Advisor and GCS will promptly return to Client, or destroy, materials containing Client Information except to the extent that Advisor or GCS are required to retain such information in accordance with legal or regulatory requirements.

5.2.     This Agreement does not constitute any commitment, express or implied, on the part of Advisor or GCS to ensure the successful consummation of the Offering.

6. **Indemnification.** In consideration of and as a condition precedent to Client's engagement of Advisor and GCS as contemplated in this Agreement, the Parties agree to the indemnification provisions and other matters set forth in **Appendix B,** which is incorporated by reference herein.

7. **Bad Actors Certification.** In consideration of and as a condition precedent to Client's engagement of Advisor and GCS as contemplated in this Agreement, Client confirms the veracity of the "Bad Actors Certification" set forth in **Appendix C,** which is incorporated by reference herein. Further, Client will promptly notify GCS if at any time it becomes aware of an incident that would violate such certification in the future.



Case: 23-03019   Doc# 1   Filed: 05/09/23   Entered: 05/09/23 09:53:57   Page 22 of 76

8. **Publicity.** Upon successful completion of an Offering, Advisor and GCS each reserves the right to publish a summary "tombstone" describing the transaction details, subject to the Client's approval, which approval will not be unreasonably withheld.

9. **Term and Termination.** This Agreement shall be effective when fully executed by Client, Advisor and GCS (the "Effective Date"), and shall continue for sixty (60) days from April 16, 2018 the last day of the scheduled Events (the "Initial Term"). The scope of this engagement is limited. The Services to be performed by Advisor are centered around the Event. At the expiration of the Initial Term, this Agreement may be extended for such additional periods as the parties may agree upon in writing. The Initial Term and any extension terms shall be referred to herein as the "Term." Client may terminate this Agreement at any time, with or without cause, by providing Advisor and GCS written notice at least 30 days before the termination date. Either party may terminate this Agreement at any time by providing written notice to the other parties. In the event Advisor's registration with GCS should end for any reason, this Agreement between all parties will automatically and immediately terminate without the requirement for providing written notice. Notwithstanding the foregoing, no expiration or termination of this Agreement shall affect rights and obligations under this Agreement regarding: (a) indemnification, (b) confidentiality, and (c) payment of fees and expenses to Advisor, whether any Offering is consummated before or after the effective date of termination, as more fully set forth in this Agreement.

10. **Miscellaneous.**

   10.1.    **Entire Agreement; Modification.** This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and, except as expressly provided herein, supersedes any prior understanding or representation of any kind preceding the date of this Agreement. This Agreement may be modified only by a writing signed by all parties to this Agreement.

   10.2.    **Binding Agreement.** This Agreement shall be binding upon and inure to the benefit of the respective successors and assigns of the parties hereto.

   10.3.    **Notices.** Any notice to be given under this Agreement will be sufficient if in writing and delivered by personal delivery, first-class mail, postage prepaid, or by nationally recognized overnight carrier, to the address of the party to be notified, as set forth on the signature page of this Agreement. Notices sent by first-class mail shall be deemed received three business days after the date such notice is mailed. Notices sent by overnight courier shall be deemed received two business days after the date such notice is sent.

   10.4.    **Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one agreement. Delivery of a counterpart of this Agreement by facsimile, including by electronic delivery, shall be equally effective as delivery of a manually executed counterpart.



Case: 23-03019   Doc# 1   Filed: 05/09/23   Entered: 05/09/23 09:53:57   Page 23 of 76

10.5.    **Governing Law; Jurisdiction.** This Agreement is governed by and shall be construed in accordance with the laws of the State of California, without regard to choice of law provisions. Any dispute shall be brought in the state or federal courts located in San Francisco County, State of California. The parties irrevocably waive any objections they may have based on improper venue or inconvenient forum in San Francisco County, State of California and agree that such location shall be the sole and exclusive venue for the resolution of any dispute.

10.6.    **Waiver of Jury Trial.** The parties hereby waive any right to trial by jury in any action, proceeding or counterclaim (whether based on contract, tort or otherwise) related to or arising out of or related to this Agreement.



Case: 23-03019    Doc# 1    Filed: 05/09/23    Entered: 05/09/23 09:53:57    Page 24 of 76

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

**Growth Capital Services, Inc.**

By: _____

Name: _____

Title: _____

Date: _____

**Big Path Capital, LLC**

By: _____

Name: _____D Michael Whelchel_____

Title: _____Managing Partner_____

Date: _____4/9/2018_____



By: _____

Title: ___MANAGING PARTNER___

Date: ___4/9/18___

**9** of **16**

GCS CONFIDENTIAL 2543

# APPENDIX A

## FEE TERMS AND CONDITIONS

## PERTAINING TO OFFERINGS

1. The Broker Dealer Fee shall be paid in the following installments: 50% on the date of the closing (each, a "Closing") (i.e., the date upon which the relevant Prospective Investor enters into a binding agreement for the investment in the Offering), and 50% due six (6) months after the Closing.

2. A 1% Follow-on Broker Dealer Fee applies to any Prospective Investor who invested in the Offering and invests in a subsequent Offering with like terms within two years of the termination of this Agreement.

3. If the Offering is consummated in a manner that includes more than one closing or funding, a separate Broker Dealer Fee shall be due with each such funding or closing.

4. [For Company Clients.] Any warrants or options provided to any counterparty as part of the Offering, without reference to whether or when such warrants or options may be exercised, shall be considered equity equivalents for purposes of calculating the Broker Dealer Fee, and shall be valued by the number of warrant or option shares multiplied by the exercise price per share for such warrants or options, net of the actual purchase price paid for such warrants or options, if any.

5. The Broker Dealer Fee shall be directed to GCS at the following address:

   **Wire Transfer Information** (preferred)

   New Resource Bank

   **Mailing Address for Checks**

   Growth Capital Services
   548 Market St #49172
   San Francisco, CA 94104



5. The Event Fee shall be directed to Advisor at the following:

**Wire Transfer Information** (preferred)





# APPENDIX B

## INDEMNIFICATION

### 1. Indemnification By Client.

1.1.    Client agrees to indemnify, defend and hold harmless Advisor, its affiliates and respective officers, directors, employees and controlling persons (each an "Advisor Indemnified Person") from and against all losses, claims, damages, liabilities and expenses ("Losses"), joint or several, to which any Advisor Indemnified Person may become subject arising out of or in connection with the Offering, the Advisory Services, or this Agreement, including, without limitation, any Losses arising out of any statement or omission in the Client Information. Client will reimburse such Advisor Indemnified Persons for all legal or other expenses as they are incurred in connection with investigating, responding to or defending any of the foregoing; provided, however, that the foregoing indemnification will not, as to any Advisor Indemnified Person, apply to Losses to the extent that they are finally judicially determined to have resulted from the gross negligence or willful misconduct of such Advisor Indemnified Person, in which event any reimbursement previously made to such Advisor Indemnified Person will be returned to Client.

1.2.    Client further agrees to indemnify, defend and hold harmless GCS, its affiliates and respective officers, directors, employees and controlling persons (each a "GCS Indemnified Person") from and against all losses, claims, damages, liabilities and expenses ("Losses"), joint or several, to which any GCS Indemnified Person may become subject arising out of or in connection with the Offering, the Broker Dealer Services, or this Agreement, including, without limitation, any Losses arising out of any statement or omission in the Client Information. Client will reimburse such GCS Indemnified Persons for all legal or other expenses as they are incurred in connection with investigating, responding to or defending any of the foregoing; provided, however, that the foregoing indemnification will not, as to any GCS Indemnified Person, apply to Losses to the extent that they are finally judicially determined to have resulted from the gross negligence or willful misconduct of such GCS Indemnified Person, in which event any reimbursement previously made to such GCS Indemnified Person will be returned to Client.

1.3.    If, for any reason, the foregoing indemnification as set forth in Sections 1.1 and 1.2 is unavailable to any Indemnified Person or insufficient to hold it harmless, then Client shall contribute to the amount paid or payable by such Indemnified Person as a result of such Losses in such proportion as is appropriate to reflect not only the relative benefits received by Client on the one hand and such Indemnified Person on the other hand but also the relative fault of the Client and such Indemnified Person, as well as any relevant equitable considerations.

1.4.    The indemnity, reimbursement and contribution obligations of Client under this Section 1 shall be in addition to any liability which Client may otherwise have to an Indemnified Person



Case: 23-03019    Doc# 1    Filed: 05/09/23    Entered: 05/09/23 09:53:57    Page 28 of 76

and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of Client and any Indemnified Person.

1.5.    Client shall not be liable for any settlement of any proceeding effected without Client's written consent (which consent shall not be unreasonably withheld), but if a proceeding is settled with Client's written consent or if there be a final judgment for the plaintiff in any such proceeding, Client agrees to indemnify and hold harmless each Indemnified Person from and against all Losses incurred by reason of such settlement or judgment.

## 2. Indemnification By Advisor.

2.1.    Advisor agrees to indemnify, defend and hold harmless Client, its affiliates and respective officers, directors, employees and controlling persons (each a "Client Indemnified Person") from and against all Losses, joint or several, to which any Client Indemnified Person may become subject arising out of or in connection with (a) any material breach by Advisor of this Agreement, or (b) the gross negligence or willful misconduct of Advisor. Advisor will reimburse such Client Indemnified Persons for all legal or other expenses as they are incurred in connection with investigating, responding to or defending any of the foregoing.

2.2.    If, for any reason, the foregoing indemnification as set forth in Section 2.1 is unavailable to any Client Indemnified Person or insufficient to hold it harmless, then Advisor shall contribute to the amount paid or payable by such Client Indemnified Person as a result of such Losses in such proportion as is appropriate to reflect not only the relative benefits received by Advisor on the one hand and such Client Indemnified Person on the other hand but also the relative fault of Advisor and such Client Indemnified Person, as well as any relevant equitable considerations.

2.3.    The indemnity and reimbursement obligations of Advisor under this Section 2 shall be in addition to any liability which Advisor may otherwise have to a Client Indemnified Person and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of Advisor and any Client Indemnified Person.

2.4.    Advisor shall not be liable for any settlement of any proceeding effected without Advisor's written consent (which consent shall not be unreasonably withheld), but if a proceeding is settled with Advisor's written consent or if there be a final judgment for the plaintiff in any such proceeding, Advisor agrees to indemnify and hold harmless each Client Indemnified Person from and against all Losses incurred by reason of such settlement or judgment.

## 3. Indemnification By GCS.

3.1.    GCS agrees to indemnify, defend and hold harmless each Client Indemnified Person from and against all Losses, joint or several, to which any Client Indemnified Person may become subject arising out of or in connection with (a) any material breach by GCS of this Agreement, or (b) the gross negligence or willful misconduct of GCS. GCS will reimburse such Client Indemnified



GCS CONFIDENTIAL 2547

Persons for all legal or other expenses as they are incurred in connection with investigating, responding to or defending any of the foregoing.

3.2.    The indemnity and reimbursement obligations of GCS under this Section 3 shall be in addition to any liability which GCS may otherwise have to a Client Indemnified Person and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of GCS and any Client Indemnified Person.

3.3.    GCS shall not be liable for any settlement of any proceeding effected without GCS's written consent (which consent shall not be unreasonably withheld), but if a proceeding is settled with GCS's written consent or if there be a final judgment for the plaintiff in any such proceeding, GCS agrees to indemnify and hold harmless each Client Indemnified Person from and against all Losses incurred by reason of such settlement or judgment.



Case: 23-03019    Doc# 1    Filed: 05/09/23    Entered: 05/09/23 09:53:57    Page 30 of 76

## APPENDIX C

### REGULATION D "BAD ACTORS" CERTIFICATION

Client hereby certifies that neither it nor any of its controlling parties (including applicable officers, directors and other personnel) or 20% or greater direct or indirect beneficial owners[1], nor any other "covered person" (as determined under Rule 506(d)) is subject to any of the disqualifying sanctions identified in Rule 506(d) under the Securities Act of 1933, as amended, and listed below.

The disqualifying sanctions identified in Rule 506(d) are:

Within the last ten (10) years, conviction for a felony or misdemeanor, in the United States, (i) in connection with the purchase or sale of any security, (ii) involving the making of any false filing with the U.S. Securities and Exchange Commission or (iii) arising out of the conduct of the business of an underwriter, broker, dealer, municipal securities dealer, investment adviser or paid solicitor of purchasers of securities.

Currently subject to any order, judgment or decree of any court of competent jurisdiction, entered in the last five (5) years, that restrains or enjoins a person from engaging in any conduct or practice (i) in connection with the purchase or sale of any security, (ii) involving the making of a false filing with the U.S. Securities and Exchange Commission or (iii) arising out of the conduct of the business of an underwriter, broker, dealer, municipal securities dealer, investment adviser or paid solicitor of purchasers of securities.

Currently subject to a final order of a State securities commission (or an agency or officer of a State performing like functions), a State authority that supervises or examines banks, savings associations, or credit unions, a State insurance commission (or an agency or officer of a State performing like functions), an appropriate Federal banking agency, the National Credit Union Administration, or the U.S. Commodity Futures Trading Commission, that (x) bars a person from (i) association with an entity regulated by such commission, authority, agency or officer; (ii) engaging in the business of securities, insurance, or banking; or (iii) engaging in savings association or credit union activities; or (y) constitutes a final order based on a violation of any law or regulation that prohibits fraudulent, manipulative, or deceptive conduct within the last ten (10) years.

Currently subject to an order of the U.S. Securities and Exchange Commission pursuant to Section 15(b) or 15B(c) of the Securities Exchange Act of 1934 or Section 203(e) or (f) of the Investment Advisers Act of 1940 that (i) suspends or revokes a person's registration as a broker, dealer, municipal securities dealer or investment adviser, (ii) places limitations on their activities, functions or operations

---

[1] "Beneficial owner" under Rule 506(d) means any person who, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, under Securities Exchange Act of 1934 Rule 13d-3 has or shares, or is deemed to have or share: (1) voting power, which includes the power to vote, or to direct the voting of, such security; and/or (2) investment power, which includes the power to dispose, or to direct the disposition of, such security.



or (iii) bars them from being associated with any entity or from participating in the offering of any penny stock.

Currently subject to any order of the U.S. Securities and Exchange Commission, entered in the last five (5) years, that orders a person to cease and desist from committing or causing a violation or future violation of (a) any scienter-based anti-fraud provision of the federal securities laws (including without limitation Section 17(a)(1) of the Securities Act of 1933, Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder, Section 15(c)(1) of the Securities Exchange Act of 1934 and Section 206(1) of the Investment Advisers Act of 1940, or any other rule or regulation thereunder) or (b) Section 5 of the Securities Act of 1933.

Currently suspended or expelled from membership in, or suspended or barred from association with a member of, a securities self-regulatory organization for any act or omission to act constituting conduct inconsistent with just and equitable principles of trade.

Filed as a registrant or issuer, or been named as an underwriter in, a registration statement or Regulation A offering statement filed with the U.S. Securities and Exchange Commission that, within the last five (5) years, (i) was the subject of a refusal order, stop order, or order suspending the Regulation A exemption or (ii) is currently the subject of an investigation or a proceeding to determine whether such a stop order or suspension order should be issued.

Subject to (i) a United States Postal Service false representation order entered into within the last five (5) years or (ii) a temporary restraining order or preliminary injunction with respect to conduct alleged by the United States Postal Service to constitute a scheme or device for obtaining money or property through the mail by means of false representations.



Case: 23-03019   Doc# 1   Filed: 05/09/23   Entered: 05/09/23 09:53:57   Page 32 of 76

# EXHIBIT B

DocuSign Envelope ID: B989E6A8-75AE-415F-AA02-44A1DDCAEA31

## AMENDMENT TO LETTER AGREEMENT

This Amendment to Letter Agreement (this "Agreement"), dated as of January 21, 2022, by and among (i) Growth Capital Services, Inc. ("Broker Dealer"), a broker-dealer registered with the U.S. Securities and Exchange Commission (the "SEC"), and member of the Financial Industry Regulatory Authority, Inc. ("FINRA"), (ii) New Markets (collectively with its direct and indirect subsidiaries and affiliates, the "Company"), (iii) Big Path Capital LLC ("Big Path") with Michael Whelchel, a registered representative of Finalis Securities LLC, a Delaware limited liability company, a broker-dealer registered with the SEC, and member of FINRA ("Finalis" and, together with Broker Dealer, the Company, Big Path and the Representative the "Parties") as the signatory for Big Path hereto and as a registered representative of Finalis and (iv) Finalis, is a part of and is incorporated into that certain engagement letter, dated March 31, 2021, by and among Broker Dealer, Big Path and the Company (the "Letter Agreement").

The Parties hereby agree as follows as of the date hereof:

1. All of Broker Dealer's rights, title, obligations, duties, and interest in the Letter Agreement (the "Rights") shall be assigned by Broker Dealer to Finalis and Finalis assumes the Rights. All references in the Letter Agreement to (i) "Growth Capital Services, Inc." are hereby replaced with "Finalis Securities LLC" and (ii) "GCS" are hereby replaced with "Finalis". Notwithstanding anything to the contrary in the Letter Agreement or in the Independent Contractor Agreement (as defined in the Letter Agreement), as of the date hereof, Broker Dealer shall not be entitled to receive any fees, tail fee or compensation pursuant under the Letter Agreement as of the date hereof.

2. The wire instructions set forth in clause 4 of Appendix A of the Letter Agreement are hereby amended and restated in their entirety as follows:

| | |
|---|---|
| Bank: | Evolve Bank and Trust |
| Address: | 301 Shoppingway Boulevard |
| | West Memphis, Arkansas 72301 |
| Beneficiary: | Finalis Securities LLC |
| Reference: | Big Path Capital LLC |
| Account Number: |  |
| Routing Number (ACH + wires): | |

3. The first sentence of Section 3.1 of Appendix B of the Letter Agreement is hereby amended by inserting the following language at the end thereof: "provided, however, that Finalis will not be liable to indemnify Client pursuant to this paragraph to the extent that an arbitrator (or panel of arbitrators) or a court of competent jurisdiction will have determined by a final non-appealable judgment that such Losses resulted from the gross negligence or willful misconduct of Client.".

4. Except as specifically set forth herein, the Letter Agreement shall remain unaltered and in full force and effect and the respective terms, conditions or covenants thereof are hereby in all respects ratified and confirmed. In the event of any inconsistency between the provisions of this Agreement and the Letter Agreement, the provisions of this Agreement shall govern.

5. The signatories hereto respectively represent and warrant that they are each duly authorized to enter into this Agreement on behalf of the party they represent.

6. This Amendment shall be governed and construed in accordance with the laws of the State of California.

DocuSign Envelope ID: B989E6A8-75AE-415F-AA02-44A1DDCAEA31

[signatures follow]

**IN WITNESS WHEREOF,** the Parties have executed this Amendment to Letter Agreement as of the date first set forth above.

**BROKER DEALER:**

**Growth Capital Services, Inc.**

By: _Brian Dunn_

Name: Brian Dunn

Its:

**COMPANY:**

**New Markets**

By: _____

Name: Jason Palmer

Its: General Partner

**FINALIS:**

**Finalis Securities LLC**

By: _Brad Ziemba_

Name: Brad Ziemba

Its: Chief Compliance Officer

**BIG PATH:**

**Big Path Capital LLC**

By: _Michael Whelchel_

Name: Michael Whelchel

Title: Managing Director of Big Path and a Registered Representative of Finalis

[Signature Page to Amendment to Letter Agreement]

DocuSign Envelope ID: 27CEE14B-50D6-4963-856B-A017C0C481EE

## AMENDMENT TO LETTER AGREEMENT

This Amendment to Letter Agreement (this "Agreement"), dated as of January 21, 2022, by and among (i) Growth Capital Services, Inc. ("Broker Dealer"), a broker-dealer registered with the U.S. Securities and Exchange Commission (the "SEC"), and member of the Financial Industry Regulatory Authority, Inc. ("FINRA"), (ii) Center Creek Capital Group LLC (collectively with its direct and indirect subsidiaries and affiliates, the "Company"), (iii) Big Path Capital LLC ("Big Path") with Michael Whelchel, a registered representative of Finalis Securities LLC, a Delaware limited liability company, a broker-dealer registered with the SEC, and member of FINRA ("Finalis" and, together with Broker Dealer, the Company, Big Path and the Representative the "Parties") as the signatory for Big Path hereto and as a registered representative of Finalis and (iv) Finalis, is a part of and is incorporated into that certain engagement letter, dated April 16, 2020, by and among Broker Dealer, Big Path and the Company (the "Letter Agreement").

The Parties hereby agree as follows as of the date hereof:

1. All of Broker Dealer's rights, title, obligations, duties, and interest in the Letter Agreement (the "Rights") shall be assigned by Broker Dealer to Finalis and Finalis assumes the Rights. All references in the Letter Agreement to (i) "Growth Capital Services, Inc." are hereby replaced with "Finalis Securities LLC" and (ii) "GCS" are hereby replaced with "Finalis". Notwithstanding anything to the contrary in the Letter Agreement or in the Independent Contractor Agreement (as defined in the Letter Agreement), as of the date hereof, Broker Dealer shall not be entitled to receive any fees, tail fee or compensation pursuant under the Letter Agreement as of the date hereof.

2. (a) the address of Broker Dealer set forth in clause 2 of Appendix A of the Letter Agreement are hereby deleted and (b) wire instructions set forth in clause 2 of Appendix A of the Letter Agreement are hereby amended and restated in their entirety as follows:

| | |
|---|---|
| Bank: | Evolve Bank and Trust |
| Address: | 301 Shoppingway Boulevard |
| | West Memphis, Arkansas 72301 |
| Beneficiary: | Finalis Securities LLC |
| Reference: | Big Path Capital LLC |
| Account Number: |  |
| Routing Number (ACH + wires): | |

3. The first sentence of Section 3.1 of Appendix B of the Letter Agreement is hereby amended by inserting the following language at the end thereof: "provided, however, that Finalis will not be liable to indemnify any Client Indemnified Person pursuant to this paragraph to the extent that an arbitrator (or panel of arbitrators) or a court of competent jurisdiction will have determined by a final non-appealable judgment that such Losses resulted from the gross negligence or willful misconduct of such Client Indemnified Person.".

4. Except as specifically set forth herein, the Letter Agreement shall remain unaltered and in full force and effect and the respective terms, conditions or covenants thereof are hereby in all respects ratified and confirmed. In the event of any inconsistency between the provisions of this Agreement and the Letter Agreement, the provisions of this Agreement shall govern.

5. The signatories hereto respectively represent and warrant that they are each duly authorized to enter into this Agreement on behalf of the party they represent.

6. This Amendment shall be governed and construed in accordance with the laws of the State of California.

[signatures follow]

**IN WITNESS WHEREOF,** the Parties have executed this Amendment to Letter Agreement as of the date first set forth above.

**BROKER DEALER:**

**Growth Capital Services, Inc.**

By: _Brian Dunn_

Name: Brian Dunn

Its:

**COMPANY:**

**Center Creek Capital Group LLC**

By: _____

Name: Dan Magder

Its: Managing Partner

**FINALIS:**

**Finalis Securities LLC**

By: _Brad Zemba_

Name: Brad Zemba

Its: Chief Compliance Officer

**BIG PATH:**

**Big Path Capital LLC**

By: _Michael Whelchel_

Name: Michael Whelchel

Title: Managing Director of Big Path and a Registered Representative of Finalis

[Signature Page to Amendment to Letter Agreement]

## AMENDMENT TO LETTER AGREEMENT

This Amendment to Letter Agreement (this "Agreement"), dated as of April 7, 2022, by and among (i) Growth Capital Services, Inc. ("Broker Dealer"), a broker-dealer registered with the U.S. Securities and Exchange Commission (the "SEC"), and member of the Financial Industry Regulatory Authority, Inc. ("FINRA"), (ii) 3Degrees Group, Inc. (collectively with its direct and indirect subsidiaries and affiliates, the "Company"), (iii) Big Path Capital LLC ("Big Path") with Michael Whelchel, a registered representative of Finalis Securities LLC, a Delaware limited liability company, a broker-dealer registered with the SEC, and member of FINRA ("Finalis" and, together with Broker Dealer, the Company, Big Path and the Representative the "Parties") as the signatory for Big Path hereto and as a registered representative of Finalis and (iv) Finalis, is a part of and is incorporated into that certain engagement letter, dated November 5, 2021, by and among Broker Dealer, Big Path and the Company (the "Letter Agreement").

The Parties hereby agree as follows as of the date hereof:

1. All of Broker Dealer's rights, title, obligations, duties, and interest in the Letter Agreement (the "Rights") shall be assigned by Broker Dealer to Finalis and Finalis assumes the Rights. All references in the Letter Agreement to (i) "Growth Capital Services, Inc." are hereby replaced with "Finalis Securities LLC" and (ii) "GCS" are hereby replaced with "Finalis". Notwithstanding anything to the contrary in the Letter Agreement or in the Independent Contractor Agreement (as defined in the Letter Agreement), as of the date hereof, Broker Dealer shall not be entitled to receive any fees, tail fee or compensation pursuant under the Letter Agreement as of the date hereof.

2. The wire instructions set forth in clause 4 of Appendix A of the Letter Agreement are hereby amended and restated in their entirety as follows:

| | |
|---|---|
| Bank: | Evolve Bank and Trust |
| Address: | 301 Shoppingway Boulevard |
| | West Memphis, Arkansas 72301 |
| Beneficiary: | Finalis Securities LLC |
| Reference: | Big Path Capital LLC |
| Account Number: |  |
| Routing Number (ACH + wires): | |

3. Except as specifically set forth herein, the Letter Agreement shall remain unaltered and in full force and effect and the respective terms, conditions or covenants thereof are hereby in all respects ratified and confirmed. In the event of any inconsistency between the provisions of this Agreement and the Letter Agreement, the provisions of this Agreement shall govern.

4. The signatories hereto respectively represent and warrant that they are each duly authorized to enter into this Agreement on behalf of the party they represent.

5. This Amendment shall be governed and construed in accordance with the laws of the State of California.

[signatures follow]

**IN WITNESS WHEREOF,** the Parties have executed this Amendment to Letter Agreement as of the date first set forth above.

**BROKER DEALER:**

**Growth Capital Services, Inc.**

By: _Brian Dunn_
Name: Brian Dunn
Its: CEO

**COMPANY:**

**3Degrees Group, Inc.**

By: _Steve McDougal_
Name: Steve McDougal
Its: CEO

**FINALIS:**

**Finalis Securities LLC**

By: _Brad Ziemba_
Name: Brad Ziemba
Its: Chief Compliance Officer

**BIG PATH:**

**Big Path Capital LLC**

By: _Michael Whelchel_
Name: Michael Whelchel
Title: Managing Director of Big Path and a Registered Representative of Finalis

[Signature Page to Amendment to Letter Agreement]

DocuSign Envelope ID: 85F308F7-EFF1-4BB0-8C17-CCEF58F46DD5

## AMENDMENT TO LETTER AGREEMENT

This Amendment to Letter Agreement (this "Agreement"), dated as of February 3, 2022, by and among (i) Growth Capital Services, Inc. ("Broker Dealer"), a broker-dealer registered with the U.S. Securities and Exchange Commission (the "SEC"), and member of the Financial Industry Regulatory Authority, Inc. ("FINRA"), (ii) American South Real Estate Fund II, LP (collectively with its direct and indirect subsidiaries and affiliates, the "Company"), (iii) Big Path Capital LLC ("Big Path") with Michael Whelchel, a registered representative of Finalis Securities LLC, a Delaware limited liability company, a broker-dealer registered with the SEC, and member of FINRA ("Finalis" and, together with Broker Dealer, the Company, Big Path and the Representative the "Parties") as the signatory for Big Path hereto and as a registered representative of Finalis and (iv) Finalis, is a part of and is incorporated into that certain engagement letter, dated March 31, 2021, by and among Broker Dealer, Big Path and the Company (the "Letter Agreement").

The Parties hereby agree as follows as of the date hereof:

1.  All of Broker Dealer's rights, title, obligations, duties, and interest in the Letter Agreement (the "Rights") shall be assigned by Broker Dealer to Finalis and Finalis assumes the Rights. All references in the Letter Agreement to (i) "Growth Capital Services, Inc." are hereby replaced with "Finalis Securities LLC" and (ii) "GCS" are hereby replaced with "Finalis". Notwithstanding anything to the contrary in the Letter Agreement or in the Independent Contractor Agreement (as defined in the Letter Agreement), as of the date hereof, Broker Dealer shall not be entitled to receive any fees, tail fee or compensation pursuant under the Letter Agreement as of the date hereof.

2.  The wire instructions set forth in clause 4 of Appendix A of the Letter Agreement are hereby amended and restated in their entirety as follows:

    | | |
    |---|---|
    | Bank: | Evolve Bank and Trust |
    | Address: | 301 Shoppingway Boulevard |
    | | West Memphis, Arkansas 72301 |
    | Beneficiary: | Finalis Securities LLC |
    | Reference: | Big Path Capital LLC |
    | Account Number: |  |
    | Routing Number (ACH + wires): | |

3.  The first sentence of Section 3.1 of Appendix B of the Letter Agreement is hereby amended by inserting the following language at the end thereof: "provided, however, that Finalis will not be liable to indemnify Client pursuant to this paragraph to the extent that an arbitrator (or panel of arbitrators) or a court of competent jurisdiction will have determined by a final non-appealable judgment that such Losses resulted from the gross negligence or willful misconduct of Client.".

4.  Except as specifically set forth herein, the Letter Agreement shall remain unaltered and in full force and effect and the respective terms, conditions or covenants thereof are hereby in all respects ratified and confirmed. In the event of any inconsistency between the provisions of this Agreement and the Letter Agreement, the provisions of this Agreement shall govern.

5.  The signatories hereto respectively represent and warrant that they are each duly authorized to enter into this Agreement on behalf of the party they represent.

6.  This Amendment shall be governed and construed in accordance with the laws of the State of California.

DocuSign Envelope ID: 85F308F7-EFF1-4BB0-8C17-CCEF58F46DD5

[signatures follow]

**IN WITNESS WHEREOF,** the Parties have executed this Amendment to Letter Agreement as of the date first set forth above.

**BROKER DEALER:**

**Growth Capital Services, Inc.**

By: _Brian Dunn_

Name: Brian Dunn

Its:

**COMPANY:**

**American South Real Estate Fund II, LP**

By: _Deborah J. La Franchi_

Name: Deborah J. La Franchi

Its: Founder & CEO

**FINALIS:**

**Finalis Securities LLC**

By: _Brad Ziemba_

Name: Brad Ziemba

Its: Chief Compliance Officer

**BIG PATH:**

**Big Path Capital LLC**

By: _Michael Whelchel_

Name: Michael Whelchel

Title: Managing Director of Big Path and a Registered Representative of Finalis

[Signature Page to Amendment to Letter Agreement]

DocuSign Envelope ID: F670732D-65FA-47A8-BEC0-48EA49D5B245

## AMENDMENT TO LETTER AGREEMENT

This Amendment to Letter Agreement (this "Agreement"), dated as of February 3, 2022, by and among (i) Growth Capital Services, Inc. ("Broker Dealer"), a broker-dealer registered with the U.S. Securities and Exchange Commission (the "SEC"), and member of the Financial Industry Regulatory Authority, Inc. ("FINRA"), (ii) Autism Impact Fund GP LLC (collectively with its direct and indirect subsidiaries and affiliates, the "Company"), (iii) Big Path Capital LLC ("Big Path") with Michael Whelchel, a registered representative of Finalis Securities LLC, a Delaware limited liability company, a broker-dealer registered with the SEC, and member of FINRA ("Finalis" and, together with Broker Dealer, the Company, Big Path and the Representative the "Parties") as the signatory for Big Path hereto and as a registered representative of Finalis and (iv) Finalis, is a part of and is incorporated into that certain engagement letter, dated March 31, 2021, by and among Broker Dealer, Big Path and the Company (the "Letter Agreement").

The Parties hereby agree as follows as of the date hereof:

1. All of Broker Dealer's rights, title, obligations, duties, and interest in the Letter Agreement (the "Rights") shall be assigned by Broker Dealer to Finalis and Finalis assumes the Rights. All references in the Letter Agreement to (i) "Growth Capital Services, Inc." are hereby replaced with "Finalis Securities LLC" and (ii) "GCS" are hereby replaced with "Finalis". Notwithstanding anything to the contrary in the Letter Agreement or in the Independent Contractor Agreement (as defined in the Letter Agreement), as of the date hereof, Broker Dealer shall not be entitled to receive any fees, tail fee or compensation pursuant under the Letter Agreement as of the date hereof.

2. The wire instructions set forth in clause 4 of Appendix A of the Letter Agreement are hereby amended and restated in their entirety as follows:

   Bank:                              Evolve Bank and Trust
   Address:                           301 Shoppingway Boulevard
                                      West Memphis, Arkansas 72301
   Beneficiary:                       Finalis Securities LLC
   Reference:                         Big Path Capital LLC
   Account Number:                    
   Routing Number (ACH + wires):      0

3. The first sentence of Section 3.1 of Appendix B of the Letter Agreement is hereby amended by inserting the following language at the end thereof: "provided, however, that Finalis will not be liable to indemnify Client pursuant to this paragraph to the extent that an arbitrator (or panel of arbitrators) or a court of competent jurisdiction will have determined by a final non-appealable judgment that such Losses resulted from the gross negligence or willful misconduct of Client.".

4. Except as specifically set forth herein, the Letter Agreement shall remain unaltered and in full force and effect and the respective terms, conditions or covenants thereof are hereby in all respects ratified and confirmed. In the event of any inconsistency between the provisions of this Agreement and the Letter Agreement, the provisions of this Agreement shall govern.

5. The signatories hereto respectively represent and warrant that they are each duly authorized to enter into this Agreement on behalf of the party they represent.

6. This Amendment shall be governed and construed in accordance with the laws of the State of California.

DocuSign Envelope ID: F670732D-65FA-47A8-BEC0-48EA49D5B245

[signatures follow]

IN WITNESS WHEREOF, the Parties have executed this Amendment to Letter Agreement as of the date first set forth above.

**BROKER DEALER:**

**Growth Capital Services, Inc.**

By: _Brian Dunn_
Name: Brian Dunn
Its:

**COMPANY:**

Autism Impact Fund GP LLC

By: _Chris Male_
Name: Christopher Male
Its: Managing Member

**FINALIS:**

**Finalis Securities LLC**

By: _Brad Ziemba_
Name: Brad Ziemba
Its: Chief Compliance Officer

**BIG PATH:**

**Big Path Capital LLC**

By: _Michael Whelchel_
Name: Michael Whelchel
Title: Managing Director of Big Path and a Registered Representative of Finalis

[Signature Page to Amendment to Letter Agreement]

## AMENDMENT TO LETTER AGREEMENT

This Amendment to Letter Agreement (this "Agreement"), dated as of January __, 2022, by and among (i) Growth Capital Services, Inc. ("Broker Dealer"), a broker-dealer registered with the U.S. Securities and Exchange Commission (the "SEC"), and member of the Financial Industry Regulatory Authority, Inc. ("FINRA"), (ii) Blue Ridge Acquaculture, Inc. (collectively with its direct and indirect subsidiaries and affiliates, the "Company"), (iii) Big Path Capital LLC ("Big Path") with Michael Whelchel, a registered representative of Finalis Securities LLC, a Delaware limited liability company, a broker-dealer registered with the SEC, and member of FINRA ("Finalis" and, together with Broker Dealer, the Company, Big Path and the Representative the "Parties") as the signatory for Big Path hereto and as a registered representative of Finalis and (iv) Finalis, is a part of and is incorporated into that certain engagement letter, dated November 1, 2021, by and among Broker Dealer, Big Path and the Company (the "Letter Agreement").

The Parties hereby agree as follows as of the date hereof:

1. All of Broker Dealer's rights, title, obligations, duties, and interest in the Letter Agreement (the "Rights") shall be assigned by Broker Dealer to Finalis and Finalis assumes the Rights. Notwithstanding anything to the contrary in the Letter Agreement or in the Independent Contractor Agreement (as defined in the Letter Agreement), as of the date hereof, Broker Dealer shall not be entitled to receive any fees, tail fee or compensation pursuant under the Letter Agreement. All references in the Letter Agreement to (i) "Growth Capital Services, Inc." are hereby replaced with "Finalis Securities LLC" and (ii) "GCS" are hereby replaced with "Finalis". The address of Broker Dealer referenced in the introductory paragraph is hereby removed.

2. Section 8.5 of the Letter Agreement is hereby amended by inserting the following language at the end thereof: "Notwithstanding anything to the contrary herein, solely in connection with proceedings involving Finalis, this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without regard to choice of law provisions, any such proceeding involving Finalis shall be subject to arbitration under the rules of FINRA and arbitration has to be held in Wilmington, Delaware, and the parties in such proceeding irrevocably waive any objections based on improper venue or inconvenient forum in the state or federal courts located in Wilmington, Delaware.".

3. The wire instructions set forth in clause 3 of Appendix A of the Letter Agreement are hereby amended and restated in their entirety as follows:

   Bank:                       Evolve Bank and Trust
   Address:                301 Shoppingway Boulevard
                                   West Memphis, Arkansas 72301
   Beneficiary:           Finalis Securities LLC
   Reference:             Big Path Capital LLC
   Account Number:      
   Routing Number (ACH + wires):

4. Except as specifically set forth herein, the Letter Agreement shall remain unaltered and in full force and effect and the respective terms, conditions or covenants thereof are hereby in all respects ratified and confirmed. In the event of any inconsistency between the provisions of this Agreement and the Letter Agreement, the provisions of this Agreement shall govern.

5. The signatories hereto respectively represent and warrant that they are each duly authorized to enter into this Agreement on behalf of the party they represent.

DocuSign Envelope ID: A8DDF696-3E65-47DD-B4FB-FE08E7E81938

6. This Amendment shall be governed and construed in accordance with the laws of the State of Delaware.

[signatures follow]

**IN WITNESS WHEREOF,** the Parties have executed this Amendment to Letter Agreement as of the date first set forth above.

**BROKER DEALER:**

**Growth Capital Services, Inc.**

By: *Dennis Azary*
Name: Dennis Azary
Its: CCO

**COMPANY:**

**Blue Ridge Aquaculture, Inc.**

By: *Martin Gardner*
Name: Martin Gardner
Its: VP of Business Development

**FINALIS:**

**Finalis Securities LLC**

By: *Brad Ziemba*
Name: Brad Ziemba
Its: Chief Compliance Officer

**BIG PATH:**

**Big Path Capital LLC**

By: *Michael Whelchel*
Name: Michael Whelchel
Title: Managing Director of Big Path and a Registered Representative of Finalis

[Signature Page to Amendment to Letter Agreement]

# AMENDMENT TO LETTER AGREEMENT

This Amendment to Letter Agreement (this "<u>Agreement</u>"), dated as of February 3, 2022, by and among (i) Growth Capital Services, Inc. ("<u>Broker Dealer</u>"), a broker-dealer registered with the U.S. Securities and Exchange Commission (the "<u>SEC</u>"), and member of the Financial Industry Regulatory Authority, Inc. ("<u>FINRA</u>"), (ii) Buoyant Ventures, LLC (collectively with its direct and indirect subsidiaries and affiliates, the "<u>Company</u>"), (iii) Big Path Capital LLC ("Big Path") with Michael Whelchel, a registered representative of Finalis Securities LLC, a Delaware limited liability company, a broker-dealer registered with the SEC, and member of FINRA ("<u>Finalis</u>" and, together with Broker Dealer, the Company, Big Path and the Representative the "<u>Parties</u>") as the signatory for Big Path hereto and as a registered representative of Finalis and (iv) Finalis, is a part of and is incorporated into that certain engagement letter, dated March 31, 2021, by and among Broker Dealer, Big Path and the Company (the "<u>Letter Agreement</u>").

The Parties hereby agree as follows as of the date hereof:

1. All of Broker Dealer's rights, title, obligations, duties, and interest in the Letter Agreement (the "<u>Rights</u>") shall be assigned by Broker Dealer to Finalis and Finalis assumes the Rights. All references in the Letter Agreement to (i) "Growth Capital Services, Inc." are hereby replaced with "Finalis Securities LLC" and (ii) "GCS" are hereby replaced with "Finalis". Notwithstanding anything to the contrary in the Letter Agreement or in the Independent Contractor Agreement (as defined in the Letter Agreement), as of the date hereof, Broker Dealer shall not be entitled to receive any fees, tail fee or compensation pursuant under the Letter Agreement as of the date hereof.

2. The wire instructions set forth in clause 4 of Appendix A of the Letter Agreement are hereby amended and restated in their entirety as follows:

   Bank:                          Evolve Bank and Trust
   Address:                  301 Shoppingway Boulevard
                                     West Memphis, Arkansas 72301
   Beneficiary:             Finalis Securities LLC
   Reference:               Big Path Capital LLC
   Account Number:     
   Routing Number (ACH + wires):

3. The first sentence of Section 3.1 of Appendix B of the Letter Agreement is hereby amended by inserting the following language at the end thereof: "provided, however, that Finalis will not be liable to indemnify Client pursuant to this paragraph to the extent that an arbitrator (or panel of arbitrators) or a court of competent jurisdiction will have determined by a final non-appealable judgment that such Losses resulted from the gross negligence or willful misconduct of Client.".

4. Except as specifically set forth herein, the Letter Agreement shall remain unaltered and in full force and effect and the respective terms, conditions or covenants thereof are hereby in all respects ratified and confirmed. In the event of any inconsistency between the provisions of this Agreement and the Letter Agreement, the provisions of this Agreement shall govern.

5. The signatories hereto respectively represent and warrant that they are each duly authorized to enter into this Agreement on behalf of the party they represent.

6. This Amendment shall be governed and construed in accordance with the laws of the State of California.

DocuSign Envelope ID: C76170C8-CBBB-454D-819D-17CA5475D03D

[signatures follow]

**IN WITNESS WHEREOF,** the Parties have executed this Amendment to Letter Agreement as of the date first set forth above.

**BROKER DEALER:**

**Growth Capital Services, Inc.**

By: *Brian Dunn*
Name: Brian Dunn
Its:

**COMPANY:**

**Buoyant Ventures, LLC**

By: *Amy Francetic*
Name: Amy Francetic
Its: Managing General Partner

**FINALIS:**

**Finalis Securities LLC**

By: *Brad Ziemba*
Name: Brad Ziemba
Its: Chief Compliance Officer

**BIG PATH:**

**Big Path Capital LLC**

By: *Michael Whelchel*
Name: Michael Whelchel
Title: Managing Director of Big Path and a Registered Representative of Finalis

[Signature Page to Amendment to Letter Agreement]

DocuSign Envelope ID: F6EE2A16-5A0D-4E17-855C-DFFA179CC315

## AMENDMENT TO LETTER AGREEMENT

This Amendment to Letter Agreement (this "Agreement"), dated as of January 4, 2022, by and among (i) Growth Capital Services, Inc. ("Broker Dealer"), a broker-dealer registered with the U.S. Securities and Exchange Commission (the "SEC"), and member of the Financial Industry Regulatory Authority, Inc. ("FINRA"), (ii) AD-SCA Grace Holdings, LLC (collectively with its direct and indirect subsidiaries and affiliates, the "Company"), (iii) Big Path Capital LLC ("Big Path") with Michael Whelchel, a registered representative of Finalis Securities LLC, a Delaware limited liability company, a broker-dealer registered with the SEC, and member of FINRA ("Finalis" and, together with Broker Dealer, the Company, Big Path and the Representative the "Parties") as the signatory for Big Path hereto and as a registered representative of Finalis and (iv) Finalis, is a part of and is incorporated into that certain engagement letter, dated September 11, 2020, by and among Broker Dealer, Big Path and the Company (the "Letter Agreement").

The Parties hereby agree as follows as of the date hereof:

1. All of Broker Dealer's rights, title, obligations, duties, and interest in the Letter Agreement (the "Rights") shall be assigned by Broker Dealer to Finalis and Finalis assumes the Rights. All references in the Letter Agreement to (i) "Growth Capital Services, Inc." are hereby replaced with "Finalis Securities LLC" and (ii) "GCS" are hereby replaced with "Finalis". Notwithstanding anything to the contrary in the Letter Agreement or in the Independent Contractor Agreement (as defined in the Letter Agreement), as of the date hereof, Broker Dealer shall not be entitled to receive any fees, tail fee or compensation pursuant under the Letter Agreement as of the date hereof.

2. The wire instructions set forth in clause 4 of Appendix A of the Letter Agreement are hereby amended and restated in their entirety as follows:

   Bank:                              Evolve Bank and Trust
   Address:                           301 Shoppingway Boulevard
                                      West Memphis, Arkansas 72301
   Beneficiary:                       Finalis Securities LLC
   Reference:                         Big Path Capital LLC
   Account Number:                    
   Routing Number (ACH + wires):

3. The first sentence of Section 3.1 of Appendix B of the Letter Agreement is hereby amended by inserting the following language at the end thereof: "provided, however, that Finalis will not be liable to indemnify Client pursuant to this paragraph to the extent that an arbitrator (or panel of arbitrators) or a court of competent jurisdiction will have determined by a final non-appealable judgment that such Losses resulted from the gross negligence or willful misconduct of Client.".

4. Except as specifically set forth herein, the Letter Agreement shall remain unaltered and in full force and effect and the respective terms, conditions or covenants thereof are hereby in all respects ratified and confirmed. In the event of any inconsistency between the provisions of this Agreement and the Letter Agreement, the provisions of this Agreement shall govern.

5. The signatories hereto respectively represent and warrant that they are each duly authorized to enter into this Agreement on behalf of the party they represent.

6. This Amendment shall be governed and construed in accordance with the laws of the State of California.

DocuSign Envelope ID: F6EE2A16-5A0D-4E17-855C-DFFA179CC315

[signatures follow]

**IN WITNESS WHEREOF,** the Parties have executed this Amendment to Letter Agreement as of the date first set forth above.

**BROKER DEALER:**

**Growth Capital Services, Inc.**

By: _Brian Dunn_
Name: Brian Dunn
Its:

**COMPANY:**

**AD-SCA Grace Holdings, LLC**

By: _James J Falanga Jr_
Name: Jim Falanga
Its: Managing Partner

**FINALIS:**

**Finalis Securities LLC**

By: _Brad Ziemba_
Name: Brad Ziemba
Its: Chief Compliance Officer

**BIG PATH:**

**Big Path Capital LLC**

By: _Michael Whelchel_
Name: Michael Whelchel
Title: Managing Director of Big Path and a Registered Representative of Finalis

[Signature Page to Amendment to Letter Agreement]

DocuSign Envelope ID: 0068B79D-3239-453D-8B82-1536A4E32C9C

## AMENDMENT TO LETTER AGREEMENT

This Amendment to Letter Agreement (this "Agreement"), dated as of February 3, 2022, by and among (i) Growth Capital Services, Inc. ("Broker Dealer"), a broker-dealer registered with the U.S. Securities and Exchange Commission (the "SEC"), and member of the Financial Industry Regulatory Authority, Inc. ("FINRA"), (ii) Kapor Capital (collectively with its direct and indirect subsidiaries and affiliates, the "Company"), (iii) Big Path Capital LLC ("Big Path") with Michael Whelchel, a registered representative of Finalis Securities LLC, a Delaware limited liability company, a broker-dealer registered with the SEC, and member of FINRA ("Finalis" and, together with Broker Dealer, the Company, Big Path and the Representative the "Parties") as the signatory for Big Path hereto and as a registered representative of Finalis and (iv) Finalis, is a part of and is incorporated into that certain engagement letter, dated March 31, 2021, by and among Broker Dealer, Big Path and the Company (the "Letter Agreement").

The Parties hereby agree as follows as of the date hereof:

1. All of Broker Dealer's rights, title, obligations, duties, and interest in the Letter Agreement (the "Rights") shall be assigned by Broker Dealer to Finalis and Finalis assumes the Rights. All references in the Letter Agreement to (i) "Growth Capital Services, Inc." are hereby replaced with "Finalis Securities LLC" and (ii) "GCS" are hereby replaced with "Finalis". Notwithstanding anything to the contrary in the Letter Agreement or in the Independent Contractor Agreement (as defined in the Letter Agreement), as of the date hereof, Broker Dealer shall not be entitled to receive any fees, tail fee or compensation pursuant under the Letter Agreement as of the date hereof.

2. The wire instructions set forth in clause 4 of Appendix A of the Letter Agreement are hereby amended and restated in their entirety as follows:

| | |
|---|---|
| Bank: | Evolve Bank and Trust |
| Address: | 301 Shoppingway Boulevard |
| | West Memphis, Arkansas 72301 |
| Beneficiary: | Finalis Securities LLC |
| Reference: | Big Path Capital LLC |
| Account Number: |  |
| Routing Number (ACH + wires): | |

3. The first sentence of Section 3.1 of Appendix B of the Letter Agreement is hereby amended by inserting the following language at the end thereof: "provided, however, that Finalis will not be liable to indemnify Client pursuant to this paragraph to the extent that an arbitrator (or panel of arbitrators) or a court of competent jurisdiction will have determined by a final non-appealable judgment that such Losses resulted from the gross negligence or willful misconduct of Client.".

4. Except as specifically set forth herein, the Letter Agreement shall remain unaltered and in full force and effect and the respective terms, conditions or covenants thereof are hereby in all respects ratified and confirmed. In the event of any inconsistency between the provisions of this Agreement and the Letter Agreement, the provisions of this Agreement shall govern.

5. The signatories hereto respectively represent and warrant that they are each duly authorized to enter into this Agreement on behalf of the party they represent.

6. This Amendment shall be governed and construed in accordance with the laws of the State of California.

DocuSign Envelope ID: 0068B79D-3239-453D-8B82-1536A4E32C9C

[signatures follow]

DocuSign Envelope ID: 0068B79D-3239-453D-8B82-1536A4E32C9C

**IN WITNESS WHEREOF,** the Parties have executed this Amendment to Letter Agreement as of the date first set forth above.

**BROKER DEALER:**

**Growth Capital Services, Inc.**

By:

Name: Brian Dunn

Its:

**COMPANY:**

**Kapor Capital**

By:

Name: Brian Dixon

Its: Partner

**FINALIS:**

**Finalis Securities LLC**

By:

Name: Brad Ziemba

Its: Chief Compliance Officer

**BIG PATH:**

**Big Path Capital LLC**

By:

Name: Michael Whelchel

Title: Managing Director of Big Path and a Registered Representative of Finalis

[Signature Page to Amendment to Letter Agreement]

DocuSign Envelope ID: C1573516-E423-4B48-8271-03C70D1A3681

## AMENDMENT TO LETTER AGREEMENT

This Amendment to Letter Agreement (this "Agreement"), dated as of January 4, 2022, by and among (i) Growth Capital Services, Inc. ("Broker Dealer"), a broker-dealer registered with the U.S. Securities and Exchange Commission (the "SEC"), and member of the Financial Industry Regulatory Authority, Inc. ("FINRA"), (ii) Traditional Medicinals, Inc. (collectively with its direct and indirect subsidiaries and affiliates, the "Company"), (iii) Big Path Capital LLC ("Big Path") with Michael Whelchel, a registered representative of Finalis Securities LLC, a Delaware limited liability company, a broker-dealer registered with the SEC, and member of FINRA ("Finalis" and, together with Broker Dealer, the Company, Big Path and the Representative the "Parties") as the signatory for Big Path hereto and as a registered representative of Finalis and (iv) Finalis, is a part of and is incorporated into that certain engagement letter, dated March 10, 2021, by and among Broker Dealer, Big Path and the Company (the "Letter Agreement").

The Parties hereby agree as follows as of the date hereof:

1. All of Broker Dealer's rights, title, obligations, duties, and interest in the Letter Agreement (the "Rights") shall be assigned by Broker Dealer to Finalis and Finalis assumes the Rights. All references in the Letter Agreement to (i) "Growth Capital Services, Inc." are hereby replaced with "Finalis Securities LLC" and (ii) "GCS" are hereby replaced with "Finalis". Notwithstanding anything to the contrary in the Letter Agreement or in the Independent Contractor Agreement (as defined in the Letter Agreement), as of the date hereof, Broker Dealer shall not be entitled to receive any fees, tail fee or compensation pursuant under the Letter Agreement as of the date hereof.

2. The wire instructions set forth in clause 4 of Appendix A of the Letter Agreement are hereby amended and restated in their entirety as follows:

   | | |
   |---|---|
   | Bank: | Evolve Bank and Trust |
   | Address: | 301 Shoppingway Boulevard |
   | | West Memphis, Arkansas 72301 |
   | Beneficiary: | Finalis Securities LLC |
   | Reference: | Big Path Capital LLC |
   | Account Number: |  |
   | Routing Number (ACH + wires): | |

3. The first sentence of Section 3.1 of Appendix B of the Letter Agreement is hereby amended by inserting the following language at the end thereof: "provided, however, that Finalis will not be liable to indemnify Client pursuant to this paragraph to the extent that an arbitrator (or panel of arbitrators) or a court of competent jurisdiction will have determined by a final non-appealable judgment that such Losses resulted from the gross negligence or willful misconduct of Client.".

4. Except as specifically set forth herein, the Letter Agreement shall remain unaltered and in full force and effect and the respective terms, conditions or covenants thereof are hereby in all respects ratified and confirmed. In the event of any inconsistency between the provisions of this Agreement and the Letter Agreement, the provisions of this Agreement shall govern.

5. The signatories hereto respectively represent and warrant that they are each duly authorized to enter into this Agreement on behalf of the party they represent.

6. This Amendment shall be governed and construed in accordance with the laws of the State of California.

DocuSign Envelope ID: C1573516-E423-4B48-8271-03C70D1A3681

[signatures follow]

**IN WITNESS WHEREOF,** the Parties have executed this Amendment to Letter Agreement as of the date first set forth above.

**BROKER DEALER:**

**Growth Capital Services, Inc.**

By: *Brian Dunn*

Name: Brian Dunn

Its:

**COMPANY:**

**Traditional Medicinals, Inc.**

By: *Drake Sadler*

Name: Drake Sadler

Its: Chair

**FINALIS:**

**Finalis Securities LLC**

By: *Brad Ziemba*

Name: Brad Ziemba

Its: Chief Compliance Officer

**BIG PATH:**

**Big Path Capital LLC**

By: *Michael Whelchel*

Name: Michael Whelchel

Title: Managing Director of Big Path and a Registered Representative of Finalis

[Signature Page to Amendment to Letter Agreement]

## AMENDMENT TO LETTER AGREEMENT

This Amendment to Letter Agreement (this "Agreement"), dated as of February 3, 2022, by and among (i) Growth Capital Services, Inc. ("Broker Dealer"), a broker-dealer registered with the U.S. Securities and Exchange Commission (the "SEC"), and member of the Financial Industry Regulatory Authority, Inc. ("FINRA"), (ii) WindSail Capital Group, LLC (collectively with its direct and indirect subsidiaries and affiliates, the "Company"), (iii) Big Path Capital LLC ("Big Path") with Michael Whelchel, a registered representative of Finalis Securities LLC, a Delaware limited liability company, a broker-dealer registered with the SEC, and member of FINRA ("Finalis" and, together with Broker Dealer, the Company, Big Path and the Representative the "Parties") as the signatory for Big Path hereto and as a registered representative of Finalis and (iv) Finalis, is a part of and is incorporated into that certain engagement letter, dated March 31, 2021, by and among Broker Dealer, Big Path and the Company (the "Letter Agreement").

The Parties hereby agree as follows as of the date hereof:

1. All of Broker Dealer's rights, title, obligations, duties, and interest in the Letter Agreement (the "Rights") shall be assigned by Broker Dealer to Finalis and Finalis assumes the Rights. All references in the Letter Agreement to (i) "Growth Capital Services, Inc." are hereby replaced with "Finalis Securities LLC" and (ii) "GCS" are hereby replaced with "Finalis". Notwithstanding anything to the contrary in the Letter Agreement or in the Independent Contractor Agreement (as defined in the Letter Agreement), as of the date hereof, Broker Dealer shall not be entitled to receive any fees, tail fee or compensation pursuant under the Letter Agreement as of the date hereof.

2. The wire instructions set forth in clause 4 of Appendix A of the Letter Agreement are hereby amended and restated in their entirety as follows:

| | |
|---|---|
| Bank: | Evolve Bank and Trust |
| Address: | 301 Shoppingway Boulevard |
| | West Memphis, Arkansas 72301 |
| Beneficiary: | Finalis Securities LLC |
| Reference: | Big Path Capital LLC |
| Account Number: |  |
| Routing Number (ACH + wires): | |

3. The first sentence of Section 3.1 of Appendix B of the Letter Agreement is hereby amended by inserting the following language at the end thereof: "provided, however, that Finalis will not be liable to indemnify Client pursuant to this paragraph to the extent that an arbitrator (or panel of arbitrators) or a court of competent jurisdiction will have determined by a final non-appealable judgment that such Losses resulted from the gross negligence or willful misconduct of Client.".

4. Except as specifically set forth herein, the Letter Agreement shall remain unaltered and in full force and effect and the respective terms, conditions or covenants thereof are hereby in all respects ratified and confirmed. In the event of any inconsistency between the provisions of this Agreement and the Letter Agreement, the provisions of this Agreement shall govern.

5. The signatories hereto respectively represent and warrant that they are each duly authorized to enter into this Agreement on behalf of the party they represent.

6. This Amendment shall be governed and construed in accordance with the laws of the State of California.

DocuSign Envelope ID: F5DEAC44-5573-4C0D-B882-C7FA46283CB4

[signatures follow]

**IN WITNESS WHEREOF,** the Parties have executed this Amendment to Letter Agreement as of the date first set forth above.

**BROKER DEALER:**

**Growth Capital Services, Inc.**

By: _Brian Dunn_

Name: Brian Dunn

Its:

**COMPANY:**

**WindSail Capital Group, LLC**

By: _Ian Bowles_

Name: Ian Bowles

Its: Managing Director

**FINALIS:**

**Finalis Securities LLC**

By: _Brad Ziemba_

Name: Brad Ziemba

Its: Chief Compliance Officer

**BIG PATH:**

**Big Path Capital LLC**

By: _Michael Whelchel_

Name: Michael Whelchel

Title: Managing Director of Big Path and a Registered Representative of Finalis

[Signature Page to Amendment to Letter Agreement]

DocuSign Envelope ID: C0DD3A1C-A0BD-4E9A-AB1D-ACF769C4DC86

## AMENDMENT TO LETTER AGREEMENT

This Amendment to Letter Agreement (this "Agreement"), dated as of February 3, 2022, by and among (i) Growth Capital Services, Inc. ("Broker Dealer"), a broker-dealer registered with the U.S. Securities and Exchange Commission (the "SEC"), and member of the Financial Industry Regulatory Authority, Inc. ("FINRA"), (ii) GSPV II Management Ltd. (collectively with its direct and indirect subsidiaries and affiliates, the "Company"), (iii) Big Path Capital LLC ("Big Path") with Michael Whelchel, a registered representative of Finalis Securities LLC, a Delaware limited liability company, a broker-dealer registered with the SEC, and member of FINRA ("Finalis" and, together with Broker Dealer, the Company, Big Path and the Representative the "Parties") as the signatory for Big Path hereto and as a registered representative of Finalis and (iv) Finalis, is a part of and is incorporated into that certain engagement letter, dated March 31, 2021, by and among Broker Dealer, Big Path and the Company (the "Letter Agreement").

The Parties hereby agree as follows as of the date hereof:

1. All of Broker Dealer's rights, title, obligations, duties, and interest in the Letter Agreement (the "Rights") shall be assigned by Broker Dealer to Finalis and Finalis assumes the Rights. All references in the Letter Agreement to (i) "Growth Capital Services, Inc." are hereby replaced with "Finalis Securities LLC" and (ii) "GCS" are hereby replaced with "Finalis". Notwithstanding anything to the contrary in the Letter Agreement or in the Independent Contractor Agreement (as defined in the Letter Agreement), as of the date hereof, Broker Dealer shall not be entitled to receive any fees, tail fee or compensation pursuant under the Letter Agreement as of the date hereof.

2. The wire instructions set forth in clause 4 of Appendix A of the Letter Agreement are hereby amended and restated in their entirety as follows:

| | |
|---|---|
| Bank: | Evolve Bank and Trust |
| Address: | 301 Shoppingway Boulevard |
| | West Memphis, Arkansas 72301 |
| Beneficiary: | Finalis Securities LLC |
| Reference: | Big Path Capital LLC |
| Account Number: |  |
| Routing Number (ACH + wires): | |

3. The first sentence of Section 3.1 of Appendix B of the Letter Agreement is hereby amended by inserting the following language at the end thereof: "provided, however, that Finalis will not be liable to indemnify Client pursuant to this paragraph to the extent that an arbitrator (or panel of arbitrators) or a court of competent jurisdiction will have determined by a final non-appealable judgment that such Losses resulted from the gross negligence or willful misconduct of Client.".

4. Except as specifically set forth herein, the Letter Agreement shall remain unaltered and in full force and effect and the respective terms, conditions or covenants thereof are hereby in all respects ratified and confirmed. In the event of any inconsistency between the provisions of this Agreement and the Letter Agreement, the provisions of this Agreement shall govern.

5. The signatories hereto respectively represent and warrant that they are each duly authorized to enter into this Agreement on behalf of the party they represent.

6. This Amendment shall be governed and construed in accordance with the laws of the State of California.

DocuSign Envelope ID: C0DD3A1C-A0BD-4E9A-AB1D-ACF769C4DC86

[signatures follow]

**IN WITNESS WHEREOF,** the Parties have executed this Amendment to Letter Agreement as of the date first set forth above.

**BROKER DEALER:**

**Growth Capital Services, Inc.**

By:

Name: Brian Dunn

Its:

**COMPANY:**

**GSPV II Management Ltd.**

By:

Name: Gideon Sosman

Its: Managing Partner

**FINALIS:**

**Finalis Securities LLC**

By:

Name: Brad Ziemba

Its: Chief Compliance Officer

**BIG PATH:**

**Big Path Capital LLC**

By:

Name: Michael Whelchel

Title: Managing Director of Big Path and a Registered Representative of Finalis

[Signature Page to Amendment to Letter Agreement]

DocuSign Envelope ID: EB65AEB4-E9E2-4EE5-A870-C64A6CBEFCB2

# AMENDMENT TO LETTER AGREEMENT

This Amendment to Letter Agreement (this "Agreement"), effective as of February 3, 2022 (the "Effective Date"), by and among (i)Growth Capital Services, Inc. ("Broker Dealer"), a broker-dealer registered with the U.S. Securities and Exchange Commission (the "SEC"), and member of the Financial Industry Regulatory Authority, Inc. ("FINRA"), (ii) Concord Innovation Fund II, LP (the "Company"), (iii) Big Path Capital LLC ("Big Path") with Michael Whelchel, a registered representative of Finalis Securities LLC, a Delaware limited liability company, a broker-dealer registered with the SEC, and member of FINRA ("Finalis" and, together with Broker Dealer, the Company, Big Path and Representative, the "Parties") as the signatory for Big Path hereto and as a registered representativeof Finalis and (iv) Finalis, is a part of and is incorporated into that certain engagement letter, dated July 8, 2021, by and among Broker Dealer, Big Path and the Company (the "Letter Agreement"). Terms not defined herein has the meanings ascribed to them in the Letter Agreement.

The Parties hereby agree as follows as of the Effective Date:

1.  All of Broker Dealer's rights, title, obligations, duties, and interest in the Letter Agreement (the "Rights") shall be assigned, and here by are assigned, by Broker Dealer to Finalis and Finalis assumes the Rights. All references in the Letter Agreement to (i) "Growth Capital Services, Inc." are hereby replaced with "Finalis Securities LLC" and (ii) "GCS" are hereby replaced with "Finalis". Notwithstanding anything to the contrary in the Letter Agreement or in the Independent Contractor Agreement (as defined in the Letter Agreement), as of the Effective Date, Broker Dealer shall not be entitled to receive any fees, tail fee or compensation pursuant under the Letter Agreement as of the Effective Date.

2.  Section 5.3 is hereby amended and restated in its entirety as follows:

    Finalis is a duly organized Delaware limited liability company in good standing under the laws of the State of Delaware, and it is duly qualified to carry on the business in the territories contemplated herein and anywhere else it conducts business.

3.  The wire instructions set forth in clause 4 of Appendix A of the Letter Agreement are hereby amended and restated in their entirety as follows:

    | | |
    |---|---|
    | Bank: | Evolve Bank and Trust |
    | Address: | 301 Shoppingway Boulevard |
    | | West Memphis, Arkansas 72301 |
    | Beneficiary: | Finalis Securities LLC |
    | Reference: | Big Path Capital LLC |
    | Account Number: |  |
    | Routing Number (ACH + wires): | |

4.  The first sentence of Section 3.1 of Appendix B of the Letter Agreement is hereby amended by inserting the following language at the end thereof: "provided, however, that Finalis will not be liable to indemnify Client pursuant to this paragraph to the extent that an arbitrator (or panel of arbitrators) or a court of competent jurisdiction will have determined by a final non-appealable judgment that such Losses resulted from the gross negligence or willful misconduct of Client.".

5.  Except as specifically set forth herein, the Letter Agreement shall remain unaltered and in full force and effect and the respective terms, conditions or covenants thereof are hereby in all respects ratified and confirmed. In the event of any inconsistency between the provisions of this Agreement and the Letter Agreement, the provisions of this Agreement shall govern.

6.  The signatories hereto respectively represent and warrant that they are each duly authorized to enter into this Agreement on behalf of the Party they represent.

7. This Amendment shall be governed by and shall be construed in accordance with the laws of the State of Delaware, without regard to choice of law provisions.

[signatures follow]

DocuSign Envelope ID: EB65AEB4-E9E2-4EE5-A870-C64A6CBEFCB2

**IN WITNESS WHEREOF,** the Parties have executed this Amendment to Letter Agreement with effect as of the Effective Date.

**BROKER DEALER:**

**Growth Capital Services, Inc.**

By: _Brian Dunn_
2DE4CFB52EB84BE...

Name: Brian Dunn

Its: CEO

**COMPANY:**

**Concord Innovation Fund II, LP**

By: _James Olsen_
185B2A10D5F0453...

Name: James T. Olsen

Its: Managing Partner

**FINALIS:**

**Finalis Securities LLC**

By: _Brad Ziemba_
09690FF2ACC649A...

Name: Brad Ziemba

Its: Chief Compliance Officer

**BIG PATH:**

**Big Path Capital LLC**

By: _Michael Whelchel_
E728B0F542AC4F0...

Name: Michael Whelchel

Title: Managing Director of Big Path and a Registered Representative of Finalis

[Signature Page to Amendment to Letter Agreement]

## AMENDMENT TO LETTER AGREEMENT

This Amendment to Letter Agreement (this "Agreement"), dated as of February 3, 2022, by and among (i) Growth Capital Services, Inc. ("Broker Dealer"), a broker-dealer registered with the U.S. Securities and Exchange Commission (the "SEC"), and member of the Financial Industry Regulatory Authority, Inc. ("FINRA"), (ii) Climate Innovation Capital (collectively with its direct and indirect subsidiaries and affiliates, the "Company"), (iii) Big Path Capital LLC ("Big Path") with Michael Whelchel, a registered representative of Finalis Securities LLC, a Delaware limited liability company, a broker-dealer registered with the SEC, and member of FINRA ("Finalis" and, together with Broker Dealer, the Company, Big Path and the Representative the "Parties") as the signatory for Big Path hereto and as a registered representative of Finalis and (iv) Finalis, is a part of and is incorporated into that certain engagement letter, dated March 31, 2021, by and among Broker Dealer, Big Path and the Company (the "Letter Agreement").

The Parties hereby agree as follows as of the date hereof:

1. All of Broker Dealer's rights, title, obligations, duties, and interest in the Letter Agreement (the "Rights") shall be assigned by Broker Dealer to Finalis and Finalis assumes the Rights. All references in the Letter Agreement to (i) "Growth Capital Services, Inc." are hereby replaced with "Finalis Securities LLC" and (ii) "GCS" are hereby replaced with "Finalis". Notwithstanding anything to the contrary in the Letter Agreement or in the Independent Contractor Agreement (as defined in the Letter Agreement), as of the date hereof, Broker Dealer shall not be entitled to receive any fees, tail fee or compensation pursuant under the Letter Agreement as of the date hereof.

2. The wire instructions set forth in clause 4 of Appendix A of the Letter Agreement are hereby amended and restated in their entirety as follows:

   Bank:                            Evolve Bank and Trust
   Address:                         301 Shoppingway Boulevard
                                    West Memphis, Arkansas 72301
   Beneficiary:                     Finalis Securities LLC
   Reference:                       Big Path Capital LLC
   Account Number:                  
   Routing Number (ACH + wires):

3. The first sentence of Section 3.1 of Appendix B of the Letter Agreement is hereby amended by inserting the following language at the end thereof: "provided, however, that Finalis will not be liable to indemnify Client pursuant to this paragraph to the extent that an arbitrator (or panel of arbitrators) or a court of competent jurisdiction will have determined by a final non-appealable judgment that such Losses resulted from the gross negligence or willful misconduct of Client.".

4. Except as specifically set forth herein, the Letter Agreement shall remain unaltered and in full force and effect and the respective terms, conditions or covenants thereof are hereby in all respects ratified and confirmed. In the event of any inconsistency between the provisions of this Agreement and the Letter Agreement, the provisions of this Agreement shall govern.

5. The signatories hereto respectively represent and warrant that they are each duly authorized to enter into this Agreement on behalf of the party they represent.

6. This Amendment shall be governed and construed in accordance with the laws of the State of California.

DocuSign Envelope ID: AF654E14-A42E-41F2-8091-46ED5C644BCF

[signatures follow]

**IN WITNESS WHEREOF,** the Parties have executed this Amendment to Letter Agreement as of the date first set forth above.

**BROKER DEALER:**

**Growth Capital Services, Inc.**

By: _Brian Dunn_
Name: Brian Dunn
Its:

**COMPANY:**

**Climate Innovation Capital**

By: _Paul Manias_
Name: Paul Manias
Its: Managing Partner

**FINALIS:**

**Finalis Securities LLC**

By: _Brad Zimba_
Name: Brad Zimba
Its: Chief Compliance Officer

**BIG PATH:**

**Big Path Capital LLC**

By: _Michael Whelchel_
Name: Michael Whelchel
Title: Managing Director of Big Path and a Registered Representative of Finalis

[Signature Page to Amendment to Letter Agreement]

# EXHIBIT C

# EXHIBIT A

RE: GROWTH CAPITAL SERVICES, INC.
CASE NO. 22-30218-HLB

Attachment to Statement of Affairs, Question 13. Transfers outside the ordinary course of business within the past 2 years:

| Transfer of contract rights to: | Completed | Recipient Status |
|---|---|---|
| Morice Taylor Preserver Amendment (2).pdf | 3/7/2022 13:52 | Completed |
| HVP_GCS Waiver.pdf | 3/11/2022 23:43 | Completed |
| Concord Innovation Fund, Engagement Letter.pdf | 3/24/2022 16:37 | Completed |
| Big Path - 3Degrees - Engagement Letter Amendment.docx | 4/12/2022 15:39 | Completed |
| Tail Waiver Agreement GCS DeLay001.pdf | 4/14/2022 20:40 | Completed |
| BD2BD Engagement Letter Assignment CoindexCapitalLLC-SIGNED.pdf | 5/3/2022 23:59 | Completed |
| Revised Engagement Letter_NexBen_GCS_Engagement_Letter.pdf | 5/6/2022 17:06 | Completed |
| Consent to Assignment to another BD_Template[3][3][1].docx | 3/2/2022 20:15 | Completed |
| Davi - BD to BD Engagement Letter scan .pdf | 3/2/2022 19:36 | Completed |
| Assignment of GCS BD to Finalis - Big_Path_-_Center_Creek - Jan 2022 - signed ... | 2/25/2022 21:33 | Completed |
| BD to BD Assignment - Smile Coffee Works - EL  (1).docx | 3/2/2022 11:51 | Completed |
| Big Path - New Markets - Engagement Letter Amendment.docx | 2/26/2022 3:44 | Completed |
| Invenire Amendment.pdf | 2/18/2022 1:33 | Completed |
| Trailhead Capital - BD to BD Engagement Letter Assignment 02-21-22.docx | 2/24/2022 19:48 | Completed |
| New Castle - Assignment.pdf | 2/16/2022 18:52 | Completed |
| BD-to-BD.Assignment-Touzi.EL.SpencerHilligoss.docx | 2/18/2022 14:00 | Completed |
| Red E App -  BD to BD Engagement Letter Assignment.docx | 2/15/2022 20:27 | Completed |
| SurfaceInk - BD to BD Engagement Letter Assignment.docx | 2/15/2022 20:28 | Completed |
| Mike Ryan - Mighty Well - Engagement Letter Amendment.docx | 2/24/2022 14:19 | Completed |
| Big Path - Lime Rock - Engagement Letter Amendment.docx | 2/4/2022 19:59 | Completed |
| Big Path - Kapor Capital - Engagement Letter Amendment.docx | 2/4/2022 20:00 | Completed |
| Big Path - 3Degrees - Engagement Letter Amendment.docx | 2/4/2022 23:25 | Completed |
| GIC - GCS+HL Termination Settlement and Release Agreement (Revised) | 2/11/2022 18:28 | Completed |
| Big Path - Rose - Engagement Letter Amendment.docx | 2/4/2022 23:28 | Completed |
| Big Path - Renaissance - Engagement Letter Amendment.docx | 2/4/2022 23:28 | Completed |
| Big Path - Nada Moo - Engagement Letter Amendment.docx | 2/4/2022 23:24 | Completed |
| Big Path - Mizzen - Engagement Letter Amendment.docx | 2/4/2022 19:59 | Completed |
| Big Path - Supply Change - Engagement Letter Amendment.docx | 2/4/2022 23:23 | Completed |
| Big Path - Traditional Medicinals - Engagement Letter Amendment.docx | 2/4/2022 23:23 | Completed |
| Big Path - Pharos Capital - Engagement Letter Amendment.docx | 2/4/2022 20:01 | Completed |
| Assignment Agreement - MKS and Albright^J Draft 1-31-22.docx | 2/5/2022 17:17 | Completed |
| Big Path - LGF - Engagement Letter Amendment.docx | 2/4/2022 23:24 | Completed |
| Big Path - GreenSoil - Engagement Letter Amendment.docx | 2/4/2022 20:00 | Completed |
| Big Path - Grace Place - Engagement Letter Amendment.docx | 2/4/2022 23:25 | Completed |
| Big Path - Radicle Impact - Engagement Letter Amendment.docx | 2/4/2022 19:56 | Completed |
| Big Path - E2JDJ - Engagement Letter Amendment  (1).docx | 2/4/2022 19:47 | Completed |
| Big Path - Breakout Management - Engagement Letter Amendment.docx | 2/4/2022 19:51 | Completed |
| Big Path - Fearless Fund - Engagement Letter Amendment .docx | 2/4/2022 19:46 | Completed |
| Big Path - WindSail Capital - Engagement Letter Amendment.docx | 2/4/2022 19:57 | Completed |
| Big Path - Social Impact - Engagement Letter Amendment.docx | 2/4/2022 19:58 | Completed |
| GCS Morice.doc, Tail Waiver Letter Agreement -... | 1/26/2022 16:12 | Completed |
| Big Path - Climate Innovation - Engagement Letter Amendment .docx | 2/4/2022 15:39 | Completed |
| Big Path - Concord - Engagement Letter Amendment .docx | 2/4/2022 19:48 | Completed |
| Altonaga, Jeb J.pdf, Tail Waiver Letter Agreement... | 1/24/2022 16:21 | Completed |
| Tail Waiver Letter Agreement Holland.docx | 1/24/2022 19:27 | Completed |
| Big Path - VamosVentures - Engagement Letter Amendment .docx | 2/4/2022 19:57 | Completed |
| Big Path - Autism Impact - Engagement Letter Amendment (1).docx | 2/4/2022 19:48 | Completed |
| Big Path - Buoyant Ventures - Engagement Letter Amendment.docx | 2/4/2022 19:50 | Completed |
| Big Path - Builders Fund - Engagement Letter Amendment.docx | 2/4/2022 19:50 | Completed |
| Big Path - American South - Engagement Letter Amendment (1).docx | 2/4/2022 19:55 | Completed |