1  **EVERSHEDS SUTHERLAND (US) LLP**

2  Ian S. Shelton (SBN 264863)
   500 Capitol Mall, Suite 1750
3  Sacramento, CA 95814
   (916) 245-7427
4  ianshelton@eversheds-sutherland.com

5  Stacey M. Mohr (*PHV* forthcoming)
   999 Peachtree St., NE, Suite 2300
6  Atlanta, GA 30309
   (404) 853-8000
7  staceymohr@eversheds-sutherland.com

8  Erin E. Broderick (*PHV* forthcoming)
   227 W. Monroe St., Suite 6000
9  Chicago, IL 60606
   (312) 724-9006
10 erinbroderick@eversheds-sutherland.com

11 *Counsel for Defendant Finalis Securities, LLC*

12

13                  **UNITED STATES BANKRUPTCY COURT**
                    **NORTHERN DISTRICT OF CALIFORNIA**
14                  **SAN FRANCISCO DIVISION**

15 | In re: | Case No. 20-30218-HLB |

16 | GROWTH CAPITAL SERVICES, INC., a Delaware corporation, | Chapter 7 |

17 |                                    Debtor, | Adv. Proc. No. 23-03019 |

18 | JANINA M. HOSKINS, in her capacity as Chapter 7 Trustee of Growth Capital Services, Inc., | **DEFENDANT FINALIS SECURITIES, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS** |

19

20 |                                    Plaintiff, | |

21 |            v. | |

22 | DAVID MICHAEL WHELCHEL, an individual, and FINALIS SECURITIES, LLC, a Delaware Limited Liability Company, | |

23

24 |                                    Defendants. | |

25

26

27

28

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................5

FACTS ALLEGED IN THE COMPLAINT ............................................6

    A.    The Parties ...............................................................6

    B.    The Engagement Letters .............................................7

    C.    The Debtor's Cessation of Its Business, Termination of Its Relationship with Whelchel, Waiver of Its Right to Fees, and Subsequent Transfer of the Engagement Letters ............................9

    D.    The Adversary Complaint ...........................................10

APPLICABLE LEGAL STANDARD ...............................................10

ARGUMENT AND CITATION OF AUTHORITY .............................................12

    A.    Count One Fails to State a Claim for Actual Fraud Under Section 548(a)(1)(A). ...........................................12

        1.    The complaint does not allege any badges of fraud..........12

        2.    The complaint does not plead fraud with the required particularity. ...............................................14

    B.    Count Two Fails to State a Claim for Constructive Fraud Under Section 548(a)(1)(B). ...........................................16

        1.    The facts alleged do not show that the Debtor did not receive reasonably equivalent value in exchange for transfer of the Engagement Letters. ..................................16

        2.    The complaint fails to show that the Debtor was financially vulnerable because of the transfer of the Engagement Letters. ...............................................19

    C.    Count Five Fails to State a Claim for Recovery and Relief Under Sections 550 and 551. ...........................................20

CONCLUSION ...............................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrego v. Dow Chem. Co.*,
    443 F.3d 676 (9th Cir. 2006) ............................................................11

*Acquia, Inc. v. Clinton (In re Acequia, Inc.)*,
    34 F.3d 800 (9th Cir. 1994) ............................................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................ *passim*

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................11, 15

*Beskrone v. Opengate Cap. Grp., LLC (In re Pennysaver USA Publ'g, LLC)*,
    602 B.R. 256 (Bankr. D. Del. 2019) ............................................................15

*Burtch v. Opus, LLC (In re Opus E., LLC)*,
    528 B.R. 30 (Bankr. D. Del. 2015) ............................................................18

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir.
    2011) ............................................................11

*United States ex rel. Chunie v. Ringrose*,
    788 F.2d 638 (9th Cir. 1986) ............................................................6, 18

*Desaigoudar v. Meyercord*,
    223 F.3d 1020 (9th Cir. 2000) ............................................................11, 14

*EBC I, Inc. v. Am. Online, Inc. (In re EBC I, Inc.)*,
    380 B.R. 348 (Bankr. D. Del. 2008) ............................................................18

*Everett v. Thomas Cap. Invs. (In re Pac. Thomas Corp.)*,
    543 B.R. 7 (Bankr. N.D. Cal. 2015) ............................................................16, 19

*Gill v. Maddalena (In re Maddalena)*,
    176 B.R. 551 (Bankr. C.D. Cal. 1995) ............................................................20

*Global Crossing Estate Representative v. Winnick*,
    No. 04 CIV. 2558 (GEL), 2006 U.S. Dist. LEXIS 53785 (S.D.N.Y. Aug. 3,
    2006) ............................................................21

*Goshen Mortg., LLC v. Altier (In re Altier)*,
    No. 6:15-bkk-01838-KSJ, 2017 Bankr. LEXIS 685, 2017 WL 1011416
    (Bankr. M.D. Fla. Mar. 15, 2017) ............................................................16, 19

ii

*Hirsch v. Gersten (In re Centennial Textiles, Inc.)*,
    220 B.R. 165 (Bankr. S.D.N.Y. 1998) .................................................................20

*Husted v. Taggert (In re ECS Ref., Inc.)*,
    625 B.R. 425 (Bankr. E.D. Cal. 2020) ..........................................................13, 17

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ...........................................................11, 12, 14, 15

*Levine v. AtriCure, Inc.*,
    594 F. Supp. 2d 471 (S.D.N.Y. 2009) ...............................................................21

*LTF Real Estate Co., Inc. v First Am. Title Ins. Co. (In re Expert S. Tulsa, LLC)*,
    522 B.R. 634 (B.A.P. 10th Cir. 2014) ...........................................................16, 19

*Manchester v. Sharpton (In re All Phase Roofing & Constr., LLC)*,
    No. 17-12414-SAH, 2020 Bankr. LEXIS 178 (Bankr. W.D. Okla. Jan. 17,
    2020) ...............................................................................................................16, 19

*Miyasaki v. Lui (In re Lui)*,
    646 F. App'x. 571 (9th Cir. 2016) ...............................................................10, 14

*Moser v. United States (In re Ames)*,
    Nos. 10-43401, 11-40023, 11-40286, 2014 ........................................................20

*Neilson v. Union Bank of Cal., N.A.*,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) .............................................................11

*Senior Transeastern Lenders v. Official Committee of Unsecured Creditors (In re
    TOUSA Inc.)*,
    680 F.3d 1298 (11th Cir. 2012) ....................................................................16, 19

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) .............................................................................15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .........................................................................................7, 11

*U.S. Bank N.A. v. Verizon Commc'ns Inc.*,
    No. 3:10-CV-1842-G, 2012 U.S. Dist. LEXIS 106576 (N.D. Tex. July 31,
    2012) .....................................................................................................................20

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ............................................................................7, 11

**Statutes**

11 U.S.C. § 544 .........................................................................................................21

11 U.S.C. § 548 ................................................................................................ *passim*

11 U.S.C. §§ 550 and 551 ................................................................................................10, 20, 21

**Other Authorities**

Fed. R. Civ. P. 9(b) ................................................................................................ *passim*

Fed. R. Civ. P.12(b)(6)................................................................................................10, 11

Investment Adviser Public Disclosure, U.S. Securities and Exchange
    Commission, https://adviserinfo.sec.gov/firm/summary/124658 ...........................................10

iv

## PRELIMINARY STATEMENT

1.     The Trustee's complaint fails to state a claim for relief against Defendant Finalis Securities, LLC ("Finalis") and must be dismissed. The complaint seeks to avoid the Debtor's assignment of certain engagement letters (the "Engagement Letters") to Finalis as fraudulent transfers under 11 U.S.C. § 548, but these claims against Finalis fail as a matter of law. The complaint contains no facts supporting the alleged actual fraud, much less stated with the particularity required by Fed. R. Civ. P. 9(b). Nor do the facts alleged establish a lack of reasonably equivalent value, insolvency of the debtor or incurrence of unmanageable debt by the Debtor to support constructive fraud. Indeed, the claims simply restate legal conclusions without factual support, and the facts alleged do not plausibly give rise to an entitlement to relief or a reasonable inference that Finalis could be liable for the misconduct alleged. At bottom, the complaint fails because there is no benefit to the estate to be restored; the facts alleged make clear that the Engagement Letters had no value to the Debtor when they were assigned to Finalis.

2.     The complaint shows that, prior to the time of the transfers, the Debtor had ceased operating as a broker-dealer and had terminated its employees and registered representatives, including Defendant David Michael Whelchel ("Whelchel"). After receiving an unfavorable arbitration award from the Financial Industry Regulatory Authority ("FINRA"), the Debtor evaluated its inability to remain licensed by FINRA—and thus its inability to provide the services required by it in the Engagement Letters—and decided to cease business operations. Because the Debtor was unable to perform its contractual obligations under the Engagement Letters as consideration for the various fees thereunder (the "Fees"), the Engagement Letters had no value to the Debtor. The Debtor also had entered into an agreement with Whelchel waiving its right to Fees under the Engagement Letters.

3.     Only after these events were the Engagement Letters assigned to Finalis, a licensed broker-dealer with the ability to perform the contractual obligations of the broker-dealer under the Engagement Letters. Indeed, just weeks after ceasing its operations, the Debtor's regulatory license with FINRA was canceled, rendering the Debtor unqualified to satisfy its

contractual obligations under the Engagement Letters or to be paid licensed broker-dealer Fees in respect of the Engagement Letters.

4.     Not only did the Engagement Letters have no value to the Debtor, but its inability to perform under them exposed the Debtor to liability and regulatory action. Retention of the Engagement Letters would have left the Debtor open to breach-of-contract claims by the other parties to the contracts, as well as enforcement actions by regulatory agencies for violations of applicable law, rules and regulations, thereby incurring further liabilities to the detriment of the estate and the Debtor's creditors.

5.     Disregarding the facts actually alleged, the Trustee relies on conclusory statements and recitations of the elements of the various causes of action brought against Finalis. Because the factual allegations do not plausibly give rise to a claim of actual or constructive fraud under section 548 and show that there is no entitlement to recovery under section 550, the claims against Finalis must be dismissed. *See* 11 U.S.C. § 548.

## FACTS ALLEGED IN THE COMPLAINT[1]

### A.     The Parties

6.     The Debtor was a brokerage firm that operated as a licensed broker-dealer and investment advisor. (Compl. ¶¶ 15–16, ECF No. 1).) The Debtor's primary business was the facilitation of private-placement offerings of securities for clients. (*Id*. ¶ 16.) For these transactions, the Debtor would enter into a three-party engagement letter with one of its advisors—independent contractors who are registered representatives and would provide private-placement services—and a client—the customer seeking to raise capital through the offering. (*Id*. ¶¶ 28–35.)

7.     Throughout its time of operation, the Debtor came under scrutiny from regulatory agencies for various violations, and it was fined by FINRA on several occasions. (*Id*. ¶¶ 18–20.) In or around March 2018, the Debtor was accused of hiring away all of the registered representatives of another broker-dealer, Intellivest Securities Services, Inc. ("Intellivest"), and

---

[1] Finalis contests the accuracy of the many of the Complaint's factual allegations but, for the purposes of this Motion, accepts those allegations as true as required by the Federal Rules of Civil Procedure. *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

then directing those registered representatives to contact former clients to entice them to break their engagements with Intellivest. (*Id.* ¶ 22, 24–25.) According to the complaint, on January 7, 2022, a FINRA arbitration panel entered an arbitration award in favor of Intellivest and against the Debtor in the amount of $908,000. (*Id.* ¶ 21.) The complaint further alleges that, within a week after the arbitration award was entered, the Debtor terminated all its employees, including its contracts with its registered representatives, and ceased business operations. (*Id.* ¶ 27.)

8.      Defendant Whelchel was one of the Debtor's registered representatives, providing advisory services for private placements under a registered representative subscription agreement between Whelchel and the Debtor, dated March 28, 2018 (the "Independent Contractor Agreement"). (*Id.* ¶ 22.) (A true and correct copy of the Independent Contractor Agreement is attached hereto as "Exhibit 1".)[2] Whelchel provided services through his firm, Big Path Capital, LLC ("Big Path").

9.      After the Debtor ceased its operations and terminated the Independent Contractor Agreement with Whelchel, Whelchel became a registered representative with Finalis. Finalis is a licensed broker-dealer that is registered with the U.S. Securities and Exchange Commission ("SEC") and is a member of FINRA. (*Id.* ¶ 12–13.) Finalis has no history of disciplinary action by any regulatory authorities. Finalis had no prior relationship with either the Debtor or Whelchel.

**B.      The Engagement Letters**

10.      The transfers alleged in the Complaint involve the Engagement Letters assigned by the Debtor to Finalis after the Debtor terminated its employees and ceased operations, terminated its Independent Contractor Agreement with Whelchel, and agreed with Whelchel to waive its right to Fees under the Engagement Letters.

---

[2] Although not attached to the complaint, the Independent Contractor Agreement, as well as the Fee Waiver Agreement attached hereto as Exhibit "2." may be considered on this motion to dismiss because they are referenced and relied upon in the complaint. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[D]ocuments incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (noting a document not attached to the complaint will be considered if the complaint extensively references the document or relies on the document as the basis of the claim). Both of these contracts are referenced in the contracts that are attached to the complaint and are integral to the transactions that are the basis of the complaint.

11.     The Engagement Letters were three-party broker-dealer services agreements for private-placement offerings. (*Id*. ¶ 28.) The three parties to each Engagement Letter were the Debtor, Whelchel (through Big Path), and the applicable client. (*Id*. ¶ 29.) Whelchel was registered with FINRA as a registered representative of the Debtor and was the advisor under the Engagement Letters relevant to the Complaint. (*Id*. ¶¶ 22, 24, 29, 30.)

12.     The private placements contemplated under the Engagement Letters required a licensed broker-dealer, registered with the SEC and a member of FINRA. Accordingly, the Engagement Letters provided that, to the extent a private-placement offering was subject to regulation by the SEC, FINRA, or other regulatory agencies, and was required to be consummated by a licensed broker-dealer, the Debtor would serve that role. (*Id.* ¶ 32, Ex. A ¶ 2.2.)

13.     Under the Engagement Letters, upon the closing of a private-placement offering, the client was required to pay the Debtor, as the licensed broker-dealer under the Engagement Letter, a broker-dealer Fee equal to 2.0% of the amount of the investment made or committed by the prospective investor. (*Id*. ¶ 34, Ex. A. ¶ 3.2.)

14.     The Engagement Letters also gave the Debtor the right to receive Fees in the form of "tail fees," meaning the Debtor would receive the Fee even if the Engagement Letter was terminated (subject to certain conditions) and an offering was closed within 24 months post-termination of the Engagement Letter. (*Id*. ¶ 35, Ex. A. ¶ 3.2.2.)

15.     Each Engagement Letter was effective for 60 days upon its execution by all parties, subject to extension if all parties agreed in writing. (*Id.* Ex A ¶ 9.)

16.     The Engagement Letters further provided that "[i]n the event [Whelchel's] registration with [the Debtor] should end for any reason, this Agreement between all parties will automatically and immediately terminate without the requirement for providing written notice." (*Id*.)

**C. The Debtor's Cessation of Its Business, Termination of Its Relationship with Whelchel, Waiver of Its Right to Fees, and Subsequent Transfer of the Engagement Letters**

17.     According to the complaint, a week after the Debtor received the unfavorable arbitration award, the Debtor terminated all its employees and ceased operations. (Compl. ¶¶ 27, 44.) This resulted in the Debtor being unable to perform under the Engagement Letters as a licensed broker-dealer. (*Id.*)

18.     The Debtor then entered into a fee waiver agreement with Whelchel dated January 19, 2022 (the "Fee Waiver Agreement"). (A true and correct copy of the Fee Waiver Agreement is attached hereto as Exhibit "2.") Finalis was not a party to the Fee Waiver Agreement and did not receive any consideration related to the Fee Waiver Agreement. Under the Fee Waiver agreement, the Debtor waived its rights, and disclaimed any and all interest whatsoever, that it had or may thereafter have or acquire, to any and all Fees resulting from the Engagement Letters. (Ex. 2.) This agreement was necessary in order for the Debtor to assign the Engagement Letters to a licensed broker-dealer who could perform under them.

19.     After ceasing its operations, terminating its Independent Contractor Agreement with Whelchel, and executing the Fee Waiver Agreement with Whelchel, the Debtor entered into various amendments to the Engagement Letters involving Whelchel, Big Path, Finalis, and the applicable clients, whereby the Debtor assigned its rights under the Engagement Letters to Finalis (collectively, the "Amendments"). (Compl. Ex. B.) In furtherance of the Fee Waiver Agreement, the Amendments confirmed that, notwithstanding anything to the contrary in the Engagement Letters and the Debtor's Independent Contractor Agreement with Whelchel, the Debtor would not be entitled to receive any Fees under the Engagements Letters assigned to Finalis by the Amendments. (*See* Ex. 2; Compl. Ex. B.) The Engagement Letters had no realizable value to the Debtor at the time of their transfer because of the executed Fee Waiver Agreement, the terms of which were affirmed in each of the Amendments. (*Id.*)

20.     Because of the executed Fee Waiver Agreement—and the Debtor's subsequent confirmation that it would not receive Fees under the Engagement Letters—Fees payable under the Engagement Letters no longer constituted property of the Debtor and, therefore, no property

or rights of the Debtor to Fees under the Engagement Letters were transferred by the Debtor to Finalis pursuant to the Amendments. (*Id.*) Indeed, Finalis executed the Amendments to the Engagement Letters in good faith reliance on the Debtor's waiver of its right to Fees under the Engagement Letters pursuant to the Fee Waiver Agreement and, subsequently, the Debtor's agreement to not receive any Fees pursuant to the Amendments. (*Id.*)

21. The Debtor's membership with FINRA was canceled by FINRA, and its registration with the SEC was terminated on March 20, 2022. *See* SEC Investment Adviser Public Disclosure, https://adviserinfo.sec.gov/firm/summary/124658.

### D. The Adversary Complaint

22. The Trustee filed this adversary complaint against Whelchel and Finalis, alleging that the Debtor's assignment of the Engagement Letters, and its "valuable rights to the 'Tail Fees'" thereunder, constitute avoidable transfers under 11 U.S.C. § 548. (Compl. ¶ 36.) The complaint asserts five claims for relief: three against both Finalis and Whelchel and two against Whelchel alone.

23. The three claims are asserted against Finalis are as follows:

     a.    avoidance of fraudulent transfers under section 548(a)(1)(A) (Count One);

     b.    avoidance of transfers under section 548(a)(1)(B) (Count Two); and

     c.    recovery of avoided transfers and preservation of the same under sections 550 and 551 (Count Five).

24. Finalis now moves to dismiss the claims against it under Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the basis that the complaint fails to state any cause of action against Finalis as a matter of law.

### APPLICABLE LEGAL STANDARD

25. In deciding a motion to dismiss under Rule 12(b)(6), a court must "ignore any conclusory factual or legal statements and look only to the specific facts alleged." *Miyasaki v. Lui (In re Lui)*, 646 F. App'x. 571, 573 (9th Cir. 2016). These specific and well-pleaded facts must "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Under this standard, the well-pleaded facts in the complaint must show "more than a sheer

Case: 23-03019   Doc# 12-1   Filed: 07/10/23   Entered: 07/10/23 16:17:48   Page 11 of 22

possibility that a defendant has acted unlawfully": the plaintiff must plead "factual content" giving rise to the "reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Factual allegations are insufficient if they are "merely consistent" with liability or are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

26.     In addition to the factual allegations in the complaint, a court deciding a motion to dismiss should also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (noting that a court may consider a document not attached to the complaint where the document is extensively referenced in the complaint or the complaint relies on the document as the basis of the claim); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (a court may consider documents that are not expressly referred to in a complaint if the plaintiff's complaint necessarily relies on them and the authenticity is not questioned), *superseded by statute on other grounds as stated in Abrego v. Dow Chem. Co*., 443 F.3d 676 (9th Cir. 2006). The defendant may offer such documents, and the court may treat such documents as part of the complaint and may assume, for the purposes of Rule 12(b)(6), that its contents are true. *Ritchie*, 342 F.3d at 908; *see also Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1114 (C.D. Cal. 2003) (considering contracts not attached to the plaintiff's complaint because plaintiffs should not be able to survive a "Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based").

27.     Moreover, when a plaintiff brings a claim for fraud, such claim is subject to the requirements of Rule 9(b) and must be pleaded with particularity. Fed. R. Civ. P. 9(b); *see also Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011). That is, facts supporting an allegation of fraud must be pled "with a high degree of meticulousness." *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022–23 (9th Cir. 2000). "A party alleging fraud

must 'set forth **more** than the neutral facts necessary to identify the transaction.'" *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1124 (9th Cir. 2009). And the Court should disregard any allegations that do not meet this standard. *Id.*

## ARGUMENT AND CITATION OF AUTHORITY

28.　　All three of Trustee's claims against Finalis fail as a matter of law. As to Count One, the complaint contains no facts that even plausibly alleged actual fraud, much less with the particularity required by Rule 9(b). As to Count Two, the facts alleged do not establish a lack of equivalent value, insolvency of the Debtor, or the assumption of unmanageable debt, and the claim simply restates legal conclusions without factual support. Finally, Count Five fails because it is derivative of Counts One and Two, and also because there is no benefit to the estate to be restored: the Engagement Letters were of no value to the Debtor at the time they were transferred and only presented liabilities and risks to the Debtor, the estate, and creditors.

**A.　　Count One Fails to State a Claim for Actual Fraud Under Section 548(a)(1)(A).**

29.　　 Section 548(a)(1)(A) provides, in relevant part, that a trustee "may avoid any transfer … of an interest of the debtor … that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor … made such transfer … with the *actual intent to hinder, delay, or defraud* any entity to which the debtor was …indebted…." 11 U.S.C. § 548(a)(1)(A) (emphasis added). The complaint does not allege facts meeting this standard, and certainly not with the particularity required by Rule 9(b).

**1.　　The complaint does not allege any badges of fraud.**

30.　　To establish "actual fraud" in the context of a motion to dismiss, the plaintiff must plead facts showing the presence of certain "badges of fraud" including the following:

　　　　a.　　actual or threatened litigation against the debtor;

　　　　b.　　a purported transfer of all or substantially all of the debtor's property;

　　　　c.　　insolvency or other unmanageable indebtedness on the part of the debtor;

　　　　d.　　a special relationship between the debtor and the transferee;

Case: 23-03019　Doc# 12-1　Filed: 07/10/23　Entered: 07/10/23 16:17:48　Page 13 of 22

e. retention by the debtor of the property involved in the putative transfer; and

f. secrecy or concealment of the transaction.

*See Husted v. Taggert (In re ECS Ref., Inc.)*, 625 B.R. 425, 459 (Bankr. E.D. Cal. 2020); *accord Acquia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 806 (9th Cir. 1994).

31. The Trustee's complaint fails to allege any of these badges of fraud:

a. The complaint does not allege actual or threatened litigation. The only legal proceeding mentioned in the complaint is the Intellivest arbitration, but that arbitration concluded prior to the assignment of the Engagement Letters, and the complaint alleges that the Debtor had assets sufficient to pay the award in connection with the Intellivest arbitration. (Compl. ¶¶ 2–4.)

b. The complaint does not allege that the Engagement Letters assigned to Finalis made up all or substantially all of the Debtor's assets. In fact, there are no allegations in the complaint about the actual value of the Engagement Letters at all.

c. The complaint does not allege facts establishing that the Debtor was insolvent when the Engagement Letters were assigned or that it otherwise had unmanageable indebtedness. The complaint discusses generally the dissipation of the Debtor's assets from November 24, 2021, to May 3, 2022, but it fails to make any allegation relative to whether the Debtor was insolvent at the time the Engagement Letters were assigned or became insolvent as a result thereof. And the complaint is silent on the existence of unmanageable indebtedness. Indeed, the complaint alleges that the Debtor had assets sufficient to pay the arbitration award, the only obligation specified in the complaint. (*Id.*) Additionally, any payments made by the Debtor, including to Whelchel, prior to the transfer of the Engagement Letters did not involve Finalis and were exclusively a decision of the Debtor.

d. The complaint does not allege any special relationship between the Debtor and Finalis. Finalis was a third party with no prior history with the Debtor or Whelchel. Finalis accepted the transfer of the Engagement Letters in good faith, intending to

provide the broker-dealer services under the Engagement Letters that the Debtor could no longer provide, and in good faith reliance on the Fee Waiver Agreement. To the extent the complaint attempts to imply the existence of some special relationship between Whelchel and Finalis, such an implication is belied by the timeline of events laid out in the complaint. (*See id.* ¶¶ 22–27.) Once the Debtor ceased its operations as of January 9, 2022 and could no longer perform its contractual obligations under the Engagement Letters, the Independent Contractor Agreement with Whelchel and pursuant to applicable law, Whelchel had to identify a replacement licensed broker-dealer that could provide such broker-dealer services under the Engagement Letters, and Whelchel independently chose Finalis as his licensed broker-dealer.

e.     The complaint does not allege that the Debtor retained possession or control of the property transferred. On the contrary, under the Fee Waiver Agreement, the Debtor had waived its rights to property in the form of Fees under the Engagement Letters.

f.     Finally, the complaint does not allege that the Debtor concealed the transaction in any way.

32.     Because the complaint alleges no facts showing any badges of fraud, the claim for actual fraud must fail. The facts alleged do not give rise to a plausible inference that the Engagement Letters were assigned by the Debtor to Finalis with the actual intent to hinder, delay or defraud the Debtor's creditors. *See* § 548(a)(1)(A). This claim consists entirely of conclusory statements without factual support. *Cf. Iqbal*, 556 U.S. at 679; *Miyasaki*, 646 F. App'x at 574.

**2.     The complaint does not plead fraud with the required particularity.**

33.     The complaint also fails to meet the particularity standard for pleading fraud under Rule 9(b) and fails to plead fraud with any "degree of meticulousness"—much less a high one. *Meyercord*, 223 F.3d at 1022–23.

34.     First, the complaint does not sufficiently identify the specific transfers that supposedly were fraudulent. *See Kearns*, 567 F.3d at 1124 ("A party alleging fraud must 'set forth more than the neutral facts necessary to identify the transaction.'"). The list of "Transfers"

attached to the complaint is a bare-bones list from the Debtor's Statement of Financial Affairs ("SOFA") that provides nothing more than (what appear to be) short-hand names of contracts with unidentified dates. (Compl. Ex. C.) Even more problematic, because the list comes from the Debtor's SOFA, it is likely that some, if not all, of the Debtor's contracts listed involve assignees other than Finalis. This is not sufficient under Rule 9(b), and the Court should disregard any allegations that do not meet the applicable legal standard. *See Kearns,* 567 F.3d at 1125.

35.     Second, the Complaint improperly lumps the defendants together and fails to inform each defendant separately as to their alleged participation in the alleged fraud. *See Swartz v. KPMG LLP,* 476 F.3d 756, 764–65 (9th Cir. 2007). "Each defendant is entitled to know what he or she has done that is asserted to be wrongful. A complaint based on collective responsibility must be dismissed." *Beskrone v. Opengate Cap. Grp., LLC (In re Pennysaver USA Publ'g, LLC)*, 602 B.R. 256, 272 (Bankr. D. Del. 2019) (finding that, to satisfy the requirements of *Twombly* and *Iqbal*, the trustee would have to provide specific allegations with respect to each defendant). The complaint improperly lumps together Finalis and Whelchel in a manner that does not provide Finalis notice of the true nature of the claims against it, as opposed to Whelchel, or provide specific allegations as to its participation in the alleged fraud. For example, the complaint seeks to avoid the assignment of the Engagement Letters to Finalis, but even prior to these assignments, the Debtor (not Finalis), ceased its operations, terminated its Independent Contractor Agreement with Whelchel, and entered into the Fee Waiver Agreement waiving the right to Fees under the Engagement Letters. (*See* Ex. 2.) Such allegations of collective responsibility cannot sustain a claim of fraud. *See Beskrone*, 602 B.R. at 271.

36.     Because the complaint fails to allege facts plausibly giving rise to a claim of actual fraud, much less with the particularity required under Rule 9(b), Count One of the complaint must be dismissed.

**B.** **Count Two Fails to State a Claim for Constructive Fraud Under Section 548(a)(1)(B).**

37.     To plead a claim for constructive fraudulent transfer under section 548(a)(1)(B), the complaint must allege facts showing, among other things, that (i) the debtor received less than reasonably equivalent value in exchange for the transfers and (ii) the debtor either:

      a.    was insolvent on the date the transfers were made or became insolvent because of the same;

      b.    engaged in business for which any property remaining after the transfers was an unreasonably small capital; or

      c.    intended to incur or believed that it would incur debts beyond its ability to pay as such debts matured.

11. U.S.C. § 548(a)(1)(B)(i)–(ii).

38.     A complaint must raise allegations sufficient to satisfy both subparts (i) and (ii) of section 548(a)(1)(B). Here, the complaint satisfies neither.

      **1.** **The facts alleged do not show that the Debtor did not receive reasonably equivalent value in exchange for transfer of the Engagement Letters.**

39.     The Bankruptcy Code does not define "reasonably equivalent value," but the concept is intended to "protect creditors against the depletion of a bankruptcy estate." *Senior Transeastern Lenders v. Official Committee of Unsecured Creditors (In re TOUSA Inc.)*, 680 F.3d 1298, 1311 (11th Cir. 2012). In determining whether there was reasonably equivalent value, courts consider two questions: (1) did the debtor receive value; and (2) was the value received reasonably equivalent to what the Debtor gave up. *See Everett v. Thomas Cap. Invs., (In re Pac. Thomas Corp.)*, 543 B.R. 7, 14 (Bankr. N.D. Cal. 2015); *LTF Real Estate Co., Inc. v First Am. Title Ins. Co. (In re Expert S. Tulsa, LLC)*, 522 B.R. 634, 652 (B.A.P. 10th Cir. 2014); *Goshen Mortg., LLC v. Altier (In re Altier)*, No. 6:15-bkk-01838-KSJ, 2017 Bankr. LEXIS 685, at *4-6, 2017 WL 1011416, at *3 (Bankr. M.D. Fla. Mar. 15, 2017).

40.     The main focus of the inquiry is whether the transferred property actually had value that could be recovered for the benefit of the estate. *Manchester v. Sharpton (In re All*

Case: 23-03019    Doc# 12-1    Filed: 07/10/23    Entered: 07/10/23 16:17:48    Page 17 of 22

*Phase Roofing & Constr., LLC)*, No. 17-12414-SAH, 2020 Bankr. LEXIS 178, at *32 (Bankr. W.D. Okla. Jan. 17, 2020). "A bankruptcy estate cannot be depleted by the transfer of a valueless asset. In other words, it is not possible to receive less than reasonably equivalent value for an asset that has no value." *Id*.

41.     Here, the complaint asserts that the Debtor assigned the "Engagement Letters and [its] valuable rights in the 'Tail Fees'" to Finalis (Compl. ¶ 36) and that it did so for "no consideration" (*id.* ¶¶ 46, 52, 58). This conclusory statement lacks any factual support. *See Husted*, 625 B.R. at 461 (a complaint must, at a bare minimum, "describe the consideration and why the value of such consideration was less than the amount transferred").

42.     Indeed, the facts alleged show just the opposite: the Engagement Letters (and the Fees provided in them) had no value to the Debtor at the time they were assigned to Finalis. The complaint alleges that shortly after receiving the unfavorable arbitration award on January 7, 2022, the Debtor terminated all its employees and ceased operations. (Compl. ¶ 27.) Consequently, the Debtor could no longer perform under the Engagement Letters, and it could no longer provide the services as consideration for the Fees under the Engagement Letters, pursuant to applicable laws and regulations.[3]

43.     Additionally, on January 19, 2022, again prior to the assignment of the Engagement Letters to Finalis, the Debtor and Whelchel entered into the Fee Waiver Agreement whereby the Debtor waived its rights to receive any Fees resulting from any Engagement Letter involving Whelchel. (*See* Ex. 2.)

44.     In short, the Engagement Letters had no value to the Debtor at the time of the assignments to Finalis. The Debtor could not perform its contractual obligations thereunder to generate the Fees payable as consideration to the Debtor, the Debtor had terminated the Independent Contractor Agreement with Whelchel, and the Debtor had waived any right to Fees pursuant to the Fee Waiver Agreement. At the time of the assignment of the Engagement Letters,

---

[3] By March 2022, the Debtor had lost all of its registrations and certifications needed to act as a broker-dealer.

Case: 23-03019     Doc# 12-1     Filed: 07/10/23     Entered: 07/10/23 16:17:48     Page 18 of 22

the Debtor had no property right to Fees and so no such property right was (or could have been) transferred to Finalis.

45.     Because the Engagement Letters had no value to the Debtor, the transfers did not rob the Debtor's bankruptcy estate of any value, and the Trustee has failed to show that the estate lost value because of the assignment of the Engagement Letters after the Debtor ceased its operations. Indeed, the Engagement Letters otherwise would have been a burden (and not an asset) to the Debtor, detrimental to the estate and to creditors. The Debtor would have received nothing of value from the continuation of the Engagement Letters when it could no longer perform its contractual obligations thereunder. *See EBC I, Inc. v. Am. Online, Inc. (In re EBC I, Inc.)*, 380 B.R. 348, 366 (Bankr. D. Del. 2008) (declining to grant relief under section 548(a) because the debtor failed to show that it lost anything of value due to the termination of a contract after it had ceased business operations and finding that requiring the defendant to pay would be a windfall to the debtor and its creditors "when [debtor] would have received little or nothing of value from the continuation of the agreement"); *Burtch v. Opus, LLC (In re Opus E., LLC)*, 528 B.R. 30, 88–89 (Bankr. D. Del. 2015) (finding reasonably equivalent value was given when, among other things, the contracts were essentially worthless because they were cancellable at will, never realized any profit, and, when the debtor could no longer operate, the contracts became a burden not an asset).

46.     Not only did the Debtor transfer a valueless asset, but the Debtor actually received a benefit from Finalis with the transfer of the Engagement Letters. Had the Debtor retained the Engagement Letters, it could have been exposed to breach of contract claims from the other parties under the Engagement Letters (or others in connection with any transactions thereunder) due to the Debtor's inability to perform—not to mention possible claims and enforcement actions by regulatory agencies for possible violations of applicable laws, rules and regulations. These liabilities would have been passed on to the estate, further diluting the estate to the detriment of the Debtor's creditors. Finalis, by accepting the transfers, relieved the Debtor—and its estate and creditors—of that risk and those liabilities. The Debtor thereby received reasonably equivalent value through the transfer of the Engagement Letters to the benefit of the Debtor's

Case: 23-03019   Doc# 12-1   Filed: 07/10/23   Entered: 07/10/23 16:17:48   Page 19 of 22

estate and its creditors by the avoidance of risks and liabilities that could have depleted the Debtor's estate. *See Consider Senior Transeastern Lenders*, 680 F.3d at 1311; *Everett*, 543 B.R. at 4; *LTF Real Estate Co., Inc.*, 522 B.R. at 652; *Goshen Mortg., LLC*, 2017 Bankr. LEXIS 685 at *3.

47. The facts alleged do not show that the Debtor did not receive reasonably equivalent value in exchange for the transfer of the Engagement Letters. The Debtor was not depleted by the assignment of the Engagement Letters, as it is not possible for the Debtor to receive less than reasonably equivalent value for an asset that has no value to the Debtor. *See Manchester*, 2020 Bankr. LEXIS 178 at *29. Hence, no value could be recovered for the benefit of the Debtor's estate or its creditors.

**2. The complaint fails to show that the Debtor was financially vulnerable because of the transfer of the Engagement Letters.**

48. The complaint also must allege facts showing that the transfer of the Engagement Letters left the Debtor in one of three vulnerable financial conditions: insolvency; possessing unreasonably small capital; or believing that it would incur debts beyond its ability to repay after the transaction. *See* 11 U.S.C. § 548(a)(1)(B)(ii)(I)–(III); 5 Collier on Bankr. P. 548.05. The complaint pleads no such facts.

49. The Complaint contains only five references to the financial condition of the Debtor. (*See* Compl. ¶¶ 4, 44, 52, 59, 60.) None of these plausibly allege that the Debtor was financially vulnerable at the time of or because of the transfer of the Engagement Letters.

50. As to insolvency, the complaint generally references the Debtor's financial condition over the course of an almost six-month period. This is insufficient to state a claim for relief under section 548(a)(1)(B)(ii)(I), which requires that the Trustee prove that the Debtor was insolvent at the time of the transfer of the Engagement Letters or that it became insolvent as a result of the transfers. The complaint fails, in all respects, to raise any allegation specifically as to the transfers.

51. And the complaint does not even attempt to allege that the Debtor was left with unreasonably small capital as a result of the transfers or intended to incur debt beyond its ability

to repay, as contemplated under section 548(a)(1)(B)(ii)(II)–(III). Indeed, the complaint provides nothing more than a formulaic recitation of the language of the statute. (*See* Compl. ¶ 59.) This is not sufficient. *See Iqbal*, 556 U.S. at 678.

52. Count Two therefore should be dismissed because it fails to state a claim for constructively fraudulent transfer.

**C.  Count Five Fails to State a Claim for Recovery and Relief Under Sections 550 and 551.**

53. Because the Trustee has failed to allege a plausible entitlement to relief under section 548, the Trustee is not entitled to relief under sections 550 and 551. Count Five also fails for the separate reason that the complaint does not allege any benefit to be restored to the estate.

54. "Section 550(a) is intended to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred." *Hirsch v. Gersten (In re Centennial Textiles, Inc.)*, 220 B.R. 165, 176 (Bankr. S.D.N.Y. 1998) ; *see also Gill v. Maddalena (In re Maddalena)*, 176 B.R. 551, 556–57 (Bankr. C.D. Cal. 1995) ("The object of any remedy should be, to the extent practicable, to 'undo' the transfer and to restore the parties to their pretransfer positions …. The proper focus in [section 550(a)] actions is not on what the transferee gained by the transaction, but rather on what the bankruptcy estate lost as a result of the transfer.").

55. Section 550(a) does not guarantee a monetary recovery for the estate where the transferred asset has no value. *Moser v. United States (In re Ames)*, Nos. 10-43401, 11-40023, 11-40286, 2014 LEXIS Bankr. 3244, at *24–25 (Bankr. E.D. Tex. July 30, 2014). In *U.S. Bank N.A. v. Verizon Commc'ns Inc.*, No. 3:10-CV-1842-G, 2012 U.S. Dist. LEXIS 106576, at *35–36 (N.D. Tex. July 31, 2012), the court granted a defendant's motion to dismiss the plaintiff's fraudulent transfer action under section 544 that sought to avoid transfers of stock to the defendant. The court found that "because the transfer of 'worthless' property cannot harm the debtor or its creditors, it cannot sustain any recovery as a fraudulent transfer." *Id.*; *see also Global Crossing Estate Representative v. Winnick*, No. 04 CIV. 2558 (GEL), 2006 U.S. Dist. LEXIS 53785, at *30-31 (S.D.N.Y. Aug. 3, 2006).

Case: 23-03019   Doc# 12-1   Filed: 07/10/23   Entered: 07/10/23 16:17:48   Page 21 of 22

56. Here, the Trustee is not entitled to relief under section 550. Restoring the Debtor to the position it was in before it assigned the Engagement Letters would simply give the Debtor back contractual obligations that it could not perform. The Debtor would be subject to contracts under which it is not qualified to perform, has no right to receive Fees, and could be liable for breach of contract or regulatory enforcement actions. This would provide no benefit to the estate or the creditors and is contrary to the purpose of section 550.

57. Count Five therefore must be dismissed.[4]

## CONCLUSION

58. For these reasons, Finalis respectfully requests that the Court dismiss with prejudice all claims against it and dismiss Finalis from these proceedings.

Dated: July 10, 2023

EVERSHEDS SUTHERLAND (US) LLP

*/s/ Ian S. Shelton*
Ian S. Shelton (Ca. Bar No. 264863)
500 Capitol Mall, Suite 2500
Sacramento, CA 95814
(916) 241-0500
ianshelton@eversheds-sutherland.com

Stacey M. Mohr (*PHV pending*)
999 Peachtree St., NE, Suite 2300
Atlanta, GA 30309
(404) 853-8000
staceymohr@eversheds-sutherland.com

Erin E. Broderick (*PHV pending*)
227 W. Monroe St., Suite 6000
Chicago, IL 60606
(312) 724-9006
erinbroderick@eversheds-sutherland.com

*Counsel for Defendant Finalis Securities, LLC*

---

[4] Moreover, the Trustee cannot overcome Finalis's good faith transferee defense. Section 548(c) provides, in pertinent part, that "a transferee … that takes for value and in good faith … may retain any interest transferred … to the extent such transferee … gave value to the debtor in exchange for such transfer." 11 U.S.C. § 548(c).
    While courts generally decline to consider a defendant's affirmative defenses in the context of a motion to dismiss, an exception applies when a plaintiff pleads facts that, taken as true, establish the affirmative defense. *Levine v. AtriCure, Inc.*, 594 F. Supp. 2d 471, 474 (S.D.N.Y. 2009). This is the case here. The complaint contains no allegations of bad faith as to Finalis. Further, it is plain that Finalis took the transfers for value (and there are no allegations to the contrary). Finally, Finalis gave value to the Debtor in exchange for the transfers. "Value" for the purposes of section 548(c) does not have to be reasonably equivalent value. As set forth above, Finalis gave not only value to the Debtor sufficient to satisfy section 548(c) but also reasonably equivalent value in satisfaction of section 548(a)(1)(B).
    To the extent the Court determines that consideration of Finalis's good faith transferee defense is premature, Finalis reserves all rights with respect thereto.