# EXHIBIT A



**BrokerCheck Report**

# THIRD SEVEN CAPITAL LLC

CRD# 160209

| Section Title | Page(s) |
|---|---|
| Report Summary | 1 |
| Firm Profile | 2 - 8 |
| Firm History | 9 |
| Firm Operations | 10 - 15 |
| Disclosure Events | 16 |

Please be aware that fraudsters may link to BrokerCheck from phishing and similar scam websites, trying to steal your personal information or your money. Make sure you know who you're dealing with when investing, and contact FINRA with any concerns.

For more information read our investor alert on imposters.



# About BrokerCheck®

BrokerCheck offers information on all current, and many former, registered securities brokers, and all current and former registered securities firms. FINRA strongly encourages investors to use BrokerCheck to check the background of securities brokers and brokerage firms before deciding to conduct, or continue to conduct, business with them.

- **What is included in a BrokerCheck report?**

  BrokerCheck reports for individual brokers include information such as employment history, professional qualifications, disciplinary actions, criminal convictions, civil judgments and arbitration awards. BrokerCheck reports for brokerage firms include information on a firm's profile, history, and operations, as well as many of the same disclosure events mentioned above.

  Please note that the information contained in a BrokerCheck report may include pending actions or allegations that may be contested, unresolved or unproven. In the end, these actions or allegations may be resolved in favor of the broker or brokerage firm, or concluded through a negotiated settlement with no admission or finding of wrongdoing.

- **Where did this information come from?**

  The information contained in BrokerCheck comes from FINRA's Central Registration Depository, or CRD® and is a combination of:
  - ○ information FINRA and/or the Securities and Exchange Commission (SEC) require brokers and brokerage firms to submit as part of the registration and licensing process, and
  - ○ information that regulators report regarding disciplinary actions or allegations against firms or brokers.

- **How current is this information?**

  Generally, active brokerage firms and brokers are required to update their professional and disciplinary information in CRD within 30 days. Under most circumstances, information reported by brokerage firms, brokers and regulators is available in BrokerCheck the next business day.

- **What if I want to check the background of an investment adviser firm or investment adviser representative?**

  To check the background of an investment adviser firm or representative, you can search for the firm or individual in BrokerCheck. If your search is successful, click on the link provided to view the available licensing and registration information in the SEC's Investment Adviser Public Disclosure (IAPD) website at https://www.adviserinfo.sec.gov. In the alternative, you may search the IAPD website directly or contact your state securities regulator at http://www.finra.org/Investors/ToolsCalculators/BrokerCheck/P455414.

- **Are there other resources I can use to check the background of investment professionals?**

  FINRA recommends that you learn as much as possible about an investment professional before deciding to work with them. Your state securities regulator can help you research brokers and investment adviser representatives doing business in your state.

- **Thank you for using FINRA BrokerCheck.**



Using this site/information means that you accept the FINRA BrokerCheck Terms and Conditions. A complete list of Terms and Conditions can be found at
brokercheck.finra.org



For additional information about the contents of this report, please refer to the User Guidance or www.finra.org/brokercheck. It provides a glossary of terms and a list of frequently asked questions, as well as additional resources. For more information about FINRA, visit www.finra.org.





# THIRD SEVEN CAPITAL LLC

CRD# 160209

SEC# 8-69032

## Main Office Location

345 AVENUE OF THE AMERICAS
3RD FLOOR
NEW YORK, NY 10105
Regulated by FINRA New York Office

## Mailing Address

345 AVENUE OF THE AMERICAS
3RD FLOOR
NEW YORK, NY 10105

## Business Telephone Number

9452272160

This firm is a brokerage firm and an investment adviser firm. For more information about investment adviser firms, visit the SEC's Investment Adviser Public Disclosure website at:

https://www.adviserinfo.sec.gov

# Report Summary for this Firm

This report summary provides an overview of the brokerage firm. Additional information for this firm can be found in the detailed report.

## Firm Profile

This firm is classified as a limited liability company.

This firm was formed in Delaware on 07/06/2011.

Its fiscal year ends in December.

## Firm History

Information relating to the brokerage firm's history such as other business names and successions (e.g., mergers, acquisitions) can be found in the detailed report.

## Firm Operations

**This firm is registered with:**

- the SEC
- 1 Self-Regulatory Organization
- 53 U.S. states and territories

Is this brokerage firm currently suspended with any regulator?  **No**

This firm conducts 7 types of businesses.

This firm is not affiliated with any financial or investment institutions.

This firm does not have referral or financial arrangements with other brokers or dealers.

## Disclosure Events

Brokerage firms are required to disclose certain criminal matters, regulatory actions, civil judicial proceedings and financial matters in which the firm or one of its control affiliates has been involved.

Are there events disclosed about this firm?    **Yes**

**The following types of disclosures have been reported:**

| Type | Count |
|------|-------|
| Regulatory Event | 1 |

©2022 FINRA. All rights reserved.    Report about THIRD SEVEN CAPITAL LLC

1



# Firm Profile

This firm is classified as a limited liability company.

This firm was formed in Delaware on 07/06/2011.

Its fiscal year ends in December.

## Firm Names and Locations

This section provides the brokerage firm's full legal name, "Doing Business As" name, business and mailing addresses, telephone number, and any alternate name by which the firm conducts business and where such name is used.

**THIRD SEVEN CAPITAL LLC**
**Doing business as THIRD SEVEN CAPITAL LLC**

**CRD#** 160209

**SEC#** 8-69032

**Main Office Location**

1325 AVENUE OF THE AMERICAS
33RD FLOOR
NEW YORK, NY 10105
**Regulated by FINRA New York Office**

**Mailing Address**

1325 AVENUE OF THE AMERICAS
33RD FLOOR
NEW YORK, NY 10105

**Business Telephone Number**

9175272160

©2022 FINRA. All rights reserved.    Report about THIRD SEVEN CAPITAL LLC

Case: 23-09  Doc 23-1  Filed 08/18/23  Entered 08/18/23 18:21:18

2



# Firm Profile

This section provides information relating to all direct owners and executive officers of the brokerage firm.

## Direct Owners and Executive Officers

| Legal Name & CRD# (if any): | THIRD SEVEN GROUP LLC |
| Is this a domestic or foreign entity or an individual? | Domestic Entity |
| Position | HOLDING COMPANY |
| Position Start Date | 03/2018 |
| Percentage of Ownership | 75% or more |
| Does this owner direct the management or policies of the firm? | No |
| Is this a public reporting company? | No |

| Legal Name & CRD# (if any): | DIFIORE, MONICA LISA |
| | 2966552 |
| Is this a domestic or foreign entity or an individual? | Individual |
| Position | CCO |
| Position Start Date | 05/2018 |
| Percentage of Ownership | Less than 5% |
| Does this owner direct the management or policies of the firm? | No |
| Is this a public reporting company? | No |

| Legal Name & CRD# (if any): | JEFFRIES, DAVID HAMILTON |
| | 2254882 |
| Is this a domestic or foreign entity or an individual? | Individual |
| Position | CHAIRMAN/HEAD OF BANKING |
| Position Start Date | 11/2020 |

©2022 FINRA. All rights reserved.    Report about THIRD SEVEN CAPITAL LLC



## Direct Owners and Executive Officers (continued)

| | |
|---|---|
| Percentage of Ownership | Less than 5% |
| Does this owner direct the management or policies of the firm? | Yes |
| Is this a public reporting company? | No |
| Legal Name & CRD# (if any): | LEDGER, NICHOLAS MARK |
| | 6779287 |
| Is this a domestic or foreign entity or an individual? | Individual |
| Position | CEO/CFO |
| Position Start Date | 10/2021 |
| Percentage of Ownership | Less than 5% |
| Does this owner direct the management or policies of the firm? | Yes |
| Is this a public reporting company? | No |
| Legal Name & CRD# (if any): | SAKOL, DANIEL SCOTT |
| | 2813237 |
| Is this a domestic or foreign entity or an individual? | Individual |
| Position | FIN OP |
| Position Start Date | 08/2019 |
| Percentage of Ownership | Less than 5% |
| Does this owner direct the management or policies of the firm? | No |
| Is this a public reporting company? | |

©2022 FINRA. All rights reserved.   Report about THIRD SEVEN CAPITAL LLC

Case 23-03019   Doc#251   Filed 08/18/23   Entered 08/18/23 13:22:15   Page 7 of 62

# Firm Profile

This section provides information relating to any indirect owners of the brokerage firm.

## Indirect Owners

| | |
|---|---|
| **Legal Name & CRD# (if any):** | AMERICAN PHOENIX LTD |
| **Is this a domestic or foreign entity or an individual?** | Foreign Entity |
| **Company through which indirect ownership is established** | THIRD SEVEN GROUP LLC |
| **Relationship to Direct Owner** | OWNER |
| **Relationship Established** | 04/2021 |
| **Percentage of Ownership** | 25% but less than 50% |
| **Does this owner direct the management or policies of the firm?** | No |
| **Is this a public reporting company?** | No |

| | |
|---|---|
| **Legal Name & CRD# (if any):** | BOWER, IAN DAVID |
| | 6145023 |
| **Is this a domestic or foreign entity or an individual?** | Individual |
| **Company through which indirect ownership is established** | AMERICAN PHOENIX LTD |
| **Relationship to Direct Owner** | OWNER |
| **Relationship Established** | 04/2021 |
| **Percentage of Ownership** | Other General Partners |
| **Does this owner direct the management or policies of the firm?** | No |
| **Is this a public reporting company?** | No |

| | |
|---|---|
| **Legal Name & CRD# (if any):** | BURNEY BT, NIGEL DENNISTOUN |
| | 6145027 |

©2022 FINRA. All rights reserved.    Report about THIRD SEVEN CAPITAL LLC








# Firm Profile

## Indirect Owners (continued)

| | |
|---|---|
| **Is this a domestic or foreign entity or an individual?** | Individual |
| **Company through which indirect ownership is established** | AMERICAN PHOENIX LTD |
| **Relationship to Direct Owner** | OWNER |
| **Relationship Established** | 04/2021 |
| **Percentage of Ownership** | Other General Partners |
| **Does this owner direct the management or policies of the firm?** | No |
| **Is this a public reporting company?** | No |

| | |
|---|---|
| **Legal Name & CRD# (if any):** | CHAPMAN, SIMON CHARLES<br>6151124 |
| **Is this a domestic or foreign entity or an individual?** | Individual |
| **Company through which indirect ownership is established** | AMERICAN PHOENIX LTD |
| **Relationship to Direct Owner** | CLASS B OWNER |
| **Relationship Established** | 04/2021 |
| **Percentage of Ownership** | Other General Partners |
| **Does this owner direct the management or policies of the firm?** | No |
| **Is this a public reporting company?** | No |

| | |
|---|---|
| **Legal Name & CRD# (if any):** | DERBYSHIRE, GARETH WYN<br>6145028 |
| **Is this a domestic or foreign entity or an individual?** | Individual |

Case 23-03019 Doc# 22-1 Filed: 08/18/23 Entered: 08/18/23 18:21:18 Page 9 of 62

## Firm Profile

### Indirect Owners (continued)

| | |
|---|---|
| Company through which indirect ownership is established | AMERICAN PHOENIX LTD |
| Relationship to Direct Owner | OWNER |
| Relationship Established | 04/2021 |
| Percentage of Ownership | Other General Partners |
| Does this owner direct the management or policies of the firm? | No |
| Is this a public reporting company? | No |

| | |
|---|---|
| Legal Name & CRD# (if any): | HILLSON, RICHARD LLOYD |
| | 5668079 |
| Is this a domestic or foreign entity or an individual? | Individual |
| Company through which indirect ownership is established | AMERICAN PHOENIX LTD |
| Relationship to Direct Owner | OWNER |
| Relationship Established | 04/2021 |
| Percentage of Ownership | Other General Partners |
| Does this owner direct the management or policies of the firm? | No |
| Is this a public reporting company? | No |

| | |
|---|---|
| Legal Name & CRD# (if any): | NORTH, RICHARD MARK |
| | 6153420 |
| Is this a domestic or foreign entity or an individual? | Individual |
| Company through which indirect ownership is established | AMERICAN PHOENIX LTD |

©2022 FINRA. All rights reserved.   Report about THIRD SEVEN CAPITAL LLC



www.finra.org/brokercheck

User Guidance

# Firm Profile

## Indirect Owners (continued)

| | |
|---|---|
| **Relationship to Direct Owner** | OWNER |
| **Relationship Established** | 04/2021 |
| **Percentage of Ownership** | Other General Partners |
| **Does this owner direct the management or policies of the firm?** | No |
| **Is this a public reporting company?** | No |

©2022 FINRA. All rights reserved.    Report about THIRD SEVEN CAPITAL LLC



8

User Guidance

www.finra.org/brokercheck

# Firm History

This section provides information relating to any successions (e.g., mergers, acquisitions) involving the firm.

No information reported.

©2022 FINRA. All rights reserved.    Report about THIRD SEVEN CAPITAL LLC

# Firm Operations

## Registrations

This section provides information about the regulators (Securities and Exchange Commission (SEC), self-regulatory organizations (SROs), and U.S. states and territories) with which the brokerage firm is currently registered and licensed, the date the license became effective, and certain information about the firm's SEC registration.

**This firm is currently registered with the SEC, 1 SRO and 53 U.S. states and territories.**

| Federal Regulator | Status | Date Effective |
|---|---|---|
| SEC | Approved | 03/25/2013 |

## SEC Registration Questions

This firm is registered with the SEC as:

A broker-dealer:    Yes

A broker-dealer and government securities broker or dealer:    No

A government securities broker or dealer only:    No

This firm has ceased activity as a government securities broker or dealer:    No

| Self-Regulatory Organization | Status | Date Effective |
|---|---|---|
| FINRA | Approved | 03/25/2013 |

©2022 FINRA. All rights reserved.    Report about THIRD SEVEN CAPITAL LLC



## Firm Operations

### Registrations (continued)

| U.S. States & Territories | Status | Date Effective | U.S. States & Territories | Status | Date Effective |
|---|---|---|---|---|---|
| Alabama | Approved | 02/07/2017 | North Carolina | Approved | 01/13/2017 |
| Alaska | Approved | 02/06/2017 | North Dakota | Approved | 03/10/2017 |
| Arizona | Approved | 02/08/2017 | Ohio | Approved | 01/30/2017 |
| Arkansas | Approved | 02/15/2017 | Oklahoma | Approved | 11/05/2014 |
| California | Approved | 06/04/2014 | Oregon | Approved | 02/28/2017 |
| Colorado | Approved | 02/06/2017 | Pennsylvania | Approved | 09/11/2015 |
| Connecticut | Approved | 10/08/2014 | Puerto Rico | Approved | 02/28/2017 |
| Delaware | Approved | 03/06/2017 | Rhode Island | Approved | 01/11/2017 |
| District of Columbia | Approved | 02/01/2017 | South Carolina | Approved | 02/07/2017 |
| Florida | Approved | 03/10/2014 | South Dakota | Approved | 01/19/2017 |
| Georgia | Approved | 02/22/2017 | Tennessee | Approved | 02/08/2017 |
| Hawaii | Approved | 03/16/2017 | Texas | Approved | 03/09/2015 |
| Idaho | Approved | 01/11/2017 | Utah | Approved | 01/23/2017 |
| Illinois | Approved | 02/08/2017 | Vermont | Approved | 02/06/2017 |
| Indiana | Approved | 02/03/2017 | Virgin Islands | Approved | 02/23/2017 |
| Iowa | Approved | 01/12/2017 | Virginia | Approved | 08/31/2015 |
| Kansas | Approved | 02/08/2017 | Washington | Approved | 01/24/2017 |
| Kentucky | Approved | 01/23/2017 | West Virginia | Approved | 02/09/2017 |
| Louisiana | Approved | 01/23/2017 | Wisconsin | Approved | 02/06/2017 |
| Maine | Approved | 03/09/2017 | Wyoming | Approved | 02/06/2017 |
| Maryland | Approved | 10/09/2013 | | | |
| Massachusetts | Approved | 10/16/2015 | | | |
| Michigan | Approved | 02/02/2017 | | | |
| Minnesota | Approved | 02/09/2017 | | | |
| Mississippi | Approved | 01/20/2017 | | | |
| Missouri | Approved | 02/09/2017 | | | |
| Montana | Approved | 01/27/2017 | | | |
| Nebraska | Approved | 05/02/2017 | | | |
| Nevada | Approved | 02/26/2015 | | | |
| New Hampshire | Approved | 03/28/2017 | | | |
| New Jersey | Approved | 02/23/2015 | | | |
| New Mexico | Approved | 02/20/2017 | | | |
| New York | Approved | 03/27/2013 | | | |

Case 23-03019   Doc#321   Filed: 08/18/23   Page 14 of 62   Entered: 08/18/23 18:31:18

©2022 FINRA. All rights reserved.   Report about THIRD SEVEN CAPITAL LLC

# Firm Operations

## Types of Business

This section provides the types of business, including non-securities business, the brokerage firm is engaged in or expects to be engaged in.

**This firm currently conducts 7 types of businesses.**

### Types of Business

| Types of Business |
|---|
| Broker or dealer retailing corporate equity securities over-the-counter |
| Broker or dealer selling corporate debt securities |
| Underwriter or selling group participant (corporate securities other than mutual funds) |
| Mutual fund retailer |
| Broker or dealer selling variable life insurance or annuities |
| Private placements of securities |
| Other - MARKETING OF HEDGE FUNDS; MERGERS AND ACQUISITIONS AND RELATED ADVISORY SERVICES;RESEARCH |

### Other Types of Business

This firm does not effect transactions in commodities, commodity futures, or commodity options.

This firm does not engage in other non-securities business.

Non-Securities Business Description:

©2022 FINRA. All rights reserved.    Report about THIRD SEVEN CAPITAL LLC



www.finra.org/brokercheck

User Guidance

## Firm Operations

### Clearing Arrangements

**This firm does not hold or maintain funds or securities or provide clearing services for other broker-dealer(s).**

### Introducing Arrangements

**This firm does not refer or introduce customers to other brokers and dealers.**

©2022 FINRA. All rights reserved.    Report about THIRD SEVEN CAPITAL LLC





www.finra.org/brokercheck

User Guidance

**Firm Operations**

**Industry Arrangements**

This firm does not have books or records maintained by a third party.

This firm does not have accounts, funds, or securities maintained by a third party.

This firm does not have customer accounts, funds, or securities maintained by a third party.

**Control Persons/Financing**

This firm does not have individuals who control its management or policies through agreement.

This firm does not have individuals who wholly or partly finance the firm's business.

©2022 FINRA. All rights reserved.   Report about THIRD SEVEN CAPITAL LLC

## Organization Affiliates

This section provides information on control relationships the firm has with other firms in the securities, investment advisory, or banking business.

**This firm is not, directly or indirectly:**
- in control of
- controlled by
- or under common control with

**the following partnerships, corporations, or other organizations engaged in the securities or investment advisory business.**

**This firm is not directly or indirectly, controlled by the following:**
- bank holding company
- national bank
- state member bank of the Federal Reserve System
- state non-member bank
- savings bank or association
- credit union
- or foreign bank

©2022 FINRA. All rights reserved. Report about THIRD SEVEN CAPITAL LLC



# Disclosure Events

All firms registered to sell securities or provide investment advice are required to disclose regulatory actions, criminal or civil judicial proceedings, and certain financial matters in which the firm or one of its control affiliates has been involved. For your convenience, below is a matrix of the number and status of disclosure events involving this brokerage firm or one of its control affiliates. Further information regarding these events can be found in the subsequent pages of this report.

|                  | Pending | Final | On Appeal |
|------------------|---------|-------|-----------|
| Regulatory Event | 0       | 1     | 0         |

©2022 FINRA. All rights reserved.    Report about THIRD SEVEN CAPITAL LLC



# Disclosure Event Details

## What you should know about reported disclosure events:

1. **BrokerCheck provides details for any disclosure event that was reported in CRD. It also includes summary information regarding FINRA arbitration awards in cases where the brokerage firm was named as a respondent.**

2. **Certain thresholds must be met before an event is reported to CRD, for example:**
   - A law enforcement agency must file formal charges before a brokerage firm is required to disclose a particular criminal event.

3. **Disclosure events in BrokerCheck reports come from different sources:**
   - Disclosure events for this brokerage firm were reported by the firm and/or regulators. When the firm and a regulator report information for the same event, both versions of the event will appear in the BrokerCheck report. The different versions will be separated by a solid line with the reporting source labeled.

4. **There are different statuses and dispositions for disclosure events:**
   - A disclosure event may have a status of *pending, on appeal,* or *final.*
     - A "pending" event involves allegations that have not been proven or formally adjudicated.
     - An event that is "on appeal" involves allegations that have been adjudicated but are currently being appealed.
     - A "final" event has been concluded and its resolution is not subject to change.
   - A final event generally has a disposition of *adjudicated, settled* or *otherwise resolved.*
     - An "adjudicated" matter includes a disposition by (1) a court of law in a criminal or civil matter, or (2) an administrative panel in an action brought by a regulator that is contested by the party charged with some alleged wrongdoing.
     - A "settled" matter generally involves an agreement by the parties to resolve the matter. Please note that firms may choose to settle customer disputes or regulatory matters for business or other reasons.
     - A "resolved" matter usually involves no payment to the customer and no finding of wrongdoing on the part of the individual broker. Such matters generally involve customer disputes.

5. **You may wish to contact the brokerage firm to obtain further information regarding any of the disclosure events contained in this BrokerCheck report.**

## Regulatory - Final

This type of disclosure event involves (1) a final, formal proceeding initiated by a regulatory authority (e.g., a state securities agency, self-regulatory organization, federal regulator such as the U.S. Securities and Exchange Commission, foreign financial regulatory body) for a violation of investment-related rules or regulations; or (2) a revocation or suspension of the authority of a brokerage firm or its control affiliate to act as an attorney, accountant or federal contractor.

**Disclosure 1 of 1**

**Reporting Source:** Regulator

**Current Status:** Final

©2022 FINRA. All rights reserved.    Report about THIRD SEVEN CAPITAL LLC

Case: 23-03019    Doc# 22-1    Filed: 08/18/23    Entered: 08/18/23 18:21:18    Page 20 of 62


User Guidance

www.finra.org/brokercheck

**Allegations:** WITHOUT ADMITTING OR DENYING THE FINDINGS, THE FIRM CONSENTED TO THE SANCTIONS AND TO THE ENTRY OF FINDINGS THAT IT CONDUCTED SECURITIES BUSINESS ON 34 DAYS WHILE IT FAILED TO MAINTAIN THE MINIMUM REQUIRED NET CAPITAL. THE FINDINGS STATED THAT THE FIRM'S REQUIRED MINIMUM NET CAPITAL RANGED FROM $5,000 TO $13,394. THE FIRM INCURRED $16,832.71 IN LEGAL FEES, WHICH CAUSED THE FIRM'S NET CAPITAL TO FALL BELOW THE REQUIRED MINIMUM, WITH DAILY DEFICIENCIES BETWEEN $726 AND $29,665. THE FINDINGS ALSO STATED THAT THE FIRM FILED INACCURATE NOTICES OF NET CAPITAL DEFICIENCY. THE FIRM FILED A NOTIFICATION WITH THE SEC AND FINRA STATING THAT THE FIRM FAILED TO MAINTAIN NET CAPITAL. HOWEVER, IN ITS FILING, THE FIRM INACCURATELY STATED THAT ITS NET CAPITAL DEFICIENCY HAD ENDED AFTER THE FIRM RECEIVED FUNDS IN CONNECTION WITH A PRIVATE PLACEMENT. THE FIRM ERRONEOUSLY FAILED TO INCLUDE CERTAIN LEGAL FEES DESCRIBED ABOVE IN ITS NET CAPITAL CALCULATIONS AND ITS NET CAPITAL WAS STILL BELOW THE REQUIRED MINIMUM. THE FIRM FILED AN AMENDED NOTIFICATION WITH THE SEC AND FINRA STATING NET CAPITAL DEFICIENCIES HAD NOT ENDED. HOWEVER, THE FIRM INACCURATELY RECORDED CERTAIN CREDITS ATTRIBUTABLE TO RENT AND SOFTWARE INVOICES AS DEBITS. THEREFORE, THE AMENDED NOTIFICATION WAS ALSO INACCURATE, AND THE FIRM'S NET CAPITAL ACTUALLY REMAINED BELOW THE REQUIRED MINIMUM. THE FINDINGS ALSO INCLUDED THAT THIRD SEVEN CAPITAL LLC FAILED TO MAINTAIN ACCURATE BOOKS AND RECORDS CONCERNING ITS AGGREGATE INDEBTEDNESS AND NET CAPITAL. IN ADDITION, THE FIRM FILED A FINANCIAL AND OPERATIONAL COMBINED UNIFORM SINGLE (FOCUS) REPORT FOR THE FOURTH QUARTER OF 2019 THAT INACCURATELY STATED THE AMOUNT OF THE FIRM'S NET CAPITAL DEFICIENCY.

**Initiated By:** FINRA

**Date Initiated:** 01/03/2022

**Docket/Case Number:** 2020065094701

**Principal Product Type:** No Product

**Other Product Type(s):**

**Principal Sanction(s)/Relief Sought:**

**Other Sanction(s)/Relief Sought:**

**Resolution:** Acceptance, Waiver & Consent(AWC)

**Resolution Date:** 01/03/2022

©2022 FINRA. All rights reserved.    Report about THIRD SEVEN CAPITAL LLC


www.finra.org/brokercheck

**Does the order constitute a final order based on violations of any laws or regulations that prohibit fraudulent, manipulative, or deceptive conduct?**
No

**Sanctions Ordered:**
Censure
Monetary/Fine $10,000.00

**Other Sanctions Ordered:**

**Sanction Details:**
THE FIRM WAS CENSURED AND FINED $10,000. FINE PAID IN FULL ON JANUARY 18, 2022.

**Reporting Source:** Firm

**Current Status:** Final

**Allegations:** BETWEEN DECEMBER 31, 2019, AND MARCH 1, 2020, TSC CONDUCTED A SECURITIES BUSINESS WHILE IT FAILED TO MAINTAIN THE REQUIRED NET CAPITAL REQUIREMENT.

**Initiated By:** FINRA

**Date Initiated:** 01/03/2022

**Docket/Case Number:** 202006509470 1

**Principal Product Type:** Other

**Other Product Type(s):** NOT PRODUCT RELATED

**Principal Sanction(s)/Relief Sought:** Censure

**Other Sanction(s)/Relief Sought:**

**Resolution:** Acceptance, Waiver & Consent(AWC)

**Resolution Date:** 01/03/2022

**Sanctions Ordered:**
Censure
Monetary/Fine $10,000.00

**Other Sanctions Ordered:**

**Sanction Details:** FINE PAID IN THE AMOUNT OF $10000

**Firm Statement** TSC DID NOT ADMIT OR DENY THE ALLEGATIONS AND IS PLEASED TO HAVE RESOLVED THESE LEGACY ISSUES THAT, AS ALLEGED, AROSE

©2022 FINRA. All rights reserved.    Report about THIRD SEVEN CAPITAL LLC



User Guidance

www.finra.org/brokercheck

BETWEEN 12/31/19 AND 3/1/20.

©2022 FINRA. All rights reserved.    Report about THIRD SEVEN CAPITAL LLC



User Guidance

**End of Report**

**This page is intentionally left blank.**

www.finra.org/brokercheck



©2022 FINRA. All rights reserved.    Report about THIRD SEVEN CAPITAL LLC


Case: 23-03019     Doc# 22-1     Filed: 08/18/23     Entered: 08/18/23 18:21:18     Page 24
of 62



**BrokerCheck Report**

## ARQUE CAPITAL, LTD.

CRD# 121192

| Section Title | Page(s) |
| --- | --- |
| Report Summary | 1 |
| Firm Profile | 2 - 6 |
| Firm History | 7 |
| Firm Operations | 8 - 14 |
| Disclosure Events | 15 |

Please be aware that fraudsters may link to BrokerCheck from phishing and similar scam websites, trying to steal your personal information or your money. Make sure you know who you're dealing with when investing, and contact FINRA with any concerns. For more information read our investor alert on imposters.



# About BrokerCheck®

BrokerCheck offers information on all current, and many former, registered securities brokers, and all current and former registered securities firms. FINRA strongly encourages investors to use BrokerCheck to check the background of securities brokers and brokerage firms before deciding to conduct, or continue to conduct, business with them.

## What is included in a BrokerCheck report?

BrokerCheck reports for individual brokers include information such as employment history, professional qualifications, disciplinary actions, criminal convictions, civil judgments and arbitration awards. BrokerCheck reports for brokerage firms include information on a firm's profile, history, and operations, as well as many of the same disclosure events mentioned above.

Please note that the information contained in a BrokerCheck report may include pending actions or allegations that may be contested, unresolved or unproven. In the end, these actions or allegations may be resolved in favor of the broker or brokerage firm, or concluded through a negotiated settlement with no admission or finding of wrongdoing.

## Where did this information come from?

The information contained in BrokerCheck comes from FINRA's Central Registration Depository, or CRD® and is a combination of:

- information FINRA and/or the Securities and Exchange Commission (SEC) require brokers and brokerage firms to submit as part of the registration and licensing process, and
- information that regulators report regarding disciplinary actions or allegations against firms or brokers.

## How current is this information?

Generally, active brokerage firms and brokers are required to update their professional and disciplinary information in CRD within 30 days. Under most circumstances, information reported by brokerage firms, brokers and regulators is available in BrokerCheck the next business day.

## What if I want to check the background of an investment adviser firm or investment adviser representative?

To check the background of an investment adviser firm or representative, you can search for the firm or individual in BrokerCheck. If your search is successful, click on the link provided to view the available licensing and registration information in the SEC's Investment Adviser Public Disclosure (IAPD) website at https://www.adviserinfo.sec.gov. In the alternative, you may search the IAPD website directly or contact your state securities regulator at http://www.finra.org/Investors/ToolsCalculators/BrokerCheck/P455414.

## Are there other resources I can use to check the background of investment professionals?

FINRA recommends that you learn as much as possible about an investment professional before deciding to work with them. Your state securities regulator can help you research brokers and investment adviser representatives doing business in your state.

**Thank you for using FINRA BrokerCheck.**



Using this site/information means that you accept the FINRA BrokerCheck Terms and Conditions. A complete list of Terms and Conditions can be found at brokercheck.finra.org



For additional information about the contents of this report, please refer to the User Guidance or www.finra.org/brokercheck. It provides a glossary of terms and a list of frequently asked questions, as well as additional resources. For more information about FINRA, visit www.finra.org.




# ARQUE CAPITAL, LTD.

CRD# 121192

SEC# 8-65390

## Main Office Location

5665 NORTH SCOTTSDALE ROAD
SUITE 130
SCOTTSDALE, AZ 85250
Regulated by FINRA Denver Office

## Mailing Address

5665 NORTH SCOTTSDALE ROAD
SUITE 130
SCOTTSDALE, AZ 85250

## Business Telephone Number

602-971-9000

This firm is a brokerage firm and an investment
adviser firm. For more information about
investment adviser firms, visit the SEC's
Investment Adviser Public Disclosure website at:
https://www.adviserinfo.sec.gov

# Report Summary for this Firm

This report summary provides an overview of the brokerage firm. Additional information for this firm can be found
in the detailed report.

## Firm Profile

This firm is classified as a corporation.

This firm was formed in California on 11/18/2005.

Its fiscal year ends in December.

## Firm History

Information relating to the brokerage firm's history
such as other business names and successions
(e.g., mergers, acquisitions) can be found in the
detailed report.

## Firm Operations

**This firm is registered with:**

- 1 Self-Regulatory Organization
- 8 U.S. states and territories

Is this brokerage firm currently suspended with any
regulator?  **No**

This firm conducts 15 types of businesses.

This firm is affiliated with financial or investment
institutions.

This firm has referral or financial arrangements with
other brokers or dealers.

# Disclosure Events

Brokerage firms are required to disclose certain
criminal matters, regulatory actions, civil judicial
proceedings and financial matters in which the firm or
one of its control affiliates has been involved.

Are there events disclosed about this firm?  **Yes**

The following types of disclosures have been
reported:

| Type | Count |
|------|-------|
| Regulatory Event | 4 |

©2023 FINRA. All rights reserved.    Report about ARQUE CAPITAL, LTD.    1

# Firm Profile

This firm is classified as a corporation.

This firm was formed in California on 11/18/2005.

Its fiscal year ends in December.

## Firm Names and Locations

This section provides the brokerage firm's full legal name, "Doing Business As" name, business and mailing addresses, telephone number, and any alternate name by which the firm conducts business and where such name is used.

**ARQUE CAPITAL, LTD.**
**Doing business as ARQUE CAPITAL, LTD.**

**CRD#** 121192
**SEC#** 8-65390

**Main Office Location**

5665 NORTH SCOTTSDALE ROAD
STE 130
SCOTTSDALE, AZ 85250
**Regulated by FINRA Denver Office**

**Mailing Address**

5665 NORTH SCOTTSDALE ROAD
STE 130
SCOTTSDALE, AZ 85250

**Business Telephone Number**

602-971-9000

©2023 FINRA. All rights reserved.    Report about ARQUE CAPITAL, LTD.



# Firm Profile

This section provides information relating to all direct owners and executive officers of the brokerage firm.

## Direct Owners and Executive Officers

| | |
|---|---|
| **Legal Name & CRD# (if any):** | ARQUE ORION WINTER SKIES, LTD. |
| **Is this a domestic or foreign entity or an individual?** | Domestic Entity |
| **Position** | PARENT COMPANY |
| **Position Start Date** | 11/2005 |
| **Percentage of Ownership** | 75% or more |
| **Does this owner direct the management or policies of the firm?** | Yes |
| **Is this a public reporting company?** | No |

| | |
|---|---|
| **Legal Name & CRD# (if any):** | KUWABARA, AUDREY MARI |
| | 5007219 |
| **Is this a domestic or foreign entity or an individual?** | Individual |
| **Position** | PRESIDENT & CEO (INTERIM) |
| **Position Start Date** | 06/2023 |
| **Percentage of Ownership** | Less than 5% |
| **Does this owner direct the management or policies of the firm?** | Yes |
| **Is this a public reporting company?** | No |

| | |
|---|---|
| **Legal Name & CRD# (if any):** | KUWABARA, AUDREY MARI |
| | 5007219 |
| **Is this a domestic or foreign entity or an individual?** | Individual |
| **Position** | CHIEF RISK OFFICER/GENERAL COUNSEL/SECRETARY/CHIEF COMPLIANCE OFFICER |
| **Position Start Date** | 07/2010 |

©2023 FINRA. All rights reserved.    Report about ARQUE CAPITAL, LTD.



www.finra.org/brokercheck
User Guidance

# Firm Profile

## Direct Owners and Executive Officers (continued)

| Percentage of Ownership | Less than 5% |
| --- | --- |
| Does this owner direct the management or policies of the firm? | Yes |
| Is this a public reporting company? | No |

| Legal Name & CRD# (if any): | NING, MICHAEL CHENG |
| --- | --- |
| | 1229733 |
| Is this a domestic or foreign entity or an individual? | Individual |
| Position | PRESIDENT & CEO |
| Position Start Date | 07/2010 |
| Percentage of Ownership | Less than 5% |
| Does this owner direct the management or policies of the firm? | Yes |
| Is this a public reporting company? | No |

| Legal Name & CRD# (if any): | ROACH, ROBERT GARFIELD JR |
| --- | --- |
| | 2731222 |
| Is this a domestic or foreign entity or an individual? | Individual |
| Position | FINOP |
| Position Start Date | 08/2019 |
| Percentage of Ownership | Less than 5% |
| Does this owner direct the management or policies of the firm? | No |
| Is this a public reporting company? | No |

| Legal Name & CRD# (if any): | SCANLON, TIMOTHY JOSEPH |
| --- | --- |

©2023 FINRA. All rights reserved.    Report about ARQUE CAPITAL, LTD.

## Direct Owners and Executive Officers (continued)

| | |
|---|---|
| | 1968597 |
| **Is this a domestic or foreign entity or an individual?** | Individual |
| **Position** | DIRECTOR - PRIVATE CLIENT DIVISION |
| **Position Start Date** | 02/2011 |
| **Percentage of Ownership** | Less than 5% |
| **Does this owner direct the management or policies of the firm?** | Yes |
| **Is this a public reporting company?** | No |

| | |
|---|---|
| **Legal Name & CRD# (if any):** | SULLIVAN, JAMES CHESTER |
| | 804918 |
| **Is this a domestic or foreign entity or an individual?** | Individual |
| **Position** | OPTIONS PRINCIPAL |
| **Position Start Date** | 08/2019 |
| **Percentage of Ownership** | Less than 5% |
| **Does this owner direct the management or policies of the firm?** | No |
| **Is this a public reporting company?** | No |

©2023 FINRA. All rights reserved.    Report about ARQUE CAPITAL, LTD.



# Firm Profile

This section provides information relating to any indirect owners of the brokerage firm.

## Indirect Owners

**Legal Name & CRD# (if any):** NING, MICHAEL CHENG

1229733

**Is this a domestic or foreign entity or an individual?** Individual

**Company through which indirect ownership is established** ARQUE ORION WINTER SKIES, LTD.

**Relationship to Direct Owner** SHAREHOLDER

**Relationship Established** 11/2005

**Percentage of Ownership** 75% or more

**Does this owner direct the management or policies of the firm?** Yes

**Is this a public reporting company?** No

©2023 FINRA. All rights reserved.     Report about ARQUE CAPITAL, LTD.



www.finra.org/brokercheck

User Guidance

# Firm History

This section provides information relating to any successions (e.g., mergers, acquisitions) involving the firm.

No information reported.

©2023 FINRA. All rights reserved.     Report about ARQUE CAPITAL, LTD.

**Firm Operations**

## Registrations

This section provides information about the regulators (Securities and Exchange Commission (SEC), self-regulatory organizations (SROs), and U.S. states and territories) with which the brokerage firm is currently registered and licensed, the date the license became effective, and certain information about the firm's SEC registration.

**This firm is currently registered with 1 SRO and 8 U.S. states and territories.**

| Self-Regulatory Organization | Status | Date Effective |
|---|---|---|
| FINRA | Termination Requested | 06/16/2023 |

©2023 FINRA. All rights reserved.    Report about ARQUE CAPITAL, LTD.



www.finra.org/brokercheck

**Firm Operations**

## Registrations (continued)

| U.S. States & Territories | Status | Date Effective |
|---|---|---|
| Alaska | Termination Requested | 06/16/2023 |
| Arizona | Termination Requested | 06/16/2023 |
| Illinois | Termination Requested | 06/16/2023 |
| Indiana | Termination Requested | 06/16/2023 |
| Maryland | Termination Requested | 06/16/2023 |
| Mississippi | Termination Requested | 06/16/2023 |
| Montana | Termination Requested | 06/16/2023 |
| Washington | Termination Requested | 06/16/2023 |



©2023 FINRA. All rights reserved.    Report about ARQUE CAPITAL, LTD.



www.finra.org/brokercheck

# Firm Operations

## Types of Business

This section provides the types of business, including non-securities business, the brokerage firm is engaged in or exects to be engaged in.

**This firm currently conducts 15 types of businesses.**

### Types of Business

Broker or dealer retailing corporate equity securities over-the-counter

Broker or dealer selling corporate debt securities

Underwriter or selling group participant (corporate securities other than mutual funds)

Mutual fund retailer

U.S. government securities dealer

U.S. government securities broker

Municipal securities dealer

Municipal securities broker

Broker or dealer selling variable life insurance or annuities

Broker or dealer selling oil and gas interests

Put and call broker or dealer or option writer

Investment advisory services

Broker or dealer selling tax shelters or limited partnerships in primary distributions

Private placements of securities

Other - 1. ALTERNATIVE INVESTMENTS AND STRUCTURED PRODUCTS 2. THE FIRM WILL RECEIVE REFERRAL FEES FROM REGISTERED INVESTMENT ADVISERS FOR REFERRING ACCREDITED, SUPER ACCREDITED AND QUALIFIED INSTITUTIONAL BUSINESS. 3. THE FIRM WILL ENGAGE IN ADVISORY FUNCTION RELATED TO ACQUISITION ACTIVITY OF PRIVATE FIRMS AND RECEIVE COMPENSATION ON A FIXED FEE OR COMMISION BASIS. 4. THE FIRM WILL ALSO ACT AS A WHOLESALE DISTRIBUTOR OF MUTUAL FUNDS. IT WILL INTRODUCE THE MUTUAL FUND TO REGISTERED BROKER DEALERS AND OTHER INTERMEDIAR

## Other Types of Business

The firm does not effect transactions in commodities, commodity futures, or commodity options.

The firm does not engage in other non-securities business.

Non-Securities Business Description:

©2023 FINRA. All rights reserved.    Report about ARQUE CAPITAL, LTD.

10



www.finra.org/brokercheck

# Firm Operations

## Clearing Arrangements

**This firm does not hold or maintain funds or securities or provide clearing services for other broker-dealer(s).**

## Introducing Arrangements

**This firm does refer or introduce customers to other brokers and dealers.**

**Name:** STONEX FINANCIAL INC.

**CRD #:** 45993

**Business Address:** 329 PARK AVE N., SUITE 350
WINTER PARK, FL 32789

**Effective Date:** 07/01/2017

**Description:** ARQUE CAPITAL, LTD. IS AN INTRODUCING BROKER DEALER TO
STONEX FINANCIAL INC. ON A FULLY DISCLOSED BASIS

©2023 FINRA. All rights reserved. Report about ARQUE CAPITAL, LTD.

11



# Firm Operations

## Industry Arrangements

**This firm does have books or records maintained by a third party.**

**Name:** STONEX FINANCIAL INC.

**CRD #:** 45993

**Business Address:** 329 PARK AVE N., SUITE 350
WINTER PARK, FL 32789

**Effective Date:** 07/01/2017

**Description:** ACCOUNTS, FUNDS, SECURITIES OF CUSTOMERS CUSTODIED WITH
ARE KEPT AND MAINTAINED BY STONEX FINANCIAL INC.

**This firm does have accounts, funds, or securities maintained by a third party.**

**Name:** STONEX FINANCIAL INC.

**CRD #:** 45993

**Business Address:** 329 PARK AVE N., SUITE 350
WINTER PARK, FL 32789

**Effective Date:** 07/01/2017

**Description:** ACCOUNTS, FUNDS, SECURITIES OF CUSTOMERS CUSTODIED WITH
AND MAINTAINED BY STONEX FINANCIAL INC.

**This firm does have customer accounts, funds, or securities maintained by a third party.**

**Name:** STONEX FINANCIAL INC.

**CRD #:** 45993

**Business Address:** 329 PARK AVE N., SUITE 350
WINTER PARK, FL 32789

**Effective Date:** 07/01/2017

**Description:** ACCOUNTS, FUNDS, SECURITIES OF CUSTOMERS CUSTODIED WITH
AND MAINTAINED BY STONEX FINANCIAL INC.

## Control Persons/Financing

**The firm does not have individuals who control its management or policies through agreement.**

**This firm does not have individuals who wholly or partly finance the firm's business.**

©2023 FINRA. All rights reserved.    Report about ARQUE CAPITAL, LTD.



# Firm Operations

## Organization Affiliates

This section provides information on control relationships the firm has with other firms in the securities, investment advisory, or banking business.

**This firm is, directly or indirectly:**

- **in control of**
- **controlled by**
- **or under common control with**

**the following partnerships, corporations, or other organizations engaged in the securities or investment advisory business.**

**CONSERVERDE LLC is under common control with the firm.**

| | |
|---|---|
| **Business Address:** | PO BOX 89<br>TORRANCE, CA 90507 |
| **Effective Date:** | 11/09/2017 |
| **Foreign Entity:** | No |
| **Country:** | |
| **Securities Activities:** | Yes |
| **Investment Advisory Activities:** | No |
| **Description:** | CONSERVERDE LLC, A CONSULTANT AND COULD ACT AS A SPONSOR IN THE FUTURE FOR ISSUERS OF CONSERVATION PROJECTS, IS UNDER COMMON CONTROL BY AFFILIATION WITH MICHAEL NING. |

**RENEWABLE ENERGY VENTURES, LLC is under common control with the firm.**

| | |
|---|---|
| **Business Address:** | PO BOX 89<br>TORRANCE, CA 90507 |
| **Effective Date:** | 07/29/2016 |
| **Foreign Entity:** | No |
| **Country:** | |
| **Securities Activities:** | Yes |
| **Investment Advisory Activities:** | No |
| **Description:** | RENEWABLE ENERGY VENTURES, LLC, A CONSULTANT AND SOMETIMES ACTS AS A SPONSOR FOR ISSUERS OF RENEWABLE ENERGY PROJECTS, IS UNDER COMMON CONTROL BY AFFILIATION WITH MICHAEL NING. |

©2023 FINRA. All rights reserved.    Report about ARQUE CAPITAL, LTD.



# Firm Operations

## Organization Affiliates (continued)

**This firm is not directly or indirectly, controlled by the following:**

- **bank holding company**
- **national bank**
- **state member bank of the Federal Reserve System**
- **state non-member bank**
- **savings bank or association**
- **credit union**
- **or foreign bank**

©2023 FINRA. All rights reserved.    Report about ARQUE CAPITAL, LTD.



User Guidance



# Disclosure Events

All firms registered to sell securities or provide investment advice are required to disclose regulatory actions, criminal or civil judicial proceedings, and certain financial matters in which the firm or one of its control affiliates has been involved. For your convenience, below is a matrix of the number and status of disclosure events involving this brokerage firm or one of its control affiliates. Further information regarding these events can be found in the subsequent pages of this report.

| | Pending | Final | On Appeal |
|---|---|---|---|
| Regulatory Event | 0 | 4 | 0 |

©2023 FINRA. All rights reserved.    Report about ARQUE CAPITAL, LTD.



16

# Disclosure Event Details

## What you should know about reported disclosure events:

1. **BrokerCheck provides details for any disclosure event that was reported in CRD. It also includes summary information regarding FINRA arbitration awards in cases where the brokerage firm was named as a respondent.**

2. **Certain thresholds must be met before an event is reported to CRD, for example:**
   - A law enforcement agency must file formal charges before a brokerage firm is required to disclose a particular criminal event.

3. **Disclosure events in BrokerCheck reports come from different sources:**
   - Disclosure events for this brokerage firm were reported by the firm and/or regulators. When the firm and a regulator report information for the same event, both versions of the event will appear in the BrokerCheck report. The different versions will be separated by a solid line with the reporting source labeled.

4. **There are different statuses and dispositions for disclosure events:**
   - A disclosure event may have a status of *pending, on appeal, or final.*
     - A "pending" event involves allegations that have not been proven or formally adjudicated.
     - An event that is "on appeal" involves allegations that have been adjudicated but are currently being appealed.
     - A "final" event has been concluded and its resolution is not subject to change.
   - A final event generally has a disposition of *adjudicated, settled or otherwise resolved.*
     - An "adjudicated" matter includes a disposition by (1) a court of law in a criminal or civil matter, or (2) an administrative panel in an action brought by a regulator that is contested by the party charged with some alleged wrongdoing.
     - A "settled" matter generally involves an agreement by the parties to resolve the matter. Please note that firms may choose to settle customer disputes or regulatory matters for business or other reasons.
     - A "resolved" matter usually involves no payment to the customer and no finding of wrongdoing on the part of the individual broker. Such matters generally involve customer disputes.

5. **You may wish to contact the brokerage firm to obtain further information regarding any of the disclosure events contained in this BrokerCheck report.**

## Regulatory – Final

This type of disclosure event involves (1) a final, formal proceeding initiated by a regulatory authority (e.g., a state securities agency, self-regulatory organization, federal regulator such as the U.S. Securities and Exchange Commission, foreign financial regulatory body) for a violation of investment-related rules or regulations; or (2) a revocation or suspension of the authority of a brokerage firm or its control affiliate to act as an attorney, accountant or federal contractor.

### Disclosure 1 of 4

**Reporting Source:** Regulator

**Current Status:** Final

©2023 FINRA. All rights reserved.    Report about ARQUE CAPITAL, LTD.


www.finra.org/brokercheck

**Allegations:** WITHOUT ADMITTING OR DENYING THE FINDINGS, THE FIRM CONSENTED TO THE SANCTIONS AND TO THE ENTRY OF FINDINGS THAT IT VIOLATED SECTION 15(C) OF THE SECURITIES EXCHANGE ACT OF 1934 BY CONDUCTING A SECURITIES BUSINESS WHILE FAILING TO MAINTAIN THE REQUIRED MINIMUM NET CAPITAL. THE FINDINGS STATED THAT THE FIRM CONDUCTED A SECURITIES BUSINESS WHEN ITS NET CAPITAL FELL BELOW THE REQUIRED MINIMUM AMOUNT, WITH DEFICIENCIES RANGING FROM $24,726 TO $46,582. THESE DEFICIENCIES OCCURRED BECAUSE THE FIRM UNDERSTATED ITS DEBT RELATING TO COMMISSIONS PAYABLE AND MISSTATED ALLOWABLE ASSETS BY OVERSTATING COMMISSIONS RECEIVABLE FROM A MUTUAL FUND COMPANY. THE FINDINGS ALSO STATED THAT THE FIRM FAILED TO PROVIDE TIMELY NOTICE, AND PROVIDED ONE INACCURATE NOTICE, OF ITS NET CAPITAL DEFICIENCIES. THE FIRM FAILED TO TIMELY NOTIFY FINRA AND THE SEC OF ITS NET CAPITAL DEFICIENCIES FOR THREE PERIODS DURING WHICH THE FIRM'S MINIMUM NET CAPITAL FELL BELOW ITS MINIMUM REQUIREMENT. THE FIRM ALSO PROVIDED A NOTIFICATION THAT CONTAINED A MATERIAL INACCURACY, STATING THAT ITS NET CAPITAL DEFICIENCY ENDED THAT DAY, WHEN IN FACT IT ENDED A MONTH PRIOR. THE FIRM DID NOT FILE AN AMENDED NOTICE WITH FINRA AND THE SEC REFLECTING THE CORRECT PERIOD OF THE DEFICIENCY UNTIL OVER 20 MONTHS LATER. THE FINDINGS ALSO INCLUDED THAT THE FIRM FAILED TO MAKE AND KEEP ACCURATE BOOKS AND RECORDS. THE FIRM CREATED AND MAINTAINED INACCURATE BALANCE SHEETS, TRIAL BALANCES, GENERAL LEDGERS, AND NET CAPITAL COMPUTATIONS. THESE INACCURATE RECORDS RESULTED FROM THE FIRM'S FAILURE TO ACCRUE AND RECORD CERTAIN EXPENSES, ACCURATELY ACCOUNT FOR COMMISSIONS PAYABLE, COMMISSIONS RECEIVABLE, AND DIRECT BUSINESS RECEIVABLES, AND ACCURATELY RECORD ASSETS AND LIABILITIES. IN ADDITION, THE FIRM MISCALCULATED AND OVERSTATED ITS NET CAPITAL. FINRA FOUND THAT THE FIRM FILED INACCURATE AND UNTIMELY FINANCIAL AND OPERATIONAL COMBINED UNIFORM SINGLE (FOCUS) REPORTS. THE FIRM INACCURATELY RECORDED CERTAIN FINANCIAL INFORMATION-INCLUDING ITS LIABILITIES, EXPENSES, OWNERSHIP EQUITY, REVENUE, ASSETS, NET CAPITAL, AND MINIMUM NET CAPITAL REQUIREMENT-ON QUARTERLY AND MONTH-END FOCUS REPORTS. IN ADDITION TO FILING INACCURATE FOCUS REPORTS, THE FIRM FILED ONE LATE FOCUS REPORT. FINRA ALSO FOUND THAT THE FIRM AND ITS OWNER AND CHIEF EXECUTIVE OFFICER (CEO) FAILED TO REMIT WITHHELD EMPLOYEE PAYROLL TAXES TO THE U.S. TREASURY. THE FIRM'S OWNER AND CEO CONTROLLED THE FIRM'S FINANCIAL AFFAIRS AND DIRECTED THE COLLECTING, ACCOUNTING, AND PAYING OF PAYROLL TAXES TO THE U.S. TREASURY. ALTHOUGH THE FIRM'S OWNER AND CEO WAS AWARE OF THE FIRM'S OBLIGATION TO REMIT THE WITHHELD PAYROLL TAXES TO THE U.S. TREASURY WHEN THEY BECAME DUE, THE FIRM USED THOSE FUNDS TO PAY FOR OTHER

Report about ARQUE CAPITAL, LTD.

©2023 FINRA. All rights reserved.



www.finra.org/brokercheck

**Initiated By:** FINRA

**Date Initiated:** 05/10/2023

**Docket/Case Number:** 202006512570‌1

**Principal Product Type:** No Product

**Other Product Type(s):**

**Principal Sanction(s)/Relief Sought:**

**Other Sanction(s)/Relief Sought:**

**Resolution:** Acceptance, Waiver & Consent(AWC)

**Resolution Date:** 05/10/2023

**Does the order constitute a final order based on violations of any laws or regulations that prohibit fraudulent, manipulative, or deceptive conduct?** Yes

**Sanctions Ordered:** Censure
Monetary/Fine $50,000.00

**Other Sanctions Ordered:**

**Sanction Details:** THE FIRM WAS CENSURED AND FINED $50,000.

**Reporting Source:** Firm

**Current Status:** Final

**Allegations:** WITHOUT ADMITTING OR DENYING THE FINDINGS, THE FIRM CONSENTED TO THE SANCTIONS AND TO THE ENTRY OF FINDINGS THAT IT VIOLATED SECTION 15(C) OF THE SECURITIES EXCHANGE ACT OF 1934 BY CONDUCTING A SECURITIES BUSINESS WHILE FAILING TO MAINTAIN THE REQUIRED MINIMUM NET CAPITAL. THE FINDINGS STATED THAT THE FIRM CONDUCTED A SECURITIES BUSINESS WHEN ITS NET CAPITAL FELL BELOW THE REQUIRED MINIMUM AMOUNT, WITH DEFICIENCIES RANGING

FIRM BUSINESS EXPENSES. AS A RESULT, DURING THIS PERIOD, THE FIRM AND ITS OWNER AND CEO FAILED TO REMIT EMPLOYEES' PAYROLL TAXES TO THE U.S. TREASURY AS THEY BECAME DUE. THE FIRM OWED APPROXIMATELY $125,000 IN UNPAID PAYROLL TAXES, WHICH IT HAS SINCE PAID.

©2023 FINRA. All rights reserved.   Report about ARQUE CAPITAL, LTD.



www.finra.org/brokercheck

FROM $24,726 TO $46,582. THESE DEFICIENCIES OCCURRED BECAUSE THE FIRM UNDERSTATED ITS DEBT RELATING TO COMMISSIONS PAYABLE AND MISSTATED ALLOWABLE ASSETS BY OVERSTATING COMMISSIONS RECEIVABLE FROM A MUTUAL FUND COMPANY. THE FINDINGS ALSO STATED THAT THE FIRM FAILED TO PROVIDE TIMELY NOTICE, AND PROVIDED ONE INACCURATE NOTICE, OF ITS NET CAPITAL DEFICIENCIES. THE FIRM FAILED TO TIMELY NOTIFY FINRA AND THE SEC OF ITS NET CAPITAL DEFICIENCIES FOR THREE PERIODS DURING WHICH THE FIRM'S MINIMUM NET CAPITAL FELL BELOW ITS MINIMUM REQUIREMENT. THE FIRM ALSO PROVIDED A NOTIFICATION THAT CONTAINED A MATERIAL INACCURACY, STATING THAT ITS NET CAPITAL DEFICIENCY ENDED THAT DAY, WHEN IN FACT IT ENDED A MONTH PRIOR. THE FIRM DID NOT FILE AN AMENDED NOTICE WITH FINRA AND THE SEC REFLECTING THE CORRECT PERIOD OF THE DEFICIENCY UNTIL OVER 20 MONTHS LATER. THE FINDINGS ALSO INCLUDED THAT THE FIRM FAILED TO MAKE AND KEEP ACCURATE BOOKS AND RECORDS. THE FIRM CREATED AND MAINTAINED INACCURATE BALANCE SHEETS, TRIAL BALANCES, GENERAL LEDGERS, AND NET CAPITAL COMPUTATIONS. THESE INACCURATE RECORDS RESULTED FROM THE FIRM'S FAILURE TO ACCRUE AND RECORD CERTAIN EXPENSES, ACCURATELY ACCOUNT FOR COMMISSIONS PAYABLE, COMMISSIONS RECEIVABLE, AND DIRECT BUSINESS RECEIVABLES, AND ACCURATELY RECORD ASSETS AND LIABILITIES. IN ADDITION, THE FIRM MISCALCULATED AND OVERSTATED ITS NET CAPITAL. FINRA FOUND THAT THE FIRM FILED INACCURATE AND UNTIMELY FINANCIAL AND OPERATIONAL COMBINED UNIFORM SINGLE (FOCUS) REPORTS. THE FIRM INACCURATELY RECORDED CERTAIN FINANCIAL INFORMATION-INCLUDING ITS LIABILITIES, EXPENSES, OWNERSHIP EQUITY, REVENUE, ASSETS, NET CAPITAL, AND MINIMUM NET CAPITAL REQUIREMENT-ON QUARTERLY AND MONTH-END FOCUS REPORTS. IN ADDITION TO FILING INACCURATE FOCUS REPORTS, THE FIRM FILED ONE LATE FOCUS REPORT. FINRA ALSO FOUND THAT THE FIRM AND ITS OWNER AND CHIEF EXECUTIVE OFFICER (CEO) FAILED TO REMIT WITHHELD EMPLOYEE PAYROLL TAXES TO THE U.S. TREASURY. THE FIRM'S OWNER AND CEO CONTROLLED THE FIRM'S FINANCIAL AFFAIRS AND DIRECTED THE COLLECTING, ACCOUNTING, AND PAYING OF PAYROLL TAXES TO THE U.S. TREASURY. ALTHOUGH THE FIRM'S OWNER AND CEO WAS AWARE OF THE FIRM'S OBLIGATION TO REMIT THE WITHHELD PAYROLL TAXES TO THE U.S. TREASURY WHEN THEY BECAME DUE, THE FIRM USED THOSE FUNDS TO PAY FOR OTHER FIRM BUSINESS EXPENSES. AS A RESULT, DURING THIS PERIOD, THE FIRM AND ITS OWNER AND CEO FAILED TO REMIT EMPLOYEES' PAYROLL TAXES TO THE U.S. TREASURY AS THEY BECAME DUE. THE FIRM OWED APPROXIMATELY $125,000 IN UNPAID PAYROLL TAXES, WHICH IT HAS SINCE PAID.

FINRA

**Initiated By:**

Report about ARQUE CAPITAL, LTD.

©2023 FINRA. All rights reserved.

www.finra.org/brokercheck
User Guidance
FIN`A

| | |
|---|---|
| **Date Initiated:** | 03/17/2021 |
| **Docket/Case Number:** | MATTER NO. 2020065125701 |
| **Principal Product Type:** | No Product |
| **Other Product Type(s):** | |
| **Principal Sanction(s)/Relief Sought:** | Civil and Administrative Penalt(ies) /Fine(s) |
| **Other Sanction(s)/Relief Sought:** | CENSURE AND MONETARY FINE. |
| **Resolution:** | Acceptance, Waiver & Consent(AWC) |
| **Resolution Date:** | 05/10/2023 |
| **Sanctions Ordered:** | Censure<br>Monetary/Fine $50,000.00 |
| **Other Sanctions Ordered:** | |
| **Sanction Details:** | MONETARY FINE IMPOSED OF $50,000.00 |
| **Firm Statement** | MATTER WAS FINALIZED THROUGH AN AWC SIGNED BY THE FIRM. |

### Disclosure 2 of 4

| | |
|---|---|
| **Reporting Source:** | Regulator |
| **Current Status:** | Final |
| **Allegations:** | RESPONDENT ARQUE CAPITAL, LTD. FAILED TO FILE ITS 2019 CUSTODY REPORT WTHIN 21 DAYS AFTER SERVICE OF THE NOTICE OF SUSPENSION DATED AUGUST 9, 2019. |
| **Initiated By:** | FINRA |
| **Date Initiated:** | 08/09/2019 |
| **Docket/Case Number:** | N/A |
| **Principal Product Type:** | No Product |
| **Other Product Type(s):** | |
| **Principal Sanction(s)/Relief Sought:** | Suspension |
| **Other Sanction(s)/Relief Sought:** | |
| **Resolution:** | Other |

©2023 FINRA. All rights reserved. Report about ARQUE CAPITAL, LTD.



**Resolution Date:** 09/03/2019

**Does the order constitute a final order based on violations of any laws or regulations that prohibit fraudulent, manipulative, or deceptive conduct?** No

**Sanctions Ordered:** Suspension

**Other Sanctions Ordered:**

**Sanction Details:** PURSUANT TO FINRA RULE 9552 AND IN ACCORDANCE WITH FINRA'S NOTICE OF SUSPENSION LETTER DATED AUGUST 09, 2019, ARQUE CAPITAL, LTD. IS SUSPENDED ON SEPTEMBER 03, 2019 FROM FINRA MEMBERSHIP. IF ARQUE CAPITAL, LTD. FAILS TO REQUEST TERMINATION OF THE SUSPENSION WITHIN THREE MONTHS OF THE DATE OF THE NOTICE OF SUSPENSION, IT WILL AUTOMATICALLY BE EXPELLED FROM FINRA MEMBERSHIP PURSUANT TO FINRA RULE 9552(H). SUSPENSION LIFTED ON SEPTEMBER 6, 2019.

**Reporting Source:** Firm

**Current Status:** Final

**Allegations:** FIRM FAILED TO FILE IS 2Q/2019 CUSTODY REPORT WITHIN 21 DAYS AFTER SERVICE OF THE NOTICE OF SUSPENSION. SUSPENSION WAS LIFTED ON SEPTEMBER 6, 2019.

**Initiated By:** FINRA

**Date Initiated:** 09/03/2019

**Docket/Case Number:**

**Principal Product Type:** Other

**Other Product Type(s):**

**Principal Sanction(s)/Relief Sought:** Suspension

**Other Sanction(s)/Relief Sought:**

**Resolution:** Other

**Resolution Date:** 09/06/2019

**Sanctions Ordered:** Suspension

©2023 FINRA. All rights reserved. Report about ARQUE CAPITAL, LTD.

**Other Sanctions Ordered:**

**Sanction Details:** THE FIRM WAS SUSPENDED ON SEPTEMBER 3, 2019. THE FIRM MADE PROPER FILING OF THE CUSTODY REPORT ON SEPTEMBER 4, 2019. THE SUSPENSION WAS LIFTED ON SEPTEMBER 6, 2019.

**Firm Statement** FINOP LEFT FIRM WITHOUT NOTICE 7 BUSINESS DAYS PRIOR TO FILING DEADLINE. FIRM MADE FILING OF CUSTODY REPORT ON SEPTEMBER 4, 2019 WHICH WAS 21 DAYS AFTER SERVICE OF THE NOTICE. SUSPENSION WAS LIFTED ON SEPTEMBER 6, 2019.

## Disclosure 3 of 4

**Reporting Source:** Regulator

**Current Status:** Final

**Allegations:** RESPONDENT ARQUE CAPITAL, LTD. FAILED TO FILE ITS QUARTERLY FOCUS REPORT WITHIN 21 DAYS AFTER SERVICE OF THE NOTICE OF SUSPENSION.

**Initiated By:** FINRA

**Date Initiated:** 08/09/2019

**Docket/Case Number:** N/A

**Principal Product Type:** No Product

**Other Product Type(s):**

**Principal Sanction(s)/Relief Sought:** Suspension

**Other Sanction(s)/Relief Sought:**

**Resolution:** Other

**Resolution Date:** 09/03/2019

**Does the order constitute a final order based on violations of any laws or regulations that prohibit fraudulent, manipulative, or deceptive conduct?** No

**Sanctions Ordered:** Suspension

**Other Sanctions Ordered:**

©2023 FINRA. All rights reserved.    Report about ARQUE CAPITAL, LTD.



**Sanction Details:** PURSUANT TO FINRA RULE 9552 AND IN ACCORDANCE WITH FINRA'S NOTICE OF SUSPENSION LETTER DATED AUGUST 09, 2019, ARQUE CAPITAL, LTD. IS SUSPENDED ON SEPTEMBER 03, 2019 FROM FINRA MEMBERSHIP. IF ARQUE CAPITAL, LTD. FAILS TO REQUEST TERMINATION OF THE SUSPENSION WITHIN THREE MONTHS OF THE DATE OF THE NOTICE OF SUSPENSION, IT WILL AUTOMATICALLY BE EXPELLED FROM FINRA MEMBERSHIP PURSUANT TO FINRA RULE 9552(H). SUSPENSION LIFTED ON SEPTEMBER 6, 2019.

**Reporting Source:** Firm

**Current Status:** Final

**Allegations:** FIRM FAILED TO FILE IS 2Q/2019 FOCUS REPORT WITHIN 21 DAYS AFTER SERVICE OF THE NOTICE OF SUSPENSION. SUSPENSION WAS LIFTED ON SEPTEMBER 6, 2019.

**Initiated By:** FINRA

**Date Initiated:** 09/03/2019

**Docket/Case Number:**

**Principal Product Type:** Other

**Other Product Type(s):**

**Principal Sanction(s)/Relief Sought:** Suspension

**Other Sanction(s)/Relief Sought:**

**Resolution:** Other

**Resolution Date:** 09/06/2019

**Sanctions Ordered:** Suspension

**Other Sanctions Ordered:**

**Sanction Details:** THE FIRM WAS SUSPENDED ON SEPTEMBER 3, 2019. THE FIRM MADE PROPER FILING OF THE FOCUS REPORT ON SEPTEMBER 4, 2019. THE SUSPENSION WAS LIFTED ON SEPTEMBER 6, 2019.

**Firm Statement** FINOP LEFT FIRM WITHOUT NOTICE 7 BUSINESS DAYS PRIOR TO FILING DEADLINE. FIRM MADE PROPER FILING OF FOCUS ON SEPTEMBER 4, 2019. SUSPENSION WAS LIFTED ON SEPTEMBER 6, 2019.

©2023 FINRA. All rights reserved.   Report about ARQUE CAPITAL, LTD.

www.finra.org/brokercheck



User Guidance

**Disclosure 4 of 4**

**Reporting Source:** Regulator

**Current Status:** Final

**Allegations:** WITHOUT ADMITTING OR DENYING THE FINDINGS, THE FIRM CONSENTED TO THE SANCTIONS AND TO THE ENTRY OF FINDINGS THAT IT SOLD A TOTAL OF APPROXIMATELY $3.53 MILLION IN AN ALTERNATIVE INVESTMENT KNOWN AS RENEWABLE SECURED DEBENTURES OFFERED BY A COMPANY TO APPROXIMATELY 40 INVESTORS WHILE PROVIDING INVESTORS WITH THE COMPANY'S SALES KIT THAT CONTAINED A BROCHURE WITH MISLEADING STATEMENTS. THE FINDINGS STATED THAT THE FIRM ACTED AS THE MANAGING BROKER-DEALER FOR THE DEBENTURES. AS THE MANAGING BROKER-DEALER, THE FIRM WAS RESPONSIBLE FOR, AMONG OTHER THINGS, CONDUCTING DUE DILIGENCE INTO THE COMPANY AND THE DEBENTURES, AND REVIEWING ALL ADVERTISING PIECES RELATED TO THE DEBENTURES.

**Initiated By:** FINRA

**Date Initiated:** 11/14/2014

**Docket/Case Number:** 2012033994701

**Principal Product Type:** Other

**Other Product Type(s):** RENEWABLE SECURED DEBENTURES

**Principal Sanction(s)/Relief Sought:** Other

**Other Sanction(s)/Relief Sought:** N/A

**Resolution:** Acceptance, Waiver & Consent(AWC)

**Resolution Date:** 11/14/2014

**Does the order constitute a final order based on violations of any laws or regulations that prohibit fraudulent, manipulative, or deceptive conduct?** No

**Sanctions Ordered:** Censure
Monetary/Fine $50,000.00

**Other Sanctions Ordered:**

**Sanction Details:** RESPONDENT IS CENSURED AND FINED $50,000. FINE PAID IN FULL ON DECEMBER 24, 2014.

©2023 FINRA. All rights reserved.    Report about ARQUE CAPITAL, LTD.



**Reporting Source:** Firm

**Current Status:** Final

**Allegations:** WITHOUT ADMITTING OR DENYING THE FINDINGS, THE FIRM ENTERED INTO A LETTER OF ACCEPTANCE, WAIVER AND CONSENT WHEREBY THE FIRM AGREED TO BE CENSURED AND PAY A MONETARY FINE. THE FIRM ACTED AS THE MANAGING BROKER-DEALER FOR THE RENEWABLE SECURED DEBENTURES OFFERED BY GWG HOLDINGS, INC. ("COMPANY"). THE FINDINGS STATED, AMONG OTHER THINGS: (1) THAT THE FIRM SOLD APPROXIMATELY $3.53 MILLION OF THE RENEWABLE SECURED DEBENTURES TO APPROXIMATELY 40 INVESTORS WHILE PROVIDING INVESTORS WITH A SALES BROCHURE THAT WAS CREATED BY THE COMPANY THAT INCLUDED MISLEADING STATEMENTS; (2) ALTHOUGH THE CORRECT INFORMATION WAS CONTAINED IN THE PROSPECTUS THAT WAS ALSO DELIVERED TO THE INVESTORS, IT HAD NOT BEEN ACCURATELY REFLECTED IN THE BROCHURE; AND (3) UPON LEARNING OF THE INCONSISTENCIES BETWEEN THE COMPANY'S BROCHURE AND PROSPECTUS, THE BROCHURE WAS PROMPTLY CHANGED. THE FINDINGS, WHICH, AGAIN WERE NEITHER ADMITTED OR DENIED BY THE FIRM, FURTHER STATED THAT AS THE MANAGING BROKER-DEALER FOR THE OFFERING OF THE DEBENTURES, THE FIRM HAD AN OBLIGATION TO, BUT DID NOT, REVIEW THE BROCHURE AND TAKE REASONABLE STEPS TO ENSURE THAT THERE WAS A REASONABLE BASIS FOR THE STATEMENTS MADE IN THE BROCHURE.

**Initiated By:** FINRA

**Date Initiated:** 11/14/2014

**Docket/Case Number:** 2012033994701

**Principal Product Type:** Other

**Other Product Type(s):** RENEWABLE SECURED DEBENTURES

**Principal Sanction(s)/Relief Sought:** CENSURE AND FINE OF $50,000

**Other Sanction(s)/Relief Sought:**

**Resolution:** Acceptance, Waiver & Consent(AWC)

**Resolution Date:** 11/14/2014

**Sanctions Ordered:** Censure
Monetary/Fine $50,000.00

©2023 FINRA. All rights reserved.    Report about ARQUE CAPITAL, LTD.



www.finra.org/brokercheck

User Guidance

**Other Sanctions Ordered:**

**Sanction Details:** THERE WERE NO OTHER SANCTIONS OTHER THAN AS DEFINED ABOVE.

**Firm Statement** SEE ABOVE.

©2023 FINRA. All rights reserved.      Report about ARQUE CAPITAL, LTD.

User Guidance

www.finra.org/brokercheck

**End of Report**

**This page is intentionally left blank.**

©2023 FINRA. All rights reserved.    Report about ARQUE CAPITAL, LTD.

27

## UNITED STATES OF AMERICA
### Before the
### SECURITIES AND EXCHANGE COMMISSION

**SECURITIES EXCHANGE ACT OF 1934**
**Release No. 82951 / March 27, 2018**

**ADMINISTRATIVE PROCEEDING**
**File No. 3-18409**

| | |
|---|---|
| In the Matter of<br><br>**JH DARBIE & CO., INC., and**<br>**ROBERT Y. RABINOWITZ**<br><br>Respondents. | **ORDER INSTITUTING ADMINISTRATIVE AND CEASE-AND-DESIST PROCEEDINGS, PURSUANT TO SECTIONS 15(b) AND 21C OF THE SECURITIES EXCHANGE ACT OF 1934, MAKING FINDINGS, AND IMPOSING REMEDIAL SANCTIONS AND A CEASE-AND-DESIST ORDER** |

### I.

The Securities and Exchange Commission ("Commission") deems it appropriate and in the public interest that public administrative and cease-and-desist proceedings be, and hereby are, instituted pursuant to Sections 15(b) and 21C of the Securities Exchange Act of 1934 ("Exchange Act"), against JH Darbie & Co., Inc. ("JH Darbie") and Robert Y. Rabinowitz ("Rabinowitz") (collectively, "Respondents").

### II.

In anticipation of the institution of these proceedings, Respondents have submitted a joint Offer of Settlement (the "Offer") which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings herein, except as to the Commission's jurisdiction over them and the subject matter of these proceedings, which are admitted, and except as provided herein in Section V, Respondents consent to the entry of this Order Instituting Administrative and Cease-and-Desist Proceedings, Pursuant to Sections 15(b) and 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order ("Order"), as set forth below.

### III.

On the basis of this Order and Respondents' Offer, the Commission finds[1] that:

---

[1] The findings herein are made pursuant to Respondents' Offer of Settlement and are not binding on any other person or entity in this or any other proceeding.

## Summary

These proceedings arise out of the failure of JH Darbie, a registered broker-dealer, to properly compute and report its net capital. As a consequence, from September 2015 through July 2016 (the "Relevant Period"), JH Darbie operated with a net capital deficiency and violated net capital reporting and books and records provisions. Rabinowitz, the chief executive officer ("CEO") and financial and operations principal ("FINOP"), caused JH Darbie's violations by failing to properly compute and report JH Darbie's net capital.

## Respondents

1.      JH Darbie is a New York corporation with its principal place of business in New York, New York.  During the Relevant Period, JH Darbie was registered with the Commission as a broker-dealer.

2.      Rabinowitz, age 45, lives in Livingston, New Jersey.  A New Jersey certified public accountant, Rabinowitz founded JH Darbie in 1997 and is a seventy-six percent owner of the firm. During the Relevant Period, and continuing today, he served as its CEO and FINOP, holding Series 7, Series 24 and Series 27 licenses, among others.

## Facts

### A.      The Net Capital Rule

3.      Section 15(c)(3) of the Exchange Act and Rule 15c3-l thereunder (the "net capital rule") require that broker-dealers effecting transactions in securities "at all times have and maintain net capital" no less than the greatest of the minimum requirement applicable to its business.  The net capital rule requires different minimum amounts of net capital based on the nature of a firm's business (for example, whether the firm holds customer funds or securities), and the method a firm uses in computing its net capital.  The rule is designed to require a broker-dealer to maintain sufficient liquid assets to meet all obligations to customers and counterparties and have adequate additional resources to wind down its business in an orderly manner without the need for a formal proceeding if the firm fails financially.

4.      In particular, the net capital rule requires that a broker-dealer perform two calculations: (i) a computation of the minimum amount of net capital the broker-dealer must maintain, which JH Darbie determined was $5,000 but which, in actuality, was $250,000 due to the firm's carrying accounts for customers; and (ii) a computation of the amount of net capital the broker-dealer is maintaining. The minimum net capital requirement is the greater of a fixed-dollar amount specified in the net capital rule or an amount determined by applying one of two financial ratios. The minimum fixed dollar amount for JH Darbie during the Relevant Period was $250,000.

5.      To compute its net capital, a broker-dealer first calculates its net worth, then makes certain adjustments set forth in the rules, including deducting the value of certain illiquid assets,

2

and deducting certain specific percentages (or "haircuts") from the market value of the securities it holds in proprietary accounts or other inventory accounts. The resulting figure must be above the firm's required minimum net capital to comply with the net capital rule.

**B.     JH Darbie's Erroneous Net Capital Calculations**

6.      JH Darbie conducted a securities business while in net capital deficit that ranged from $72,103.95 to $788,714.00 at the end of each month during the Relevant Period:

| DATE | NET CAPITAL DEFICIENCY |
|---|---|
| September 2015 | ($72,103.95) |
| October 2015 | ($170,796.61) |
| November 2015 | ($265,523.32) |
| December 2015 | ($473,685.66) |
| January 2016 | ($589,332.10) |
| February 2016 | ($524,858.00) |
| March 2016 | ($444,427.87) |
| April 2016 | ($410,141.17) |
| May 2016 | ($355,694.20) |
| June 2016 | ($306,507.33) |
| July 2016 | ($788,714.00) |

7.      During the Relevant Period, Rabinowitz was JH Darbie's CEO and FINOP. Rabinowitz was the individual responsible for calculating the firm's monthly net capital and ensuring it met the requirements set forth in the federal securities laws.

*Failure to Consider Foreign Accounts in Minimum Net Capital Requirement*

8.      During the Relevant Period, JH Darbie determined its minimum net capital requirement to be $5,000, as described under Exchange Act Rule 15c3-1(a)(2)(vi). During the Relevant Period, JH Darbie executed transactions with foreign investment banks on behalf of multiple customers. Under Rule 15c3-1(a)(2)(i), carrying customer accounts and receiving or holding funds or securities for those accounts requires a minimum net capital of $250,000.

9.      In multiple instances during the Relevant Period, JH Darbie had executed trades for its customers through at least three foreign investment banks. All customer interactions on the accounts were with JH Darbie's representatives, not representatives at the foreign investment banks. Accordingly, JH Darbie was subject to the heightened minimum net capital requirement of $250,000. As described in paragraph 6, above, during the Relevant Period, JH Darbie was in violation of the net capital requirement even if its minimum net capital was $5,000, except for the months of September and October 2015.

10.     JH Darbie ended the relationship with the foreign firms in July 2016 in order to meet the $5,000 minimum net capital requirement under Exchange Act Rule 15c3-1(a)(2)(vi).

3

*Misclassification of Foreign Commission Receivables*

11.     JH Darbie received commissions from the foreign investment banks during four of the eleven months of the Relevant Period.  It misclassified those commissions as allowable assets for the purpose of its net capital computation. The misclassified receivables ranged from $5,000 in October 2015 to $225,000 in February 2016.  When properly reclassified as non-allowable, JH Darbie was further out of net capital compliance.

*Failure to Accrue for Legal Liabilities*

12.     In August 2015, the firm JH Darbie used to clear transactions (the "Clearing Firm") notified JH Darbie and Rabinowitz that one of JH Darbie's customers had threatened to sue it in connection with a stock transaction. In accordance with the Fully Disclosed Clearing Agreement between JH Darbie and the Clearing Firm, JH Darbie was required to indemnify the Clearing Firm for fees and expenses incurred in defense of the threatened legal action.

13.     The Clearing Firm notified JH Darbie and Rabinowitz of its intent to seek such indemnification in August 2015 and informed JH Darbie of the amounts being spent in response to the legal action.  In December 2015, the Clearing Firm advised JH Darbie and Rabinowitz that it would begin invoicing JH Darbie for monthly installments to cover the indemnity in manageable increments.  According to the Clearing Firm's December 2015 notice, the amount due to the Clearing Firm for the months of August and September 2015 totaled $155,325.73.  The amount due grew each month until it reached $500,000 in February 2016.  The Clearing Firm's insurance policy covered the amounts above $500,000.  JH Darbie did not pay the Clearing Firm any of the amount due.  The Clearing Firm waived the indemnification provision on August 16, 2016 (with the right to reinstitute it), which brought JH Darbie back into net capital compliance at that time.

14.     JH Darbie should have, but did not, accrue for this liability.

15.     On August 5, 2016, JH Darbie submitted a notification to the Commission and FINRA of its net capital deficiency.  Upon submission of the notice, JH Darbie's business was limited to liquidating transactions of existing customer positions due to the net capital deficiency.

*Filing Inaccurate Monthly FOCUS Reports*

16.     Due to the accrual errors, misclassifications, and other issues described in paragraphs 6 to 15, above, JH Darbie filed eleven monthly FOCUS reports pursuant to the requirements of Rule 17a-5(a) from September 2015 through July 2016 that inaccurately reflected the firm's compliance with its net capital requirements.

**C.     Rabinowitz Caused JH Darbie's Erroneous Net Capital Calculations, Books and Records and Financial Reports**

17.     Rabinowitz was JH Darbie's CEO and FINOP, with a Series 27 license. During the Relevant Period, in his capacity as FINOP, he prepared JH Darbie's net capital calculation and monthly financial package, including a statement of liabilities, as well as JH Darbie's FOCUS reports.  Rabinowitz failed to calculate JH Darbie's net capital accurately, which resulted in the firm's net capital deficiencies and reporting errors.

18.     Rabinowitz was aware that JH Darbie maintained foreign accounts and that foreign commissions were received and misclassified as allowable receivables for the purposes of the net capital computation.  He also was involved in JH Darbie's communications with the Clearing Firm about the legal liabilities.

**D.     Violations**

19.     As a result of the conduct described above, JH Darbie willfully[2] violated Section 15(c)(3) of the Exchange Act and Rule 15c3-1 thereunder, which require broker-dealers to maintain minimum net capital, and Section 17(a)(1) of the Exchange Act and Rules 17a-3 and 17a-5 thereunder, which require broker-dealers to make and keep current certain books and records, and to make certain reports and filings with the Commission.

20.     As a result of the conduct described above, Rabinowitz caused JH Darbie's violations of Sections 15(c)(3) and 17(a)(1) of the Exchange Act, and Rules 15c3-1, 17a-3 and 17a-5 thereunder.

21.     As a result of the conduct described above, Rabinowitz willfully[3] made or caused to be made false statements in reports required to be filed with the Commission under the Exchange Act.

## Undertakings

22.     Respondent JH Darbie has undertaken to retain, for a period of no less than three (3) years from the date of this Order, a FINOP not unacceptable to the Commission staff.

23.     Respondent Rabinowitz has undertaken to refrain, for a period of no less than three (3) years from the date of this Order, from serving as a FINOP.  Thereafter, Rabinowitz will re-take, and pass, the Series 27 examination before resuming as a FINOP.

---

[2] A willful violation of the securities laws means merely "'that the person charged with the duty knows what he is doing.'" *Wonsover v. SEC*, 205 F.3d 408, 414 (D.C. Cir. 2000) (quoting *Hughes v. SEC*, 174 F.2d 969, 977 (D.C. Cir. 1949)).  There is no requirement that the actor "'also be aware that he is violating one of the Rules or Acts.'" *Id.* (quoting *Gearhart & Otis, Inc. v. SEC*, 348 F.2d 798, 803 (D.C. Cir. 1965)).

[3] *See* footnote 2, *supra.*

5

24.     Respondents shall certify, in writing, compliance with the undertaking set forth above.  The certification shall identify the undertaking, provide written evidence of compliance in the form of a narrative, and be supported by exhibits sufficient to demonstrate compliance.  The Commission staff may make reasonable requests for further evidence of compliance, and Respondent agrees to provide such evidence.  The certification and supporting material shall be submitted to Thomas P. Smith Jr., Assistant Regional Director, with a copy to the Office of Chief Counsel of the Enforcement Division, no later than sixty (60) days from the date of the completion of the undertakings.

## IV.

In view of the foregoing, the Commission deems it appropriate and in the public interest to impose the sanctions agreed to in Respondents' Offer.

Accordingly, pursuant to Sections 15(b) and 21C of the Exchange Act, it is hereby ORDERED that:

A.     Respondent JH Darbie shall cease and desist from committing or causing any violations and any future violations of Sections 15(c)(3) and 17(a)(1) of the Exchange Act and Rules 15c3-1, 17a-3 and 17a-5 thereunder.

B.     Respondent Rabinowitz shall cease and desist from committing or causing any violations and any future violations of Sections 15(c)(3) and 17(a)(1) of the Exchange Act and Rules 15c3-1, 17a-3 and 17a-5 thereunder.

C.     Respondent JH Darbie is censured.

D.     Respondent JH Darbie shall pay civil penalties of $50,000 plus agreed upon post-Order interest of $113.00 to the Securities and Exchange Commission for transfer to the general fund of the United States Treasury, subject to Exchange Act Section 21F(g)(3).  Payment shall be made in the following installments:

a.     $25,000.00 shall be due within ten (10) days of entry of this Order;
b.     $12,581.50 shall be due May 31, 2018;
c.     $12,531.50 shall be due August 31, 2018.

If any payment is not made by the date the payment is required by this Order, the entire outstanding balance of civil penalties, plus any additional interest accrued pursuant to 31 U.S.C. Section 3717 shall be due and payable immediately, without further application.

Payment must be made in one of the following ways:

(1)     Respondent may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request;

6

(2)     Respondent may make direct payment from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm; or

(3)     Respondent may pay by certified check, bank cashier's check, or United States postal money order, made payable to the Securities and Exchange Commission and hand-delivered or mailed to:

Enterprise Services Center
Accounts Receivable Branch
HQ Bldg., Room 181, AMZ-341
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

Payments by check or money order must be accompanied by a cover letter identifying JH Darbie as Respondent in these proceedings, and the file number of these proceedings; a copy of the cover letter and check or money order must be sent to Lara S. Mehraban, Associate Director, Division of Enforcement, Securities and Exchange Commission, 200 Vesey Street, 4th Floor, New York, New York, 10281.

E.     Respondent Rabinowitz shall pay civil penalties of $25,000 plus agreed upon post-Order interest of $56.50 to the Securities and Exchange Commission for transfer to the general fund of the United States Treasury, subject to Exchange Act Section 21F(g)(3).  Payment shall be made in the following installments:

a.     $12,500.00 shall be due within ten (10) days of entry of this Order;
b.     $6,290.75 shall be due May 31, 2018;
c.     $6,265.75 shall be due August 31, 2018.

If any payment is not made by the date the payment is required by this Order, the entire outstanding balance of civil penalties, plus any additional interest accrued pursuant to 31 U.S.C. Section 3717 shall be due and payable immediately, without further application.

Payment must be made in one of the following ways:

(1)     Respondent may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request;

(2)     Respondent may make direct payment from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm; or

(3)     Respondent may pay by certified check, bank cashier's check, or United States postal money order, made payable to the Securities and Exchange Commission and hand-delivered or mailed to:

Enterprise Services Center
Accounts Receivable Branch
HQ Bldg., Room 181, AMZ-341
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

Payments by check or money order must be accompanied by a cover letter identifying Rabinowitz as Respondent in these proceedings, and the file number of these proceedings; a copy of the cover letter and check or money order must be sent to Lara S. Mehraban, Associate Director, Division of Enforcement, Securities and Exchange Commission, 200 Vesey Street, 4th Floor, New York, New York, 10281.

F.     Amounts ordered to be paid as civil money penalties pursuant to this Order shall be treated as penalties paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, Respondents agree that in any Related Investor Action, they shall not argue that they are entitled to, nor shall they benefit by, offset or reduction of any award of compensatory damages by the amount of any part of Respondents' payments of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, Respondents agree that they shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the Securities and Exchange Commission. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this proceeding. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Respondents by or on behalf of one or more investors based on substantially the same facts as alleged in the Order instituted by the Commission in this proceeding.

G.     Respondent JH Darbie shall comply with the undertakings as enumerated in Section III, Paragraphs 22 and 24, above.

H.     Respondent Rabinowitz shall comply with the undertakings as enumerated in Section III, Paragraphs 23-24, above.

**V.**

It is further Ordered that, solely for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, the findings in this Order are true and admitted by Respondent Rabinowitz, and further, any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Respondent Rabinowitz under this Order or any other judgment, order,

8

consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Respondent Rabinowitz of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. § 523(a)(19).

By the Commission.

Brent J. Fields
Secretary

9